1                 UNITED STATES DISTRICT COURT

2                     DISTRICT OF UTAH

3                          -o0o-

4

5  RUSSELL G. GREER,              )
                                  )   Case No. 2:24-cv-00421
6        Plaintiff,               )
                                  )
7  v.                             )
                                  )
8  JOSHUA MOON, publisher of      )
   the website Kiwi Farms, et     )
9  al.,                           )
                                  )
10       Defendants.              )
   _____)

11

12

13          BEFORE THE HONORABLE JARED C. BENNETT

14                          ---

15                Monday, November 18, 2024

16                1:00 p.m. to 1:40 p.m.

17                Scheduling Conference

18                Rule 26(f) Conference

19                          ---

20                Transcript prepared from an

21             electronically recorded hearing

22

23

24  Reported by:  Michelle Mallonee, RPR, CCR  (801) 209-4979
    351 S. West Temple, #7.130, Salt Lake City, Utah 84101
25

                                                          1

1                          APPEARANCES

2

3    For Plaintiff:

4            RUSSELL G. GREER, ESQ.
             PRO SE
5            1155 S. Twain Avenue, Suite 108420
             Las Vegas, Nevada 89169
6            (801) 895-3501
             russmark@gmail.com
7

8    For Defendant:

9            MATTHEW D. HARDIN, ESQ.
             HARDIN LAW OFFICE
10           41725 I Street NW, Suite 300
             Washington, DC 20006
11           (202) 802-1948
             matthewdhardin@gmail.com

12

13                          *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

                                                    2

1          Monday, November 18, 2024; Salt Lake City, Utah

2                          1:00 p.m.

3                            -o0o-

4          THE COURT:  Let's go on the record in the case of

5    Russell Greer v. Joshua Moon, et al.  This is case

6    2:24-cv-421, and we're here today for purposes of a

7    scheduling conference.

8          Before we get started, could I please have counsel

9    state their appearances.  Let's begin -- well, I guess

10   Mr. Greer, representing himself, and then we have Mr.

11   Matthew Hardin representing the defendants.

12         All right.  Let's go ahead and talk about setting

13   a schedule here.  We were unable to do so through an

14   exchange between the parties.  So let's go ahead and see if

15   we can get one set now.

16         What I'd like to do is just go through, and we're

17   only going to set fact discovery today.  I'm not going to

18   set all the deadlines because I find that that's, frankly, a

19   waste of time, because we have, sometimes, things that pop

20   up, and we need to -- instead of adjusting a whole bunch of

21   dates and setting a trial date, which almost never holds,

22   I'm going to set fact discovery, deadlines, limits, and then

23   we'll set a status conference prior to the end of fact

24   discovery to make sure that we're on track to resolve any

25   unresolved discovery disputes, if there are any.  And then

```
 1   we'll go ahead and, from there, set the rest of the dates.

 2           So this case, as it came back from the Tenth

 3   Circuit, is one issue.  And so that's going to be helpful

 4   for us in terms of remembering what we have to do here,

 5   which is deal with that one issue.

 6           So let's talk about the fact discovery.  So number

 7   one, have the parties -- Mr. Hardin, have you had a chance

 8   to do a Rule 26(f) conference, or should we count this today

 9   as the Rule 26(f) conference?

10           MR. HARDIN:  There has not been a conference.  I

11   think that's the reason for some of the proposals that you

12   saw in the draft order.  And so today is probably the best

13   Rule 26 conference we will have.

14           THE COURT:  That's what I figured.  So I just

15   wanted to make sure I wasn't missing something.

16           Do you agree with that, Mr. Greer, we haven't had

17   a Rule 26(f) conference yet?

18           MR. GREER:  No, Your Honor, we have not.

19           THE COURT:  Okay.  Terrific.  We'll just count

20   today, then, as the Rule 26(f) conference, and so we'll date

21   it the 18th of November 2024.

22           Mr. Greer, do you have any objection to receiving

23   the discovery and sending your discovery responses by email?

24           MR. GREER:  No, I do not.

25           THE COURT:  Mr. Hardin, any objection to that?
```

1          MR. HARDIN:  No objection, except that I want to

2    clarify that it is an obligation to have a current email

3    address for that.  There's been some difficulty in the past

4    with both physical addresses and email addresses.  And I'm

5    happy to send things by email, so long as Mr. Greer

6    understands that I need an email to do that.

7          MR. GREER:  Your Honor, the email that's on file,

8    that's my -- that's my current email, so there shouldn't be

9    any issues.

10         THE COURT:  Okay, just to make sure:  The email

11   that you currently have on file with the Court is the email

12   to which Mr. Hardin should be sending things?

13         MR. GREER:  Yes.  It's R-U-S-S-M, as in Monday,

14   A-R-K@gmail.com.

15         THE COURT:  Okay.  All right.  So we'll note that

16   for the record.  So Mr. Greer, you'll be responsible for

17   checking that email and making sure that you get timely

18   responses for the things that will be sent via email, okay?

19   Any questions about that?

20         MR. GREER:  No, Your Honor, I understand.

21         THE COURT:  Terrific.  All right.

22         So in the court, in our local rules, we have a

23   standard protective order.  The standard protective order

24   governs every single case that is filed, and it's useful for

25   several reasons.  One of them is that a lot of times when we

don't have a standard protective order, people say, Oh, I

can't engage in discovery because we don't have a protective

order.  That's not going to work here, because like I say,

we have a standard protective order.

So do the parties anticipate forming their own

protective order, or do you want to just use the standard

protective order?

Mr. Greer?

MR. GREER:  No, I feel the standard protective

order is fine.

THE COURT:  Mr. Hardin?

MR. HARDIN:  Your Honor, I don't mean to not

respond to your question, but I think we're objecting to

entry of a protective order on the grounds that we don't

think that any is necessary at all in this case.  No one has

established the need for one.  And in fact, I believe even

Mr. Greer did not request one.  However, if the Court is

going to impose one over our objections, the standard order

is fine.

THE COURT:  We'll go ahead with the local rule and

keep the standard protective order.

All right.  Let's talk about the discovery plan

here.  So the subject of discovery is the one issue that the

Tenth Circuit remanded.  And I think we're all familiar with

that.  We've had a lot of writing on that, so we'll stick

6

1    with the one that's at issue here.

2              Let's talk about the number of depositions.  By

3    rule, without further Court order, we can do up to ten.

4              Mr. Hardin, do you think ten is enough for your

5    side?

6              MR. HARDIN:  Yes, Your Honor.

7              THE COURT:  Mr. Greer, you don't have to do ten if

8    you don't want to, but the rules would allow you up to ten

9    without further Court approval.  So what I'm going to do is

10   just put ten depositions in there for you, and you're free

11   to use any or as many of those ten as you would like.  Does

12   that make sense?

13             MR. GREER:  Yes, Your Honor.  That makes sense.

14             THE COURT:  Okay.  The maximum number of hours for

15   each deposition by rule is seven.  I don't intend on

16   changing that.

17             Do you see a reason to change it, Mr. Hardin?

18             MR. HARDIN:  Yes, Your Honor, I do.  I think that

19   it's only necessary to change that with respect to the

20   plaintiff himself and not with respect to any other witness.

21   I think that there are many reasons for that.

22             To begin with, I'll say that this case is one of

23   many.  And so when it comes to issues such as damages, we

24   have to explore what damages he's claimed in a plethora of

25   other cases from coast to coast, and I think that's going to

                                                              7

1    take quite a while.

2            I would also suggest that because the plaintiff is

3    pro se and is not familiar with the process, despite his

4    numerous cases nationwide, and has expressed some hostility,

5    I do not expect a deposition to go particularly smoothly or

6    efficiently, such that I believe that the standard amount of

7    time is unlikely to be sufficient.

8            The third reason, Your Honor, is that I think that

9    this is a case in which the plaintiff has expressed that he

10    has a number of disabilities.  We, of course, take him at

11    his word.  The Court can hear him today.  I believe that if

12    there is any accommodation needed due to his patterns of

13    speech or his disabilities, that, itself, could lengthen the

14    time of a deposition.

15            I'm happy to revisit this issue after we have

16    attempted to take a deposition, but I do believe that the

17    standard time frame is likely to be inadequate with respect

18    to Mr. Greer himself, due to all of those reasons.  I'd be

19    happy to address them further.

20            THE COURT:  How much time do you think you should

21    have?  If seven is insufficient, what time is sufficient?

22            MR. HARDIN:  So seven is basically a calendar day

23    with a break for lunch.  I think what I'm asking for is

24    basically a day and a half to deal with those issues.  And

25    so I believe my proposed order said ten hours.  That would

1    allow us to spread over to the second day between nine and

2    noon.  Again, if it's not necessary, of course I don't

3    intend to sit there for an extra three hours just for fun.

4    But my fear is that it would be necessary, and I think a day

5    and a half is appropriate.

6            THE COURT:  Mr. Greer, what are your thoughts on

7    that?

8            MR. GREER:  You know, to be honest, I wasn't

9    really expecting a lot of time with the deposition process.

10   I agree with Mr. Hardin, probably -- yeah, probably a day or

11   less.

12           THE COURT:  I think Mr. Hardin is saying for your

13   deposition it should be a day and a half, just for yours

14   only.  That's what I'm curious about, what your thoughts are

15   on that issue.

16           MR. GREER:  I mean, yeah, that works for me.  I

17   don't oppose that.

18           THE COURT:  All right.  So we'll go ahead and set

19   depositions at seven hours, except for the deposition of

20   Mr. Greer, which will be allowed to go ten.

21           The maximum number of interrogatories by rule is

22   25 without a court order.  That includes all subparts to it.

23   And so I would --

24           Any objection to 25 for your side, Mr. Hardin?

25           MR. HARDIN:  Yes, Your Honor.  I think it's going

9

1    to mirror the comments that I made a moment ago.  But I

2    think that the -- the volume of litigation that Mr. Greer

3    has filed is such, and his damages claims are such that I

4    think that we need to explore that.  And while I agree that

5    in a normal case where both parties are represented by

6    counsel and proceeding normally, they would follow the

7    normal 25-question limit.

8         I think that this is a case in which Mr. Greer has

9    demonstrated that he is somewhat nonresponsive to questions

10   or somewhat hostile.  And so I believe that if we are

11   limited to 25 questions, what's likely to happen is we will

12   just come back on motions to compel, and we will end up

13   answering and reanswering 25 questions over and over again.

14        I'm requesting, Your Honor, that you expand that,

15   and I'm requesting that you expand it quite substantially.

16   I think that 100 is the appropriate number.  And I think

17   that that will really conserve resources as opposed to

18   wasting them.

19        THE COURT:  If we're going to be coming back in on

20   25, why would we come back less on 100?

21        MR. HARDIN:  Your Honor, my suspicion is that when

22   he raises his answers, or as I would characterize them,

23   "nonanswers," I think rephrasing and resubmitting a lot of

24   these things to accommodate his unique perspective is likely

25   to at least alleviate some of the issues, or hopefully

                                                         10

1    alleviate some of the issues without court intervention.

2    I'm not trying to come back on multiple motions to compel,

3    but that is my fear if we're conducting discovery in the

4    same way, is that we will end up back before you over and

5    over again.

6           THE COURT:  I think the opposite is also true.

7    The more questions we have, the bigger the likelihood we're

8    going to have confusion and we're going to have motions.  So

9    I'm not really sure I see the logic in 100.  Even if it's

10   rephrasing, these are going to be duplicative and

11   repetitive.

12          It seems to me what we do is, we simply get a

13   motion to compel.  I order exactly what it is that's

14   supposed to be answered, if anything, and we go from there.

15   It seems to me that by expanding this fourfold, we're going

16   to have far more disputes than we would if we just stopped

17   at 25.

18          But Mr. Greer, what are your thoughts on this?

19          MR. GREER:  So I respectfully disagree with

20   Mr. Hardin's characterization.  This is the only copyright

21   claim that I have filed against anybody.  And I feel 25 is

22   well enough.  As you said, the confusion if we have 100, so

23   I feel 25 is just fine.

24          MR. HARDIN:  Your Honor --

25          THE COURT:  Mr. Hardin?

                                                            11

1              MR. HARDIN:  -- if I could address --

2              THE COURT:  Of course.

3              MR. HARDIN:  The final point that -- to respond to

4    what the Court said a moment ago, I think that in addition

5    to the issues I've raised about Mr. Greer's confusion, and

6    sort of teeing off what he just said about his case history,

7    our position is that Mr. Greer has filed lots of cases.

8    I'll agree this is the only copyright case.  But in terms of

9    the damages that he has claimed, his damages have overlapped

10   significantly.  And I think that we're entitled to probe

11   into his past litigation history and his current litigation

12   history in other cases to examine his claims for damages and

13   to see whether he is claiming the same damages from multiple

14   parties, asserting multiple theories of causation.

15            So because of his litigation history, I would at

16   least ask that you give us some leeway on interrogatories

17   that are not directly related to this case but are directed

18   to theories of damages and theories of causation in his past

19   cases, because I think that's going to be incredibly

20   relevant when it comes to his claim to damages in this case.

21            THE COURT:  Explain to me how that would be

22   relevant to his damages in this case.

23            MR. HARDIN:  So I think in this case, he's

24   claiming statutory and actual damages.  The actual damages

25   are basically he says that his copyrights have lost value.

                                                              12

1   He can't earn a living because his copyrights have lost

2   value in the actions of the defendants.  That's as I

3   understand his theory.  Of course, we disagree with it.

4          He's raised numerous cases, including, I believe

5   most recently in the state courts of Nevada, where it is our

6   understanding that he says that the reason that he cannot

7   earn a living, the reason that he faces all these financial

8   struggles is either due to a financial corporation that gave

9   him a loan on a Nissan that was later repossessed, or due to

10  the actions of an apartment complex that he resided in in

11  Nevada.

12         So I think it's incredibly relevant in this case

13  to say:  Is the reason that he's in these dire financial

14  straits due to the actions of the defendants, or is it due

15  to the actions of third parties that he's blamed for the

16  same basic harms in other litigation?  And, I mean, it goes

17  on.  There are other cases.  That's just the most recent

18  that I'm aware of from the state courts of Nevada.  I don't

19  even have a full history of all of his litigation.  I have

20  what I would consider a reasonably complete history,

21  partially because other attorneys have filed it in other

22  cases.

23         But I think as to damages, Your Honor, competing

24  theories of causation and competing theories of what's

25  harmed Mr. Greer and how it's harmed Mr. Greer is going to

13

1   come up in this case.

2          THE COURT:  So his damages in terms of this case,

3   the issue that remains in this federal case is whatever he

4   lost, allegedly, by this purported copyright infringement.

5          So how would -- I still am struggling to connect

6   the dots about how even if there's an allegation of

7   apartments and car lenders and all this stuff, aren't we

8   kind of limited to the universe of damage that's even

9   possible here?  So, I mean, how would that even have

10  anything to do with what he allegedly lost as a result of a

11  copyright infringement?

12         MR. HARDIN:  I think he's claiming -- and I think

13  the dots are difficult to connect, Your Honor, because

14  they're difficult for me, too.  They're difficult to anyone

15  to understand his theories in various items of litigation.

16         But I think that the issue that I have is he's

17  claiming that there is a loss of ability to earn, that he

18  has these valuable creative talents that he cannot exercise

19  because my clients have ostensibly infringed his copyrights.

20         THE COURT:  Is that even a viable damage that's

21  even legally available for this type of cause of action?

22  That doesn't sound like one of the few things you can get in

23  this type of a case.

24         MR. HARDIN:  If the Court's position is that none

25  of these damages are admissible -- I can only read

14

1  Mr. Greer's claim.  That's all I'm doing, is I'm responding

2  to his claim, and that's how I read his claim.  And so I

3  think that's -- because how his claim reads, at least to me,

4  I have to defend against the claims that he's making,

5  whether it's a viable claim or not.

6         Ultimately, I think you're largely correct, that

7  at summary judgment or at the appropriate stage, I think

8  that we will, of course, say that his theories of damages

9  are inappropriate or unjustified.

10         THE COURT:  So based on relevance and

11  proportionality, relevance being related to what is legally

12  available as a claim, I'm going to stick to the 25

13  interrogatories because, at this juncture, I think that's

14  going to be plenty.  And if through the course of litigation

15  we learn more, that it's not, then, of course, you're

16  certainly free to move the Court for more.  But it seems to

17  me at this point in time there really isn't -- we don't have

18  the facts behind increasing that quite yet at this juncture.

19  It's kind of speculative.  And while there's certainly maybe

20  grounds for that speculation, it's not enough for me, in

21  terms of relevance and proportionality, to increase that

22  number.

23         All right.  Let's talk about requests for

24  admission.  I was going to propose 25, just to keep it the

25  same as interrogatories.

                                                          15

1          Mr. Greer, what are your thoughts about having 25

2     requests for admission available to you?

3          MR. GREER:  Yeah, I feel 25 is adequate.

4          Your Honor, could I briefly address what

5     Mr. Hardin said earlier?

6          THE COURT:  Sure.  Do you want to -- I mean, do

7     you want to address it just to speak back, or is it relevant

8     to the number of interrogatories you think you should have?

9          MR. GREER:  It's relevant, because I'm looking at

10    the statute right now, 17 U.S.C. 504 (inaudible) (1) is the

11    willful infringement statute.  And it's a pretty

12    straightforward statute:  The defendant engaged in acts that

13    infringed a copyright, and the defendant knew the acts

14    infringed.  This has already gone before the Tenth Circuit.

15          So this is -- as you know, all the other claims of

16    defamation or whatnot have already been dismissed back in

17    2021.  And so right now is just really a willful

18    infringement claim caused by Mr. Moon through his

19    contribution actions.  And so honestly, I said before, I

20    feel 25 admissions and 25 interrogatories is fine.

21          THE COURT:  Okay.  That's what the Court's

22    ordered, so we'll go ahead and go from there.  Like I say,

23    if it turns out as we learn through the course of the fact

24    discovery that more will be necessary, either you or

25    Mr. Hardin are more than able to petition the Court and seek

16

1    more interrogatories.  I just need you to explain the basis

2    as to why more would be necessary, based on the facts that

3    have been learned during discovery.  And that's certainly

4    something you can make a motion for at a later time, if

5    necessary.

6            MR. HARDIN:  Your Honor, since we're treating

7    today as the Rule 26 conference, can the plaintiff shed some

8    light on his theories of damages and whether he intends to

9    claim these sorts of loss of earnings damages or, I guess

10   loss of ability to earn?

11           THE COURT:  Sure.  Mr. Greer, do you want to kind

12   of help us understand what the theories of damages are for

13   you here.

14           MR. GREER:  The theory of damages, I actually have

15   been meaning to file a motion for leave to amend my

16   complaint, since I need to clarify some stuff.  But really,

17   the damages are statutory.  And it's just, as I said, 17

18   U.S.C. 504, that the Tenth Circuit already said it was

19   plausible that Mr. Moon infringed.  And so basically what

20   we're litigating now is really a fair use defense, if

21   defendants have fair use or not.  I thought, you know, it

22   was pretty straightforward what I was claiming, but if it

23   wasn't, I'm happy to amend my complaint.

24           THE COURT:  I think the question, Mr. Greer, is in

25   terms of the damages, you're seeking statutory damages,

17

1    certainly.  I mean, we understand that.

2            But the question is:  What basis?  Is it simply

3    just a loss of revenue that you could have sold things for,

4    but for the copyright infringement you can't now?  That's

5    the question is, what is the basis of the damages you'll be

6    seeking?

7            MR. GREER:  Yeah.  So the market value is now --

8    like, I have more music that I've recorded.  I can't release

9    it because this one site ***controlling it around, and the

10   users will -- I don't know.  I don't know how they do it,

11   but they go off on these different sites and make sure no

12   one purchases anything else.  As you saw -- as you saw in

13   the complaint, one of Mr. Moon's users uploaded one of the

14   MP3s of my songs, and they said, "Here's his song.  No one

15   accidentally give him money."  And the Tenth Circuit already

16   went through that.

17           And I'm sure some damages are statutory, but also

18   loss of market value, loss of really being able to launch a

19   career, really.  And yeah, those are what I'm (inaudible)

20   here.

21           THE COURT:  So when you say, it sounds like loss

22   of market value, you're talking about loss of the market

23   value of the music you want to put into the market; is that

24   what you're talking about?

25           MR. GREER:  Yeah.  I've been denied, really, the

                                                              18

1  opportunity, honestly.  Like -- okay, here's an example,

2  Your Honor.

3          Maybe a few years ago, I had some entertainment

4  agents reach out to me, and we were talking, and then they

5  suddenly lost interest.  And I asked them why.  And they

6  said it was just because of all the online stuff about you.

7  And so basically, all of these Kiwi Farm people have gone

8  everywhere, just lambasted my name, and -- where I can't,

9  like, market anything else.  And I'm just like, I'm just

10 stuck between a rock and a hard place.

11         So really, yeah, so like you said, the loss of the

12 market value, of past damages, and damages of -- prospective

13 damages.  I can't remember that name.  I'd have to look at

14 what that is.  But yeah, that's basically the gist.

15         THE COURT:  All right.  So one of the things you

16 have to consider is that the slander claim that was filed

17 under state law is no longer part of this lawsuit.  So I

18 mean, it seems to me we're going to be limited to what the,

19 as you mentioned, what the statute allows and, among other

20 things, the market value.

21         So because of all that, it seems to me that what

22 we've got set for depositions and the number of

23 interrogatories and the number of the requests for admission

24 would be sufficient, at least at this time based on what we

25 now know, to move forward with fact discovery.

19

1          So let's talk about a deadline to serve written

2   discovery.

3          Given the numbers that we've got, up to 25,

4   potentially more, Mr. Hardin, what do you propose for the

5   deadline to serve written discovery for both parties?

6          MR. HARDIN:  Your Honor, could you give me just a

7   moment?  I want to check my calendar and his past

8   correspondence.

9          THE COURT:  Sure.

10       (Pause in the proceedings.)

11       MR. HARDIN:  So I think if Your Honor is

12  requesting that we serve all of our fact discovery at once,

13  I'd be happy with a deadline of the end of this year.  But I

14  think that staggering sequentially, such that we serve maybe

15  five of these 25 and wait for responses, makes sense, again,

16  because of all the reasons that I've expressed previously

17  about trying to avoid multiple trips back.

18         So I'm requesting that we be given six months to

19  serve all of our fact discovery based on that, because I

20  intend, if there's enough time, to serve this discovery

21  somewhat sequentially.  But if the Court wants to accelerate

22  that based on its comments earlier, I understand.

23         THE COURT:  Mr. Greer, what are your thoughts?

24  When should the last day to serve written discovery be?

25         MR. GREER:  I agree with what Mr. Hardin was

                                                              20

1    saying at first about the end of the year.  I feel that's

2    enough time.

3                THE COURT:  All right.

4                MR. GREER:  I mean, for like --

5                THE COURT:  Maybe --

6                MR. GREER:  -- for our discovery.

7                THE COURT:  All right, for your fact discovery,

8    that might be -- it sounds like the defendants' written fact

9    discovery may be more extensive than yours.  So if you're

10   saying -- let's see here, so if we go six months, we're

11   talking about May of 2025.  Let's set a deadline for written

12   fact discovery of May 16th, 2025, for written fact

13   discovery.

14               And then we can set a deadline, a fact-discovery

15   deadline of, let's say, June 30 for the close of fact

16   discovery.

17               Any objections to that, Mr. Hardin?

18               MR. HARDIN:  No, Your Honor.

19               THE COURT:  Mr. Greer?

20               MR. GREER:  No, Your Honor.  I was just writing it

21   down.

22               THE COURT:  Okay.  Terrific.  All right.  So we'll

23   set the 30th of June 2025 for the close of fact discovery.

24               Also, requests for production that are tied up in

25   those written discovery requests, I'm also going to set

                                                              21

1    those at 25, again, subject to more based on what we learn

2    during fact discovery.  So just to clarify:  The number of

3    depositions will be ten.  Every one of them will be limited

4    to seven hours, except for Mr. Greer's.  There will be a

5    maximum of 25 interrogatories per party; requests for

6    admission, 25; and requests for production, 25, subject to

7    more if there's factual good cause for that as we go through

8    discovery.  The deadline to serve written discovery will be

9    May 16, 2025.  And the close of fact discovery will be the

10   30th of June 2025.

11          Let's now turn to the deadline for amending

12   pleadings.  I was going to suggest the 31st of this year.

13   So it would be December 31st for the plaintiff to file an

14   amended complaint, and then we'd set a couple of weeks after

15   that for the defendant to file any amended answer.

16          Your thoughts on that, Mr. Hardin?

17          MR. HARDIN:  Your Honor, I don't think that the

18   Court should set a deadline.  This may partially be tied up

19   into the merits.  I think our position is that this

20   litigation is four years old.  Any reasonable deadline would

21   have long since passed.  And at this point, setting a

22   deadline is inappropriate.  Of course, we can raise all

23   those arguments on the merits if a motion for leave is

24   filed.  But that's our position, Your Honor.

25          THE COURT:  Mr. Greer, your thoughts on amending

22

1   the pleadings?

2        MR. GREER:  No.  I feel December 31st is fine.

3        THE COURT:  All right.  The Court will go ahead

4   and set -- so the plaintiff has until the 31st of December

5   to amend pleadings.  The defendants' response -- or answer,

6   amended answer, will be 14 days after the amended complaint

7   is filed.  Of course, if Mr. Hardin needs additional time.

8   He can move for it.  It will be liberally granted.  But

9   we're going to set December 31st as the amended pleading

10  deadline.

11       That will also include -- the deadline to adjoin

12  any additional parties will still be those same deadlines,

13  the 31st of December.

14       All right.  So let's now talk about a status

15  conference that we're going to set prior to the close of

16  fact discovery.  And I want to make sure that we've got

17  everything moving along.  So what I would like to do is

18  set -- let's set June 2nd.  That would be Monday, June 2nd.

19  We're going to set it at 10:00 a.m. Mountain Daylight

20  Savings Time for a status conference to see how we're going

21  along with fact discovery, and to make sure -- and then if

22  we need to set some more deadlines; for example, if we need

23  expert discovery, we can set those.  If we don't, we can

24  also set summary judgment briefing deadlines and set all

25  that at that June 2nd status conference that we'll have near

                                                    23

1    the close of fact discovery.

2            All right.  Let's talk about just the nuts and

3    bolts of how this is going to go forward.  For anyone,

4    Mr. Greer and Mr. Hardin, if you want to know how I call

5    balls and strikes on discovery, if you go to my webpage on

6    the court website, I have some videos that I have that tell

7    you exactly what I look for, exactly how I interpret the

8    rules relating to interrogatories, relating to Rule 34

9    productions, relating to initial disclosures.

10           All of those things -- initial disclosures will be

11    due 14 days after today.  That's by rule, so I'm not really

12    setting a deadline, other than to remind you of the rule

13    that you have to exchange initial disclosures as part of

14    this.

15           But if you have any questions about how I'm going

16    to interpret the rules, you can watch how I do it, and

17    hopefully that will help you make good decisions as you're

18    negotiating, where necessary, any discovery disputes that

19    you might have.

20           Mr. Greer, where you're representing yourself, I'd

21    strongly recommend that you take a look at those videos and

22    kind of help orient yourself as to how the process works

23    just because it will be -- that's the standard that I'll

24    hold the parties to, and that's something you'll need to

25    take a look at.

                                                                  24

1          If there are any issues during a deposition, feel

2     free to call my chambers.  What I would ask you to do is

3     wait until the end of the deposition, where you kind of have

4     all the disputes that are lined up, and then we can address

5     them all at once instead of doing it piecemeal.

6          Now, if you hit an impasse and you just simply

7     can't progress without addressing the issue, I'm certainly

8     happy to jump on the phone or Zoom or whatever is necessary

9     to get that resolved.  But to the extent you can, if you can

10    save up whatever disputes that occur in a deposition and we

11    can hit them all at once, that would be preferred, I think,

12    for efficiency purposes, both for you and the for the Court.

13         I'm trying to think if there is any other

14    outstanding issue that we need to talk about in terms of

15    just the how-to going forward.

16         Mr. Hardin, do you have any questions for me about

17    how you'll need to make motions or how to do any discovery

18    issues that we've talked about?

19         MR. HARDIN:  Your Honor, did I understand the

20    Court is deferring the issue of expert discovery, such that

21    we do not have expert deadlines at this point?

22         THE COURT:  Correct.  We'll set those at the

23    status conference, if we need those.

24         MR. HARDIN:  Thank you.  Then no questions.

25         THE COURT:  All right.  Mr. Greer, any questions

1   for me about how this is going to go forward?

2          MR. GREER:  Your Honor, I have everything all

3   written down, and so I will definitely check out your

4   webpage and watch those videos.  But no, I don't have any

5   questions.

6          THE COURT:  All right.  So what we will do, is we

7   will issue a scheduling order in the near future, probably

8   at end of today or early tomorrow that will have all of

9   these dates in there, all the limitations that we've set,

10  and then we will go ahead and move forward.

11         One other issue I want to make you all aware of.

12  So under Local Rule 37-1, which kind of governs discovery

13  disputes, there is, of course, the requirement to meet and

14  confer when possible.  But also, these discovery disputes

15  need to be -- there has to be a motion to the Court within

16  45 days of when the letter from the requesting party

17  notifying the responding party that their responses are

18  inadequate, there's a 45-day deadline by rule by which we

19  need to have this resolved.  Now, of course, if you're

20  working on a solution, you can move to extend that 45-day

21  deadline.  But if we blow past that 45-day deadline for

22  resolving any outstanding discovery disputes, there is a

23  chance, a fairly significant chance, that that discovery

24  dispute will simply be nullified by failure to raise it

25  timely before the Court.  So we'd like to keep this

```
 1   litigation moving on track.  The last thing we want to do is
 2   bank all of the discovery disputes that may occur for the
 3   end and use that as a bargaining chip to extend fact
 4   discovery.  If there's an issue, I'd like to address it
 5   sooner rather than later.
 6          I appreciate the parties' concern about consuming
 7   court time, but frankly, given the litigious nature of this
 8   case already, I'm fully planning on investing time in it,
 9   and we're not going to mess around.  We're simply going to
10   get to business, and we're going to get this discovery done.
11   And we'll get this case set up either for dispositive
12   motions, or we'll get it set for trial.
13          So I would just urge you to please abide by Local
14   Rule 37-1 in terms of the timeliness of any discovery
15   disputes that may occur.  And of course, those videos,
16   hopefully, should be helpful in providing you information
17   about how I call balls and strikes on those issues.
18          Mr. Greer, is there anything else we need to take
19   up today on your behalf?
20          MR. GREER:  No, Your Honor, there is not.
21          THE COURT:  Mr. Hardin, anything further on behalf
22   of your clients?
23          MR. HARDIN:  Nothing from the defense, Your Honor.
24          THE COURT:  All right.  Thank you, everyone.
25   We'll be in recess.
```

1          (The matter concluded at 1:40 p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

COURT REPORTER'S CERTIFICATE

State of Utah          )
                       ss.
County of Salt Lake    )

          I, Michelle Mallonee, a Registered Professional Reporter in and for the State of Utah, do hereby certify:

          That the proceedings of said matter was reported by me in stenotype and thereafter transcribed into typewritten form;

          That the same constitutes a true and correct transcription of said proceedings so taken and transcribed;

          I further certify that I am not of kin or otherwise associated with any of the parties of said cause of action, and that I am not interested in the event thereof.

          WITNESS MY HAND at Salt Lake City, Utah, this 21st day of November 2024.

_____
Michelle Mallonee, RPR, CCR
Utah CCR #267114-7801
Expires May 31, 2026

29