FILED
2025 FEB 3 AM 3:18
CLERK
U.S. DISTRICT COURT

Russell Greer
1100 Dumont Blvd
Apt 139
Las Vegas, NV 89169
801-895-3501
russmark@gmail.com
Pro Se Litigant

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL GREER** | **PLAINTIFF'S OPPOSITION RESPONSE TO DEFENDANTS' ADVERSE INTERFERENCE MOTION** |
| Plaintiff | |
| v. | Case No.:   2:24-cv-00421-DBB-JCB |
| **JOSHUA MOON ET AL**, | |
| Defendants | |

Plaintiff Russell Greer comes now and responds to ECF 224.

## INTRODUCTION

ECF 224 (motion for adverse interference) is the latest document filed by Defendants in an attempt to get their *pro se* opponent fined at every innocent misstep. In their latest filing, they are claiming adverse inference with Greer regarding Steve Taylor. They also blame Steve for why this case was retransferred back to Utah.

Plaintiff responds that their motion has a few fatal flaws: (1) defendants are misconstruing events, (2) defendants can't show bad faith and prejudice, (3) defendants are relitigating a resolved issue and (4) defendants are overplaying the one paragraph mention of Steve and are using that as the reason why this case was retransferred back to Utah.

## ADVERSE INFERENCE STANDARDS

Per the 10th Circuit, an adverse inference instruction may be an appropriate sanction for spoliation of evidence. *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 989 (10th Cir. 2006) But to warrant an adverse inference instruction, a party must submit evidence of intentional destruction or bad faith. *Henning v. Union Pac. R.R. Co.,* 530 F.3d 1206, 1220 (10th Cir. 2008); *see also Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir. 1997) ("The adverse inference must be predicated on the bad faith of the party..."). "Mere negligence in losing or destroying… is not enough because it does not support an inference of consciousness of a weak case." *Aramburu,* 112 F.3d at 1407.

### 1.  DEFENDANTS HAVE PURPOSELY MISCONSTRUED EVENTS

### A.  Honest Explanation of Falling Out

The ECF 224 motion is a little confusing in that Defendants say that because Greer had made a mention of Steve Taylor in a document in a motion to retransfer case, but that he didn't mention Steve Taylor in his initial disclosures, that Plaintiff is somehow involved in some bad faith scheme. This could be further from the truth.

Defendants have first of all misconstrued what Plaintiff said in the May 2024 retransfer motion and the 1-30-25 email to defendants' lawyer.

The 1-30-25 email to Mr. Hardin gave a brief overview of the relationship with Steve. But if it pleases the court, here is the full situation of what happened so that Greer can truly show this court he has indeed been honest.

### B.  Who was Steve Taylor?

As stated to Mr. Hardin, Steve was a college advisor/friend. Greer had known Steve since 2010. Steve managed a cafe at the Ensign College in Salt Lake City. Around 2021, Steve said he would be a witness if this case went to trial, while this case was pending in this Court before being dismissed. Just a casual, "sure," he would do it kind of thing.

Steve and Greer later had a falling out that same year over completely unrelated reasons.

Contrary to how defendants were trying to portray the events, it wasn't "they talked about kiwi farms and then fell out." Plaintiff never said that. No, both instances were separated by months.

After the tenth circuit reversed the case, Greer could never reach Steve to reconfirm if he would be a witness. Regardless, Greer listed him in his motion to retransfer because Steve had indeed once said he would be a witness. Greer was listing *ALL POSSIBLE WITNESSES* in his motion to retransfer. That's what FRCP 26 allows.

Greer has since learned why he could never reach Steve — Steve is dead.

When Greer wrote the motion to retransfer  on May 15th 2024, Greer was unaware Steve had died. Steve had apparently died in Jan of 2024 of a heart attack. Greer was never given any notice of Steve's death. **EXHIBIT A.**

After this case was retransferred to Utah, Greer still could never reach Steve to see if he would for sure recommit to being a witness and assumed he was still mad at Greer. That's why

Steve was **never again** listed in any email to defendants or in any documents to the Utah District Court because Greer assumed Steve was mad at him.

Since Greer has learned Steve died, **it makes sense why Steve never replied.** Because he is **deceased**.

Although Greer has lost texts with Steve talking about kiwi farms, attached is evidence that Steve and Greer did indeed talk. **EXHIBIT B.** The attached picture was from 2015. **EXHIBIT C.** It's of Greer holding a poster trying to get Taylor Swift to meet him. Who took the picture? **Steve Taylor**. It was taken inside of the Carriage/BC Café.

Greer gave Steve the nickname "Uncle Steve" because although they were not related, Greer confided in Steve about a lot. They indeed had long conversations regarding the kiwi farms.

### C. The 5-15-24 retransfer motion

Greer never said in his motion to retransfer or at any other time that all of the witnesses talked in 2024 or that the falling out happened in 2024. In his motion to retransfer, Greer simply listed all of the witnesses he ever talked to since the case was filed in 2020. Plaintiff was simply listing people who said at one point or another, between the years 2020 to 2024, that they would testify.At the time he wrote the motion, he thought they were all still alive and real people. **EXHIBIT D.**

### D. The use of the word "eager" in his retransfer motion

The adjective "eager" was miswritten and misinterpreted broadly and Greer meant that primarily with Scott, who ended up being pressured by family to not testify.

Again, this is starting to become extremely silly debating individual words and not the merits of the case.

As stated in ECF 221, the once proposed witnesses had given prior statements that they would testify and so Greer was assuming they were all willing to testify when he wrote the motion in 2024 to retransfer.

4

Again, Steve Taylor was not put in any initial disclosures because, like plaintiff said, Steve could not be reached. Steve could not be reached because he was dead.

Further, Steve differs from the two other once proposed witnesses, that plaintiff did in fact timely disclose to defendants (12-17-24), because the two other witnesses are still in touch with plaintiff or can easily be reached by Greer. Steve was no longer in touch with Greer, he wouldn't answer messages, and so it made zero sense to list a potential witness who was not replying to Greer.

It is insulting that defendants are now dragging up the memory of a dead friend to Greer. It's honestly ridiculous that defendants are scrutinizing each and every word Plaintiff has written. It's also confusing that defendants are NOW bringing up Steve, when they were aware of him since May 2024.

Mr. Hardin could have politely asked about Steve Taylor, but instead, Hardin very rudely demanded answers or else he would file sanctions.

This was also the first mention from defendants,  in the 2-7 months defendants have been litigating this case, about Steve. Regardless, Greer told defendants this, in his 1-29-25 emails: "You're doing a lot of looking on from the outside and accusing me of stuff without knowing any of the facts…" **EXHIBIT E.** Events outside of Greer's control made some of the once proposed witnesses go from willing to not so willing.. A lot of it has to do with defendants running a website known for stalking people. Plaintiff can't fault his witnesses because kiwi farms is indeed composed of a scary bunch of individuals.

Greer has indeed previously provided this Court with evidence that once proposed witnesses have witnessed the stalking coming from Kiwi Farms. **Exhibit F** shows one of the once proposed witnesses calling the kiwi farms people crazy**.** This Exhibit is important because although the once proposed witness backed out, the tangible evidence remains that a witness close to Greer said that.

Greer reiterates: Defendants do a lot of finger pointing and a lot of trying to paint Greer's mindset, instead of just accepting Greer's explanation at face value. Defendants' constant villainizing of Greer has broken down the communication channel between the parties.

Greer may be seeking a modified protective order from this court

## 2.    DEFENDANTS CAN'T SHOW PREJUDICE or BAD FAITH

Most importantly, per 10th Circuit instruction, defendants can't show prejudice or an adverse interference because at no time have they asked about Steve Taylor.

On 1-6-25, the parties had a telephonic meet and confer. Matthew Hardin asked Greer if he had any witnesses he would call. Greer said, "I did, but they don't want to get dragged into this case." At no time on the call did Mr. Hardin ask about Steve Taylor. So it's very surprising that defendants are now crying foul, when they have at no time prior asked about Mr. Taylor. If defendants would have asked about Steve Taylor, Greer would have told them what he is writing now: Steve could not be reached and Greer decided to not call or list Steve as a witness and that he listed Steve in his motion to retransfer based on things Steve said years before and that Greer was sincerely unaware Steve had died.

It was a mistake for plaintiff to openly list potential witnesses, who had said years prior they would testify, but plaintiff should not be punished for "mistake of form." *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261 (9th Cir. 1992). Several other circuits follow this logic by not punishing pro se litigants for mistakes, misstatements or for not having "neatly parsed" allegations. *Phillips v. Girdixh,* 408 F. 3d 124 (2nd Cir. 2005). There's no reason this Court can't see Greer's mistakes as exactly that: mistakenly speaking too soon without a solid recommitment from witnesses.

Even without witnesses, copyright law and the evidence swings in plaintiff's favor.

## 3.    RELITIGATING RESOLVED ISSUES & WASTING RESOURCES

Not only are defendants belatedly bringing up a witness, but defendants are now wasting judicial resources. Both plaintiff and defendants signed a stipulation on 12-20-24 that Greer wouldn't call any witnesses. Defendants had no reason to believe Plaintiff was attempting to call Steve Taylor. As stated, Greer assumed Steve was mad at him and didn't realize Steve was dead.

### 4.    DEFENDANTS ARE OVERPLAYING STEVE'S ROLE FOR WHY THIS CASE WAS RETRANSFERRED

Defendants claim this case was retransferred because of Greer's witnesses, most importantly Steve, yet they are overlooking the many other factors for why this case was retransferred back to Utah, with one of the main reasons because defendants couldn't justify why the case had to be transferred to Florida. From this District Court's July 15th, 2024 Order: "No Tenth Circuit authority suggests that this factor should be flipped when the plaintiff's choice of forum is accorded little weight or when the non-movant does not respond. Instead, the caselaw is clear that the movant "bears the burden of establishing that the existing forum is inconvenient" and that the transferee forum would be more convenient. ***The court's determination to completely relieve Defendants of the burden of showing that transfer would be convenient for the parties and witnesses was clearly erroneous*** and, therefore, the court vacates its prior decision transferring the case to the Northern District of Florida." *Greer v. Moon,* Case No. 2:24-cv-00421-DBB-JCB (D. UTAH, July 15th, 2024).

Per the Court's own Order, it wasn't vacating the transfer because of Steve Taylor — the transfer was vacated because Joshua Moon couldn't show why he needed the case in Florida.

Others factors at play are that Joshua Moon and his site have targeted Greer for 8 years. They have purposefully availed themselves to the District of Utah, as that is where the brunt of the infringement was felt.

Another point not mentioned in Greer's retransfer motion is that Joshua Moon fled the country and it's unclear if Joshua is still living abroad or not, so a transfer to Florida never made sense.

7

And plaintiff will once again reiterate: yes, all three witnesses said between 2021 and 2023 that they would testify. However, as this court understands, humans are fickle. And plaintiff again apologizes for how it looks, but plaintiff can't help if two witnesses backed out and a third witness died.

## CONCLUSION

Plaintiff asks this court to not enter adverse interference because Steve Taylor is dead. Most importantly, plaintiff asks the court to not enter adverse interference because defendants have not met their burden by failing to show prejudice or bad faith, They never once asked about Steve Taylor, aside from an email threatening sanctions a day before this adverse motion was filed, and instead decided to file this "gotcha" motion.

Respectfully

DATED: 2-3-25

Russell Greer

/rgreer/

Pro Se

## <u>CERTIFICATE OF SERVICE:</u>

Pursuant to FRCP 5(b), I certify that on 2-3-25, I served a true and correct copy of the attached document by email to all attorneys on record.

# **EXHIBIT A**



# Stephen Pike Taylor

*1970 ~ 2024*



Please scan to hear Stephen's last talk.

## To watch the recorded services

Please click on the blue "Watch Services" button below





Stephen Pike Taylor passed away January 17, 2024 after suffering a heart attack while at work. He was 54 years old.

Stephen was born January 12, 1970 to David and Francine Taylor in Ridgecrest, California. He is the 2nd of 8 children. He lived in California until he was 8 years old, when the family moved to Sandy, Utah. Growing up, Stephen always had tons of friends and loved being involved in soccer, baseball but especially basketball, where he excelled, and one very important run where he won the Southern California race for his age group.





**EXHIBIT B**





**EXHIBIT C**



**EXHIBIT D**



**4:21**  ..ill 5G 30

greer v kiwi farms motion to ret...  ⌄  **Done**

because Nevada is a District where the case might have been brought. A suit "might have been brought" in a district if the "plaintiff has a right to sue in that district, independently of the wishes of defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Plaintiff has a right to sue because the ongoing infringement is targeting new copyrights in the District of Nevada.

### 4. Florida is Inconvenient for Greer's Witnesses

A motion to retransfer is also for connivence of parties and witnesses. Defendants named vague witnesses in their motion to transfer, which leads one to believe there are no witnesses. Greer, on the other hand, HAS REAL witnesses who are eager to testify to the devastation Kiwi Farms has caused to Greer's intellectual property and works. Florida is too far for these witnesses.

One witness is Greer's father who has witnessed firsthand the infringement and the constant nuisance that is Kiwi Farms. In 2022, Greer's family witnessed the emotional toll Kiwi Farms' infringement had on Greer that they had the Las Vegas police department go to Greer's house. Greer's father has Parkinson's and so flying to Florida would not be comfortable for him.

Another witness is Steve Taylor, who is a friend of Greer's and who lives in Utah. He has witnessed the infringement perpetrated by Kiwi Farms.

There are more witnesses that would be called and summoned for a trial, who DO NOT LIVE IN FLORIDA, and so a venue transfer to Nevada would be easier for the witnesses to get to, as Nevada is only a 6 hour drive from Utah or a short flight, whereas Florida requires flying from the Rocky Mountain states.

15

### 5. 9th Circuit Law Resolves this Case Better than 11th or 10th Circuit law

If this Court may look back to the original dismissal of this case back in September 2021, the Court will see that the Utah District Court refused to apply 9th Circuit law. Although the



**EXHIBIT E**

