FILED
2025 MAY 12 PM 10:56
CLERK
U.S. DISTRICT COURT

Russell Greer
1100 Dumont Blvd
Apt 139
Las Vegas, NV 89169
801-895-3501
russmark@gmail.com
Pro Se Litigant

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL GREER**<br><br>      Plaintiff<br><br>v.<br><br>**JOSHUA MOON ET AL**,<br><br>      Defendants | **PLAINTIFF'S OPPOSITION RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>      Case No.:   2:24-cv-00421-DBB-JCB |

Plaintiff Russell Greer offers the following oppositional response, in accordance with Local Rule 7-1(4)(A)(iii).

## I.    INTRODUCTION

Since 2017, Joshua Moon's  (and his LLC's[1]) website has stalked and directed its activities at plaintiff.  Plaintiff vehemently opposes the motion to dismiss filed by Defendants. Defendants don't get a second chance to dismiss this case. They don't get a second swing to re-litigate their motion they filed 3 years ago. Further, this case is not frivolous , as will be established, and jurisdiction and venue are both proper.

## II.    REBUTTAL/RESPONSE TO DEFENDANTS' MOTION

### A.  Defendants Do Not Get to Relitigate Rule 12(b)

Defendants say that by plaintiff amending his complaint, his original complaint is no longer of "legal effect" and they are thereby allowed to relitigate a motion to dismiss. (ECF 274, page 3).

"While it is true that an amended complaint ordinarily supersedes a prior complaint, and renders it of no legal effect ... [i]t is also true that if the amended complaint also contains new matter, the defendant may bring a second motion under Rule 12 to object to the *new allegations only.*" *Sears Petroleum & Transport Corp. v. Ice Ban America, Inc.,* 217 F.R.D. 305, 307 (N.D.N.Y. 2003). This second complaint filed by Plaintiff is "almost an exact replica" of the original complaint, the only new material being the addition of two John Does and a second Defendant, Lolcow LLC. This second Defendant was only added because the Defendants requested a substitution of the website Kiwi Farms. So in essence, the adding of Lolcow LLC is not a new addition, rather, it's a substitution and the 10th Circuit found that Kiwi Farms was liable for contributory copyright infringement, along with its owner Joshua Moon. Substituting the defendants doesn't erase the 10th Circuit's finding. There are no new allegations against

---

[1] Defendants concede that Mr. Moon is the sole member of the LLC.

Joshua Moon or his sole member LLC. *Power Probe Grp., Inc. v. Innova Electronics Corp*., 21-cv-00332 (D. Nev. Apr. 27, 2023).

Defendants failed to bring up improper service, jurisdiction, charges of claims being frivolous, etc, when they moved to dismiss the original complaint 3 years ago. Retaining a new attorney (from Mr. Skordas to Mr. Hardin) does not allow Defendants the ability to bypass rules and procedures. Interpreting FRCP Rule 12(b) to "permit a defendant to submit a post-answer motion to dismiss an amended complaint attacking claims raised in the original complaint would render the 12(b) restriction on post-answer motions meaningless." *Id.*

Following the lead of *Power Probe,* which had to look at other court rulings because the 9th Circuit hasn't addressed the issue, it's appropriate to look at how other district courts have handled this issue. Most district courts have denied second motions to dismiss against matter that wasn't new. See: *Brooks,* 2016 WL 866303, at *3 (D. Or. Mar 2, 2016) (denying defendant's motion to dismiss amended complaint alleging same causes of action as original complaint and concluding defendant waived its 12(b)(6) defense by failing to assert defense against original complaint); *Pascal,* 2020 WL 4923974, at *2 (N.D. Cal. Aug. 21, 2020) (same); *Best Fresh LLC v. Vantaggio Farming Corporation,* No. 3:21-cv-00131-BEN-WVG, 2022 WL 4112231, at *10 (S.D. Cal. Sept. 8, 2022) (holding that entertaining Defendant's "motion to dismiss claims asserted in the original complaint weighs against judicial economy"); *Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S., et al.,* No. SA CV-15-0837-DOC (JCGx), 2016 WL 10570248, at *6 (C.D. Cal. Aug. 17, 2016) ("Holding that an amended complaint allows a defendant a fresh opportunity to bring a 12(b)(6) motion to dismiss as to claims raised by a *1147 prior—answered—complaint would undermine the requirements of the Federal Rule."); *see also Sears Petroleum & Transport Corp. v. Ice Ban America, Inc.,* 217 F.R.D. 305, 307 (N.D.N.Y. 2003) ("While it is true that an amended complaint ordinarily supersedes a prior complaint, and renders it of no legal effect ... [i]t is also

true that if the amended complaint also contains new matter, the defendant may bring a second motion under Rule 12 to object to the *new allegations only.*" (emphasis added)); *Internet Products LLC v. LLJ Enterprises, Inc.,* No. 18-15421 (RBK/AMD), 2020 WL 6883430, at *2 (D. N.J. Nov. 24, 2020) (noting that a plaintiff's amended complaint "does not— and should not— automatically revive any defenses and objections" waived by defendant in response to the original complaint, including a 12(b)(6) defense).

 The filing of the amended complaint was to "flesh out" the claims. Nothing new was added to the complaint. Fleshing out the complaint does not give rise for defendants to revive defenses (like jurisdiction and service) that Defendants' first lawyers failed to use.

### B.  Defendants are Barred by FRCP 12(g)(2)

 Similarly to Point A, which relied on persuasive case law, Defendants are barred by the Federal Rules of Civil Procedure themselves from relitigating and bringing up affirmative defenses that they failed to bring up the first time around.

### FRCP 12(g)(2)

 This rule reads: "Except as provided in Rule 12(h)(2) or (3) , a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

 Rule 12(g)(2) is designed to avoid unnecessary delay at the pleading stage by encouraging "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion.'" *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.,* 771 F.3d 697, 702 (10th Cir. 2014). Although it may seem formalistic, "compliance with Rule 12 is mandatory, and a district court errs if it considers a second, successive Rule 12 motion, or construes it as a Rule 12(c) motion for judgment on the pleadings if the pleadings have not closed." *Speed RMG Partners,* 2021 WL 5087273, at *4

(citing *Leyse,* 804 F.3d at 321). The pleadings have not closed, therefore this Court cannot construe the motion as a 12(C ) motion.

Further, Defendants do not meaningfully explain how any amendments of the complaint are so material so as to revive their right to challenge the sufficiency of Plaintiff's allegations under Rule 12(b(2-6). *Sanders v. Polaris Industries,* No. 21-cv-02055-NYW-MH. (D. Colorado, 2022).

Because Defendants failed to bring up lack of personal jurisdiction; improper venue; insufficient process; insufficient service of process in their original 12(b) motion to dismiss, they have waived and forfeited those claims. This is in line with 10th Circuit precedent, as established above.

The Defendants' 12(b) motion should be denied based on Points A and B alone. If this Court finds that Points A and B are not controlling, then plaintiff will proceed with opposing Defendants' motion to dismiss.

### C.  Jurisdiction and Venue is Proper

As stated above, Defendants waived their argument of personal jurisdiction (12(b)(6)(2)) by not bringing it up in their first motion to dismiss. That aside, jurisdiction is proper because Plaintiff ***clearly*** stated in his Complaint that Defendants have purposely directed their activities at him. This will be broken down in two parts.

### I.    Online Business

The case law that Defendants cite is unavailing because it is inapplicable to the case at hand. All of those cases had to do with physical businesses. Mr. Moon operates a website. How that website does business is not in the regular sense as a traditional brick and mortar building. Mr. Moon created his website to "exploit the disabled," which then morphed into stalking really anybody who falls under the broad definition of a "Lolcow". Because this definition is so broad, Moon's business (i.e. his website) allows for users to put the personal information of any person, anywhere in the world, onto his website.

Plaintiff is not alleging a mere passive operation of a website as establishing jurisdiction. No. Plaintiff is arguing that every single thing about Plaintiff and his copyrighted works have been put onto the Kiwi Farms website and Moon's users going out of their way to engage in review bombing to destroy the market. The copyright infringement (the unauthorized downloading and streaming) is the catalyst for establishing jurisdiction over Defendants. This method of establishing jurisdiction over an online business has been upheld by the 9th Circuit. See: *Herbal Brands, Inc. v. Photoplaza, Inc.,* 72 F.4th 1085, 1093 (9th Cir. 2023). As will be established below, the District of Utah has adopted this test with establishing jurisdiction over online businesses,

## II.    Utah's Purposeful Availment Test

In the case of *Nature's Sunshine Products v. SAAM Enterprise,* Case No. 2:25-cv-00012-TC (D. Utah 2025), this District Court held that Utah had jurisdiction over an online business defendant. The Court articulated the test as follows:

1. Offering its website services to Utah and throughout the world. Moon has done this by allowing people from around the globe to access Moon's website and to access threads pertaining to Greer; threads that have Greer's copyrights. Indeed, there were a few people from Utah who had accessed Kiwi Farms and were involved in the stalking of Greer and the infringements of his copyrights. In this instance, goods for sale are taking plaintiff's copyrights and allowing free downloads.

2. Defendants have control over the website and are able to remove copyrighted material. Joshua Moon has even defended the infringement of lesser known copyrights in the FAQS section of his site. (Amended Complaint, paragraph 61).

3. The last prong of the test is "examining the Defendants' knowledge that the brunt of harm would be felt in the forum state—this court has recognized that "there is some overlap between [the `expressly aimed'] test and Calder's additional requirement ... that a

defendant must know that the harm was suffered in the forum state." *Id. Nature's Sunshine* gives evidence of this prong by the multiple cease and desist letters sent to Defendants. Similarly here, Plaintiff has asked Joshua Moon since 2018 to remove him from the Kiwi Farms website. In the amended Complaint, in Exhibit S, is one such example of Greer sending Moon a DMCA removal letter. As we all know, Moon published the letter onto his website (Amended Complaint, Exhibit T). The letter is even signed with an address of 6337 South Highland Drive, Holladay, Utah, **proving that Moon would have known** Greer was a resident of Utah and that he was feeling the infringement's effects. That establishes the final prong of the purposeful availment test.

Despite the protests from defendants, this Court has personal jurisdiction over defendants, as demonstrated. This Court can even follow the *Zippo Test.* Following the *Zippo Test,* the kiwi farms website is hardly a passive website, as the users aggressively target random individuals. *Soma Medical International v. Standard Chartered Bank,* 196 F.3d 1292 (10th Circ. 1999) (holding a 3 part test to establish internet personal jurisdiction). In fact, 4 people have committed suicide as a result of the Kiwi Farms' hate campaigns. *The Website that Wants You to Kill Yourself – and Won't Die.* Mother Jones. 2023. ([https://www.motherjones.com/politics/2023/02/kiwi-farms-die-drop-cloudflare-chandler-trolls/](https://www.motherjones.com/politics/2023/02/kiwi-farms-die-drop-cloudflare-chandler-trolls/)). ("Most websites aren't known for having a "kill count." Kiwi Farms is. Its victims reportedly include Julie Terryberry, who in 2016 took her life after being targeted by users of the site. Two years later, after years of harassment from Kiwi Farms trolls, Chloe Sagal lit herself on fire in a public park. In June 2021, an American video game developer based in Japan, named David Ginder, took their life amid a campaign of Kiwi Farms abuse."). The commercial nature of the site is that Moon gets donations and YouTube monetary payments for having his site that targets people.

Further proving that the website is not passive, Joshua Moon himself has taunted law enforcement in various jurisdictions and posted his exchanges onto his website. *Christchurch Mosque Shootings: Website Kiwi Farms Refuses to Surrender Data Linked to Accused*. The New Zealand Herald. (2019).[2]

(https://www.nzherald.co.nz/nz/news/article.cfm?c_id=1&objectid=12214017&fbclid=IwY2xja wKOMPxleHRuA2FlbQIxMQABHqyQ4qhI9iKxpe1CkArWD2UdZrjre1PAGhjCsIAtxEL0-esSD9TWeTkoXOq-_aem_32h3PomR2W6JovRKvxsnpQ) .

Also, in 2020, when this case was filed, Joshua Moon was purportedly living abroad in some unknown country and so Florida wouldn't have had jurisdiction.

The Court shouldn't have to rule on this, as Defendants waived their right to argue jurisdiction, but if the Court does, it should deny dismissal based on that Mr. Moon and his website have targeted plaintiff when he was living in Utah, as that is where the copyright infringement was felt. Greer moved because the kiwi farms users had made it extremely hard to find work in Utah through misinformation campaigns. Greer has fought very hard to not give in and find himself on Kiwi Farms' "kill count list".

### D.  Alternative Service By Email Was Approved by this Court

Contrary to the protests of Defendants in this regard of service not being proper, that point is long gone. They waived that right to protest service 3 years ago by not including that in their original motion to dismiss. That aside, Defendants have a designated email for legal letters on their website: legal@kiwifarms.net

Additionally, despite the complaints of Defendants, plaintiff did try finding an address for service for Joshua Moon and the "business address" for Kiwi Farms is a mailbox store in Florida. It was unclear if any of the workers at the store were authorized to accept service on his behalf.

---

[2] As a reminder: Kiwi Farms isn't based in New Zealand.

Because Joshua Moon publishes every email from Greer onto his website, Greer felt it was fruitless asking him for a physical address for service.

Lastly, the verbiage of Defendants means nothing because this Court authorized email service. If Defendants felt service was wrong, they should have cross-appealed at the 10th Circuit. Again, it's three years too late for Defendants to be crying about the manner in which they were served. They obviously received their summonses in an email they designated as receiving "garbage legal letters" from a process server.

### E.  Venue is Proper

First and foremost, to address Footnote 11, it was not materially false information about Steve Taylor. Greer was listing all of the people he had ever spoken to, who said they would be witnesses for this case. When Greer wrote that, to retransfer, Greer was unaware that Steve Taylor had died. At most, it was negligent to not double check with Steve if he was still interested. Greer explained all of this in his Response to Defendants' Motion for Adverse Interference. Defendants, however, are hanging their hats so hard on Steve Taylor as the reason for this case being retransferred, when so many other factors were at play, that Greer will discuss below.

Secondly, as with the other 12(b) defenses, Defendants have waived their right to move for dismissal as venue being a reason. They don't get to wait 3 years to argue venue as improper.

Thirdly, this Court has already addressed the venue argument in its July 15th, 2024 Order. This Court wrote: "the caselaw is clear that the movant "bears the burden of establishing that the existing forum is inconvenient" and that the transferee forum would be more convenient. The court's determination to completely relieve Defendants of the burden of showing that transfer would be convenient for the parties and witnesses was clearly erroneous and, therefore, the court vacates its prior decision transferring the case to the Northern District of Florida." *Greer v. Moon*, Case No. 2:24-cv- 00421-DBB-JCB (D. UTAH, July 15th, 2024). Per the Court's own

Order, it wasn't vacating the transfer because of Steve Taylor — the transfer was vacated

because Joshua Moon couldn't show why he needed the case in Florida. Others factors at play

are that Joshua Moon and his site have targeted Greer for 8 years. They have purposefully

availed themselves to the District of Utah, as that is where the brunt of the infringement was felt.

Fourth, Defendants cite 28 USC 1400 as venue being improper because Utah is not "where

Defendants reside or can be found." (Page 12). This argument is a tad misleading because other

Courts within the Tenth Circuit have ruled, pertaining to this exact statute in copyright cases:

"Under section 1400(a), a defendant may be "found" in any judicial district where he is subject to

personal jurisdiction. *Palmer v. Braun,* 376 F.3d 1254, 1260 (11th Cir. 2004); *Waeltz v. Delta*

*Pilots Retirement Plan,* 301 F.3d 804, 809 (7th Cir.2002); *Varsic v. United States Dist. Ct. for*

*Cent. Dist. of California,* 607 F.2d 245, 248 (9th Cir.1979)." *Chalfant v. Tubb,* 453 F.Supp.2d

1308 (N.D. Oklahoma 2006). As established earlier, personal jurisdiction applies to defendants

because they have availed themselves to Utah, thus venue also attaches.

Lastly, Defendants offer another misleading argument by saying Utah is not the location

where any substantial part of the events or omissions giving rise to the claim occurred, however,

as established in Point C, Plaintiff has provided proof that he was living in Utah when the

infringement occurred. Greer even signed his 2019 DMCA letter with a Utah address. Per other

previously cited cases, the address on cease and desist letters suffices as proving plaintiff has felt

injury in the state of his address. Greer was living in Utah when he contacted the police in Utah

on various occasions (2017 & 2018) and filed police reports against Joshua Moon and talked

with a police sergeant on steps to get Joshua Moon to stop.

### F.  Plaintiff Has Properly Pled Contributory Copyright Infringement

Defendants' assertion that the 10th Circuit ruling is now wiped away and no longer of binding

effect because of the amended complaint is hilariously absurd. As previously stated, by so many

different courts, and the 10th Circuit, amending a complaint DOES NOT give Defendants a

second chance to argue a motion to dismiss unless there is new allegations in the amended complaint.

Further, no where in the Defendants' cited *Franklin* case does it say that past appellate decisions are moot or not of any effect if a complaint is amended. Instead, the prior 10th Circuit ruling acts as a guide for how this case should proceed going forward. *United States v. Spedalieri,* 910 F.2d 707, 709 n.2 (10th Cir. 1990). (A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits.")

The facts of the amended Complaint mirror the original Complaint that it is still a replica. The claims are fleshed out, but nothing has been changed substantially to allow Defendants a new opportunity to relitigate this claim. *Sanders v. Polaris Industries,* No. 21-cv-02055-NYW-MH. (D. Colorado, 2022).

Plaintiff will rehash the contributory copyright claim, in accordance with 10th Circuit precedent. The controlling cases in this present case are still Greer v. Moon (10th Circuit 2023) & *Diversey v. Schmidly,* 738 F.3d 1196 (10th 2013). *Diversey* outlined a contributory infringement test as follows for pro se copyright infringement cases:

1. copyrighted work was directly infringed by a third party,

2. Mr. Moon and Kiwi Farms "kn[ew] of the infringement," and

3. Mr. Moon and Kiwi Farms "cause[d] or materially contribute[d] to [third parties'] infringing activities." *Id.*

The different prongs will be elaborated on as follows and which are in the Amended Complaint:

I.    Copyrighted work was infringed by multiple direct infringers: namely Moseph Jartelli, for the song, and many unknown direct infringers who have posted various

11

links, as outlined in the Complaint, of the book being infringed not just on a Google

Drive link, but also its PDF has been uploaded to the site in its entirety.

II.    Mr. Moon knew of the direct infringement from written correspondence from Mr.

Greer. Greer even sent Moon a DMCA takedown request.

III.    Moon caused third parties to infringe in various ways (more than just posting a

takedown letter)  and this is the part where Greer has fleshed out the claim:

- Publishing the DMCA notice and correspondence onto the website, which in
turn whipped his users into a frenzy and inspired them to ramp up their
infringement efforts.

- The section of Kiwi Farms where Moon published the letter is entitled, "Take
that Off the God Damn Internet." On that very same site section are hundreds
of other DMCA removal requests that Mr. Moon posts and him and his users
mock. For instance, on 08-31-21, Mr. Joshua Connor Moon, using his Null
persona, conducts a poll of whether to remove copyrights in response to a
"kind" letter he receives from a lawyer for a person named Isabella Loretta
Janke. **EXHIBIT A.** The poll of his users vote to keep the infringing content
online. (https://kiwifarms.st/threads/2021-08-31-isabella-loretta-janke-via-
attorney-a-courtesy-request.99897/). This is the kind of person Mr. Moon is.
He taunts and helps orchestrate the targeting of random people, as can be seen
here. From this very section alone, it proves that Mr. Moon materially
contributes to copyright infringement.

- The overall reputation of Kiwi Farms "attracts users of a mind to infringe."
MGM v. Grokster, 545 U.S. 913 (2005). The site has inspired incredibly
bizarre and creepy people to create profiles of plaintiff on Kiwi Farms, with

profile names that have ableist rings to them ("Russtard"), who encourage the
infringement of Greer's works and who tell people to not give Russell money.

- Defendants have a FAQs section that says he considers non-famous works to
  be fair use. That would inspire anyone reading that to infringe anyone's
  copyrights. This FAQs section shows that Moon fosters and encourages
  infringement under the guise of fair use.

### G. Defendants Have No Valid Fair Use Claim

A pattern readily visible in this case is that Defendants will lie and gaslight to win
at all costs. For the Defendants to say that Greer is not upset about the copyright
infringement is an absolute lie. As stated in paragraph 100 of the amended complaint,
the copyright infringement has been damaging because Joshua Moon and his website
Kiwi Farms "usurps the market" by offering a "competing substitute." *Andy Warhol
Foundation v. Goldsmith*, 11 F. 4th 26 (2nd Circ. 2021). Greer is pretty upset by that.

As can be seen in Exhibit R of the amended complaint, the audio mp3 had 366
views back in 2019. That number has since grown. Those were views that translated
to mp3 downloads that Greer never profited any money off of. And can be seen in the
same exhibit, users are conspiring amongst themselves to not "give Russell money."

And it's true: the criticism is an extra slap to the face because it's not unbiased
criticism. The works are being bombarded by a hate site that has a self-proclaimed
mantra of exploiting the disabled. This hate review bombing would not be possible if
Joshua Moon simply pulled the plug on his site because Defendants have "the ability
to locate infringing material listed on its search indices, and the right to terminate
users' access to the system." *A&M Records v. Napster,* 284 F.3d 1091 (9th Cir. 2002).

Two things can be true at the same time: Greer is frustrated that he is losing
money from kiwi farms by the site offering a competing substitute and he is frustrated

by the orchestrated review bombing of his works; however, that's aside from the point: Defendants have no fair use defense. Responding to their 4 claims of fair use:

Firstly, regarding commercial nature: Greer clearly alludes to the commercial nature by Mr. Moon offering a "competing substitute." (Amended Complaint, paragraph 100). Since opposition responses are designed to elaborate on complaint allegations, Plaintiff herein elaborates: Moon offers a competing substitute to draw in viewers, which translates to donations, sponsorships and monetary payments from YouTube views. Per sources, Mr. Moon's site receives 16,000 logins. *Decoding Kiwi Farms: the Blocked Internet Bully that Continues to be a Nuisance.* Le Monde. (2022). (https://www.lemonde.fr/en/pixels/article/2022/09/05/decoding-kiwi-farms-the-online-bully-that-continues-to-thrive-despite-being-blocked_5995916_13.html). (Kiwi Farms is a discussion forum **dedicated to online harassment.** Its members – there are 16,000 daily logins according to its administrators – meet there to plan, organize and coordinate targeted harassment operations.)

Regarding donations, Mr. Moon has solicited donations from his users since 2016: https://kiwifarms.st/threads/supporting-the-forum.27022/ . **EXHIBIT B.** So by offering a competing substitute, it motivates Moon's users to donate to him to keep the website up, even if Moon is not profiting directly off of the infringing material. Mr. Moon has been able to live abroad because of the donations he receives and has been able to keep his website alive (in the exhibit, Moon claims it costs $1,000 a month to keep his website up) and afford an attorney.

Various courts have held that direct economic benefit is not required to demonstrate a commercial use. Rather, repeated and exploitative copying of copyrighted works, even if the copies are not offered for sale, may constitute a commercial use. *See Worldwide Church of God v. Philadelphia Church of God,* 227

14

F.3d 1110, 1118 (9th Cir.2000) (stating that church that copied religious text for its members "unquestionably profit[ed]" from the unauthorized "distribution and use of [the text] without having to account to the copyright holder"); *American Geophysical Union v. Texaco, Inc.,* 60 F.3d 913, 922 (2d Cir.1994) (finding that researchers at for-profit laboratory gained indirect economic advantage by photocopying copyrighted scholarly articles). In the present case, commercial use is demonstrated by a showing that exploitative unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies).

Secondly, there was *not* just two postings of the copyrighted material:

- There was the Google Drive link (paragraph  37).

- The song MP3 (paragraph 37).

- And then in the exhibits of the amended complaint (EXHIBITS L and X), it shows different postings that plaintiff isn't pursuing claims for because it was difficult knowing whether the postings were editorial or by users, plus the showing of one book infringement suffices to show book infringement.

By Defendants' own admission, there are 100,000 pages on plaintiff. Those pages more than likely have copyrighted material. Obviously, sifting through every page would not be economical.

Third, the amount and substantially of the commentary is irrelevant. The complete copies of the infringed books and songs are all on kiwi farms. Hachette Book Group, Inc. v. Internet Archive, No. 23-1260 (2d Cir. 2024) (Court found it highly significant that Internet Archive copies the works in their entirety and makes them available in their entirety to the public. Comparing to Kiwi Farms, Moon makes all copyrights, in their entirety, available to anyone who creates a

free account on his website. Greer created a free account on Kiwi Farms and was able to download his copyrights in their full).

Finally, in an effort to argue fair use, Defendants write: "Mr. Greer does not allege that the market value of his copyrights has been impacted by infringement, but instead by criticism." This just isn't true. In paragraphs 100 to 106 of the amended complaint, plaintiff writes:

"100. The contributory infringement has had damaging effects to the market because Joshua Moon and his website Kiwi Farms "usurps the market" by offering a "competing substitute." Andy Warhol Foundation v. Goldsmith, 11 F. 4th 26 (2nd Circ. 2021).

101. The market is Greer's self-published book on Amazon and the many streaming services like Spotify, Apple Music, etc.

102. Instead of these critics and haters and ableists on Kiwi Farms paying to stream or buy books or songs of Greer's, to criticize said works, the entirety of the works are on Kiwi Farms for the users to download to their devices, so that "nobody accidentally gives Russell money."

103. Based on the visible number of views on the MP3 files of Greer's, Greer has lost thousands of dollars, if one were to calculate the number of views by MP3 digital download store price. It's unknown how many people have downloaded the book.

104. Simply ignoring the infringement and trying to make money through the streaming platforms is insufficient to turn a profit because Greer's online following isn't large enough.

105. Contrary to Mr. Moon, non-famous artists need all of their monies earned.

106. There's nothing fair about robbing a person of their money."

Clearly, plaintiff articulated the effect on the market. Instead of the haters and the critics and the bottom dwellers that lurk on Kiwi Farms paying to stream and critiquing his works, they rob him of his money by refusing to stream anything; refusing to pay one iota. In fact, they've conspired amongst themselves to not give "Russell any money."

None of that is fair use.

## CONCLUSION

This Court should deny Defendants' motion to dismiss because they are procedurally barred from bringing new affirmative defenses that they failed to raise 3 years ago. Even if they aren't barred, plaintiff has demonstrated that this Court has venue and jurisdiction over defendants. Further, plaintiff has pled contributory copyright infringement, the prior tenth circuit ruling is not wiped away and defendants have no valid fair use argument.

Respectfully submitted,

Russell Greer

/rgreer/

5-12-25

**<u>CERTIFICATE OF SERVICE:</u>**

Pursuant to FRCP 5(b), I certify that on 5-12-25, I served a true and correct copy of the attached document by email and ECF to all attorneys on record.

**EXHIBIT A**



5:11

Votes: 3,701    94.8%

DELETE!
Votes: 202    5.2%

Total voters: 3,903 · Poll closed Sep 11, 2021.

🔒 Not open for further replies.

| 1 | ... | 62 | Next ▸ |

Next Highlight

**Null**
Ooperator
kiwifarms.net

Sep 10, 2021    Highlight  ⏩  ⤳  #1

🛡 Featured on Sep 10, 2021 at 11:28 AM: RULES OF NATURE: Isabella Loretta Janke

We have a very old tradition called *RULES OF NATURE*, which hasn't been done in years at this point. Basically, when a request comes in that's polite and asks for a courtesy removal, I may put it up to a vote.

So here's the request.



🔒 kiwifarms.st

**EXHIBIT B**

