IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

_____
                              )
 RUSSELL G. GREER,            )
                              )
              Plaintiff,      )
                              )
 vs.                          ) Case No. 2:24-CV-00421
                              )
 JOSHUA MOON, publisher of    )
 the website Kiwi Farms,      )
 et al.,                      )
                              )
              Defendants.     )
_____)


VIDEOCONFERENCE - MOTION HEARING


HELD BEFORE THE HONORABLE

MAGISTRATE JUDGE JARED C. BENNETT


ELECTRONICALLY RECORDED ON

May 6, 2025


Transcribed by: Tasha A. Sisneros, RPR, CRR, CSR
United States Federal Court
206 West Tabernacle Street
St. George, Utah 84770
435-773-5115
Tasha_Sisneros@utd.uscourts.gov

1

**APPEARANCES**

2  **FOR THE PLAINTIFFS:**

3  Russell G. Greer
PRO SE
4  1155 S. Twain Avenue, Suite 108420
Las Vegas, Nevada 89169
5  801-895-3501
russmark@gmail.com
6

7  **FOR THE DEFENDANT:**

8  Matthew D. Hardin
HARDIN LAW OFFICE
9  101 Rainbow Drive, PMB 11506
Livingston, Texas 77399
10  202-802-1948
matthewdhardin@gmail.com
11

12  (All parties appeared via video.)

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

\* \* \*

**THE COURT:**  Let's go on the record in the case of Russell Greer v. Joshua Moon, et al.  This is case 2:24-cv-421. We are here today to address a whole series of motions.

I've got, representing himself, Mr. Greer.

And I have Mr. Hardin representing the defendants.

What I'd like to do today is take up all the motions in five different categories.  The first category I'd like to take up is the Sanctions Motion, so we'll be dealing in this category with ECF No. 228, which is Mr. Hardin's motion regarding sanctions; and ECF-243, which is Mr. Greer's Rule 60(b) Motion.

As to rule -- as to ECF No. 228, I know Mr. Hardin is seeking attorney's fees over $5,000.  But I think Judge Barlow, in ECF-230 already addressed that, and said the fees -- at least as to the failure to disclose the initial disclosures of $1,000 -- and so as to that part, I think that motion is moot.

Now, I understand that Mr. Greer has not paid those fees yet, and that -- then Mr. Greer is asking for some reconsideration, or at least a stay I should say, on that.  We will address that later.  But as to the $1,000, it is still pending.  But beyond that, as far as the sanctions go for the failure to disclose, the disclosure order, it seems like Judge Barlow has already taken care of that.

3

1    Do you see it differently, Mr. Hardin?

2    **MR. HARDIN:**  Your Honor, I agree that you can't

3   overrule Judge Barlow.  For the record, I want to preserve it.

4   We filed that motion before his ruling came out.  We,

5   obviously, think we are entitled to it, but I recognize that a

6   magistrate judge can't overrule a district judge, so you can't

7   do anything with it.

8    **THE COURT:**  I appreciate that.  I am glad we see it

9   the same way, at least, as to my authority, so we will go from

10   there.

11    As to ECF No. 243, so here Mr. Greer filed under Rule

12   60(b), a motion that, basically, seeks to talk about sanctions

13   under Rule 37 for a different discovery Motion to Compel that I

14   ordered.  So back in ECF-227, Mr. Hardin had moved to see a --

15   for the production of a state court restraining order denial.

16

17    Mr. Greer didn't respond to the Motion to Compel, so

18   the Court granted it.  I then ordered Mr. Greer to address

19   whether the Court should award fees for the Motion to Compel.

20   Mr. Greer, instead of filing that response, instead, basically,

21   filed a different motion under Rule 60(b) seeking to have that

22   ruling set aside.

23    So, Mr. Greer, let's talk about Rule 60(b) for a

24   moment.  The rule itself talks about setting aside a judgment.

25   A judgment is not an interlocutory order.  It is a final

1    judgment.  So the final judgment in the case is something that

2    Rule 60(b) pertains to, not a discovery sanction.  So Rule

3    60(b) is not an appropriate vehicle to seek to overturn or seek

4    to address a discovery sanction in the middle of a case.

5          As you pointed out, it is not -- the discovery

6    sanction itself is not an appealable order, so Rule 60(b)

7    doesn't quite fit.  However, I am going to liberally construe

8    ECF-243 to be a response under Rule 37(a) (inaudible)

9    opportunity to be heard.  Based on the factual representations

10   included in your motion, it seems that you were in the process

11   of trying to track that motion -- or that order down, provided

12   Mr. Hardin, at least, the case number.

13         And, understandably, he was unable to get it given

14   the sensitive nature of the documents, (inaudible) and he

15   eventually did.  Looking at the relevance of that document to

16   the actual release at the time of the order, the complainant is

17   basically dealing with copyright and the defenses as to

18   copyright.

19         Now, I understand this may be relevant at some level

20   for the defense here, but this is certainly not a document that

21   is such (inaudible) copyright --

22         **MR. GREER:**  (Inaudible) in my hearing --

23         **THE COURT:**  -- as to -- under Rule 37(a)(5) for

24   ECF-227, because I find that here, given those factual

25   representations, given the nature of the document, given the

1    fact that Judge Barlow has already imposed sanctions in the

2    amount of $1,000 for Mr. Greer's failure to disclose -- which I

3    think is the more egregious violation here -- that award of

4    fees here under 37(a)(5) would be unjust.

5              MR. HARDIN:  Your Honor, can I make a record?

6              THE COURT:  Of course.

7              MR. HARDIN:  Thank you, Your Honor.  I think that the

8    statement that the Court made as to the facts of the underlying

9    thing that we requested are a little bit incorrect.  So to

10   summarize, Mr. Greer said when he received a discovery request

11   and there was some correspondence, he said he had a restraining

12   order on Joshua Connor, who is Joshua Moon.  It's Joshua Connor

13   Moon.

14             So he said he had a restraining order.  He didn't say

15   there is a denial.  He said he had a restraining order and he

16   would be happy to --

17             MR. GREER:  I never said that.

18             THE COURT:  Mr. Greer, I will give you a chance to

19   respond in a second.  We don't talk over each other, okay?

20             MR. HARDIN:  And that is --

21             MR. GREER:  All right.

22             MR. HARDIN:  And that's cited in a motion.  It is in

23   an email and it is cited in the underlying motion.  So I think

24   that it is unclear to me, although I do have now from a third

25   party -- not from the Court, from a third party -- I now have a

1  copy of a court order from Utah saying that Mr. Greer was

2  denied a court order.

3          I do not have a court order granting a restraining

4  order which is what I was led to believe there was.  I also

5  don't have anything that Mr. Greer himself provided -- and I

6  think that's really relevant here because Mr. Greer made

7  representations to the Court in Utah that Mr. Moon had

8  aggrieved him, in whatever way, and that was grounds for giving

9  a restraining order.

10          The Utah court, apparently, at least in the one case

11 that I am aware of, denied the restraining order.  But I

12 haven't seen the underlying allegations, and I think those

13 underlying allegations -- especially because we are arguing

14 about duplicative claims in this court and what damages might

15 overlap -- I think those underlying allegations are incredibly

16 relevant.

17          I have not seen his underlying allegations.  And,

18 again, I want to emphasize he did not send me anything at all,

19 including this denial that was obtained from a third party.

20 All that Mr. Greer sent me, and this was again after the Motion

21 to Compel, all that Mr. Greer sent me is a public records

22 request denial from the State of Utah.

23          So some third party, apparently named Jim Jorton, had

24 requested these records from the court in Utah.  The court in

25 Utah denied Jim Jorton the records and sent the denial to

1    Mr. Greer.

2            Mr. Greer then reached out to me and said, "Who is

3    Jim Jorton?"

4            And I had no idea what he was talking about.  Jim

5    Jorton -- I wasn't involved in that underlying records request.

6    I don't know who Jim Jordan is.  But, in any event, that's how

7    I came to find the case number, and, eventually, I now have an

8    order.  But, again, I want to emphasize that I don't have an

9    order granting a Protective Order, which is what I was led to

10   believe there was.

11           I don't have Mr. Greer's underlying allegations, and

12   so for those reasons I think --

13           **MR. GREER:**  (Inaudible)

14           **MR. HARDIN:**  -- has still not complied with the

15   Motion to Compel.  And, of course, because he has still not

16   complied with the Motion to Compel, the Court should either

17   require compliance; or if he is now amending his statement,

18   should award attorney's fees because we have had to go through

19   this rigmarole.

20           Thank you, Your Honor.

21           **THE COURT:**  I appreciate it, Mr. Hardin.  That

22   provides some insight that I don't think I quite understood

23   from the briefing.

24           So, Mr. Greer, help me understand, in terms of what

25   it is you produced here.  I got the impression reading the

1    document you provided in your Rule 60(b) Motion that you had

2    provided -- you said you were going to -- and you had provided

3    the documents that the Court ordered you to produce in Order

4    227.  So help me understand where you think you are at here?

5        **MR. GREER:**  I told Mr. Hardin on the phone, I did not

6    have access to those documents.  I told him on the phone and --

7    during one of our (inaudible).  I said I would try to get it

8    for him.

9        Bizarrely, after our phone call, a person named Jim

10   Jordan tried getting that document.  That led me to believe

11   that someone was listening in on the phone call between

12   Mr. Hardin and I.  I forwarded that document to Mr. Hardin.  I

13   forwarded the email of the notice to Mr. Hardin.

14       And I said, "This is what I am talking about.  I

15   don't know who is Jim Jorton.  This is the (inaudible) I am

16   talking about."

17       And I thought it resolved that.  I thought he said he

18   would look up the case and (inaudible) himself.  I did not

19   receive any further notice that he was denied access to that

20   document.  And I -- just for the record, I never said I had a

21   restraining order on him.

22       It was probably a misstatement.  I type on my phone a

23   lot, so it was probably an error on my phone.  And there was --

24   Mr. Hardin never told me about any confusion, and I -- that's

25   the honest truth.

1       **THE COURT:**  Well, so -- hold on a second.  Mr. Greer,

2   help me understand why you wouldn't have access to your own

3   court records involving -- that's something that's beyond me.

4       **MR. GREER:**  I don't -- I told Mr. Hardin I have

5   limited storage on my phone, and I thought I will delete

6   documents from many years ago.  And I -- I don't know really

7   how to access your documents.

8       I am not sure how to even -- if I have to file

9   (indescernable) in the Utah district court or what.  And so, as

10  I said, after we had that conversation, that is when a third

11  party tried getting the documents.  And so I forwarded that to

12  him, and I thought that was the end of it.

13      It never was (indiscernible) saying, "Hey --" at

14  least to my knowledge, I never had any other emails asking

15  about this document.

16      **THE COURT:**  So a couple things --

17      **MR. GREER:**  And I apologize --

18      **THE COURT:**  So a couple things, Mr. Greer.

19      Number one, it sounds to me like you haven't really

20  done much to find out how to get that document.  You have

21  access to it.  It is your case file.  You can go to the court

22  and ask the clerk for it and see if they will give it to you.

23  I mean, they should.  It is -- it should be in the archives.

24  And the fact that you haven't even tried that is a concern to

25  me.

1          Number two, I'm not quite sure why -- why you haven't

2    gone and done that yet.  Why haven't you?  Why haven't you

3    asked the Court to produce this record yet?

4          **MR. GREER:**  I thought Mr. Hardin was getting the

5    document himself.  I gave him the case number.  He never once

6    emailed me saying, "Hey, I can't access this."

7          **THE COURT:**  But Mr. Greer --

8          **MR. GREER:**  I thought that --

9          **THE COURT:**  Mr. Greer, he filed a Motion to Compel.

10   That's --

11         **MR. GREER:**  And I --

12         **THE COURT:**  That was --

13         **MR. GREER:**  That was the document I forgot to reply

14   to, and that's when I tried asking for reconsideration of it.

15   I saw that and I forgot to reply to it.

16         **THE COURT:**  Well, Mr. Greer --

17         **MR. GREER:**  And I --

18         **THE COURT:**  It is not a matter of forgetting to reply

19   to it that is the issue here.  The issue is the fact what you

20   just said a moment ago, that Mr. Hardin didn't give you any

21   notice that he wasn't able to access it.  The Motion to Compel

22   was --

23         **MR. GREER:**  Okay.

24         **THE COURT:**  -- was really clear communication from

25   Mr. Hardin that he hasn't received it yet.  He wasn't able to

1   access it.  So to say that he didn't let you know that seems

2   factually incorrect.  Help me understand what I am missing

3   here.

4          **MR. GREER:**  I -- I (indiscernible) the Court order.

5   I didn't reply to it, and I am sincerely sorry, but I was also

6   going to say, it really has no relevance to this case.  I have

7   been stopped -- uhm -- so I never provided it.  It was a

8   misunderstanding on my end and irrelevant.

9          **THE COURT:**  Well, I appreciate the fact that you're

10  objecting to its relevance, but the problem is that by not

11  responding to the motion, you basically waived the ability to

12  argue that it's not relevant.  That's why I ordered you to

13  produce it.

14         The Rule 60(b) Motion you filed asking me to

15  reconsider doesn't really address relevance whatsoever.  It

16  doesn't -- we're long gone from the ability to respond to this

17  motion.  We are months away from that now.  And so you have

18  been ordered to provide it.  You haven't done so yet.  I was

19  under the impression based on what you have represented in

20  writing, that you were -- you had done that or you were in the

21  process of doing it at the time that Mr. Hardin had asked for

22  it.

23         But it sounds to me like that hasn't happened, nor

24  have you really looked into whether it could happen, by using

25  the local court here to see if you can get a copy of that

1    order.  And, unfortunately, that's not acceptable.  So I am

2    going to order you, within the next 14 days, to get ahold of

3    the court where this was filed and get a copy of that case

4    file.  Mark it confidential --

5            **MR. GREER:**  Yeah.

6            **THE COURT:**  -- attorneys' eyes only, and provide it

7    to Mr. Hardin.

8            **MR. GREER:**  Yes, Your Honor.  I understand.

9            **THE COURT:**  That way -- and to be clear, because it

10    is going to be marked "Confidential, Attorneys' Eyes Only" if

11    this shows up on a website, there's going to be contempt

12    sanctions that will be imposed on whoever does it.  So let's be

13    perfectly clear on that too.

14            I understand you are concerned about whatever you

15    produce seems to -- at least some things, at least, seem to

16    find their way on to the website Kiwi Farms.  I am just going

17    to let everybody know right now that better not happen or else

18    they may have a visit from the United States Marshal Service,

19    and that's not something I think they want to do.  So mark it

20    appropriately under the standard protective order.  You are now

21    aware of how that works based on some of the other motions we

22    have to take up today.

23            In terms of attorney's fees, I am going to reserve on

24    that ruling for a moment.  In terms under Rule 37(a)(5) see

25    what's produced.  I will ask for a status conference.

1          So, Mr. Hardin, within 21 days I'd just ask for a

2    status report.  If you can file a status report, and let me

3    know what it is you have received, if anything, and then we can

4    address the issue of fees under ECF-227 at that point, does

5    that make sense?

6          **MR. HARDIN:**  Yes, Your Honor.  Just, again, for the

7    record, I want to make clear that our position on what happened

8    at various Meet and Confers, viciously disagrees with

9    Mr. Greer's representations just now.  I won't belabor

10   that point because the Court has ruled, but I want to make

11   clear that we are not agreeing to the facts that he proffered a

12   moment ago.

13         **THE COURT:**  Yep.  I don't think you have to in order

14   for this to move forward.  What is going to happen is he needs

15   to get those documents I ordered him to produce, and if not, we

16   will be addressing -- I mean, it is not just attorney's fees we

17   will be addressing.

18         If we don't at least see some -- if they are not

19   produced, then we will have to reconvene and figure out why

20   not.  If they are just not produced because he just doesn't

21   want to get to it, then we will be talking about Rule 37(b)

22   sanctions in terms of case termination for failure to cooperate

23   in discovery, which would include fees among other things.

24         So we are getting to that point here, but I want to

25   give him at least 14 days to get that over to you, and we will

1    then reassess where we are at and make a determination of what

2    is due from there.

3              MR. HARDIN:  Thank you, Your Honor.

4              THE COURT:  Let's take a look at the Rule 11

5    sanctions.  So in ECF No. 234, the defendants are seeking Rule

6    11 sanctions against Mr. Greer for two things.  Number one,

7    alleging that the defendants violated the standard protective

8    order, even though Mr. Greer had not read it, apparently.

9              And then also stating to the Federal District Court

10   in the Middle District of Florida that Mr. Greer had witnesses,

11   including his father and an individual who passed away, but

12   then later stating that all those witnesses had no relevant

13   information.  And I think Mr. Taylor was -- Mr. Greer

14   characterized as, "Eager to testify," but it turns out that

15   Mr. Taylor had passed away some months before that

16   representation.

17             Is that an accurate assessment, Mr. Hardin, of your

18   motion there?

19             MR. HARDIN:  Yes, Your Honor.  It is an accurate

20   assessment.  I will point out too this, sort of, ties into an

21   underlying motion, that we had withdrawn, related to an adverse

22   inference from Mr. Taylor.  In Mr. Greer's response to that

23   motion, he seems to indicate that he had not spoken to

24   Mr. Taylor since 2021 when they had a falling out.

25             In 2024, is when he made the representation in

15

1  Florida that Mr. Taylor was eager to testify, and, of course,

2  Mr. Taylor was deceased at that point.  So there's a gap of

3  several months between Mr. Taylor's demise and that statement,

4  and there's a gap of several years since Mr. Taylor had last

5  spoken to Mr. Greer.  Thank you.

6          **THE COURT:**  So, Mr. Greer, help me understand why you

7  made the statement to the Court in the Middle District of

8  Florida that Mr. Taylor was eager to testify, if you hadn't

9  spoken with him for at least three years?

10         **MR. GREER:**  I was listing every person I had talked

11  to -- I thought I explained this in my response.  I had

12  explained I had listed every person I had talked to about who

13  would testify.  And when I wrote that, you're right, I had not

14  spoken to him in a few years.

15         And I should have probably made sure he was still

16  interested and still alive before I wrote that.  And I had no

17  idea that he was dead until -- it was earlier this year.

18         **THE COURT:**  Okay.  Mr. Hardin, any follow-up on that

19  particular point?

20         **MR. HARDIN:**  I think that in the context of the

21  Sanctions Motion, Mr. Greer did not respond to that argument.

22  He responded entirely to the Protective Order.  If we liberally

23  construe his response to the earlier motion related to an

24  adverse inference as in relation to the Sanctions Motion, I

25  think it still fails because he is confessing he didn't do any

1    due diligence before he made that representation.

2          He said somebody was eager, and now he says it was a

3    mistake and he probably should have done more.  Well, I think

4    the standard under Rule 11 is an objective standard.  It is

5    objectively unreasonable to say that someone is eager to

6    testify if you haven't talked to them in three years, and if

7    they have been dead for five or six months.

8          I think that's just objectively a problem.  It has

9    caused great prejudice in this case, and I think that sanctions

10   are appropriate.

11         **THE COURT:**  So would you, for purposes of the record,

12   let's further elaborate on the great prejudice this has caused.

13   I know it was in the Middle District of Florida.  I think one

14   of the reasons that the district court judge there sent it back

15   to Utah was for development of the witnesses.  Could you talk a

16   little bit more about that point?

17         **MR. HARDIN:**  Yes, Your Honor.  So the Middle

18   District -- or the Northern District of Florida, rather --

19         **THE COURT:**  Northern District.

20         **MR. HARDIN:**  Yes.  It was the Northern District in

21   Pensacola.  Mr. Greer filed this motion saying that he needed

22   to go back to Utah because if he didn't go back to Utah, Steve

23   Taylor couldn't testify.  It was actually more than just Steve

24   Taylor was alive and was eager.  Steve Taylor couldn't possibly

25   come to Florida.  Steve Taylor needed to testify in Utah.

1        And the district of -- the Northern District of

2   Florida transferred back to Utah.  I will admit, not expressly

3   on those grounds, but the middle -- the Northern District of

4   Florida did transfer after Mr. Greer filed that pleading

5   saying, "This case cannot be adjudicated unless it goes back to

6   Utah."

7        Then we got back to Utah, and we started disclosing

8   witnesses -- and I guess that's a charitable interpretation to

9   say we started disclosing witnesses -- but we got back to Utah,

10  Mr. Greer disclosed two witnesses who were not Mr. Taylor, and

11  did not even disclose himself.  We started issuing subpoenas

12  trying to figure out, you know, what we needed to do to develop

13  this case going to great expense to issue subpoenas.

14       Mr. Greer ended up saying that his father and brother

15  had no relevant testimony and that he would call no other

16  witnesses, after saying he had other witnesses that were eager

17  to testify, many other real witnesses.  "Real" was actually in

18  all caps.  He decided that he had no witnesses that he wanted

19  to testify once the case got back to Utah.

20       This whole time we had been subpoenaing folks for

21  depositions.  We were trying to locate Steve Taylor.  I spent

22  quite a bit of time trying to locate Steve Taylor.  And, in

23  fact, it was my failure to locate Steve Taylor, and Mr. Greer's

24  failure to answer questions about Steve Taylor, that led me to

25  file the Motion for an Adverse Inference about Steve Taylor

1   because it seemed to me that he was hiding Steve Taylor.

2        At that point, Mr. Greer's story was that he had not

3   disclosed Mr. Taylor because there was a falling out between

4   the two of them.  And he seemed to think -- Mr. Greer seemed to

5   think that there was a reason that he could just choose not to

6   disclose someone if he had had a falling out with them.  And,

7   of course, my position is I would much rather talk to somebody

8   that Mr. Greer has had a falling out with than somebody that is

9   on Mr. Greer's team.

10        I think that makes him even more vital for discovery,

11  so I am trying to track this guy down that Mr. Greer has had a

12  falling out with.  I am failing.  I file a Motion Related to

13  Adverse Inferences.

14        And then Mr. Greer comes in and says, "Oh, actually,

15  he is dead."

16        So that was several months of me pursuing it, and

17  Mr. Greer changing his story several times.  And I gather from

18  his opposition that he didn't even look into whether Mr. Taylor

19  was dead until I filed the Adverse Inference Motion, and then

20  he found an obituary and attached it.  He was able to do that.

21        I, of course -- Steve Taylor is a very common name,

22  so that was part of the reason why we couldn't locate

23  Mr. Taylor, is that it is just such a common name.  We had no

24  idea he was dead until Mr. Greer filed that obituary.  So all

25  of that was needless expenditure and I think that it's

19

1    prejudicial to the defense.

2        It is also prejudicial to the legal system that we

3    had this case bouncing back and forth between courts, and I

4    think that it shows the nature of how this plaintiff just files

5    things.  He doesn't think about it.  He doesn't research it.

6    He just pops off at the mouth, or the pen, and files it.  And I

7    think that that is something that's worthy of sanctions as

8    well.

9        Thank you, Your Honor.

10        **THE COURT:**  Mr. Greer, any response to this?

11        **MR. GREER:**  Yes, Your Honor.  You probably noticed

12    Mr. Hardin will latch on to individual words I say and not

13    focus on the entire argument.  And so -- but, first of all,

14    there is no great prejudice because Joshua Moon hadn't lived in

15    Florida for a long time.  There was rumors he was living abroad

16    or living elsewhere.

17        And that was after a conversation that we had -- I

18    had with my appeals attorney, was how (indiscernible) from him

19    if he is living overseas.  So they haven't even -- Mr. Hardin

20    hasn't said if Joshua was even living in Florida or not, and so

21    that sort of cuts into their prejudice argument.

22        As for Steve Taylor, again, I misspoke.  I was

23    listing every person I had talked to who could be a witness.  I

24    was unaware he was dead.  However, Scott Greer and Nathan Greer

25    both said that they would testify.  But then once they got back

1  to Utah, when I talked to them again, they claim they have

2  nothing to offer.

3          So I even told my brother, I said, "Hey, you have put

4  me in a really bad situation.  I look like a liar now."

5          And I've tried providing text messages, and tried

6  showing what I was saying was true.  I included those in the

7  motions, the text messages, and I -- and they are just latching

8  on to Steve Taylor when it was more than Steven Taylor as a

9  witness, and that's all I have to say.

10         **THE COURT:**  Okay.  So what the Court is going to do

11  is I am going to take the Rule 11 Motion under advisement, and

12  then I will issue an order, a written order on it.

13         One of the things we do need to talk about, though,

14  in developing that a little bit more, though, is there's two

15  parts to any Rule 11 analysis.  First, showing there's a

16  violation of Rule 11(b).  I think we just talked about that,

17  that whether there was adequate investigation, etc.

18         Next is what do we do about it.  And so there's a

19  whole series of factors the Tenth Circuit considers when

20  deciding whether to impose a Rule 11 Sanction.  And in the

21  briefing, I know, Mr. Hardin, you focus quite heavily on the

22  fact that a Rule 11 Motion -- or sanction should be imposed.

23         But help me understand, in the context of the factors

24  that I have to consider, what that sanction should be and why?

25         **MR. HARDIN:**  Thank you, Your Honor.  It is a tough

1  question I grappled with, and I think that's why you don't see

2  it in the briefing as to what the exact remedy is.  I think the

3  briefing asks for "appropriate sanctions" because it is such a

4  tough question at this point.

5          I think that, at a minimum, attorney's fees relating

6  to Steve Taylor and the Protective Order issue need to be

7  awarded because we have incurred great costs and expense, but I

8  don't think that that unrings the bell.  I think that, in fact,

9  the prejudice is much more extensive because now we are back in

10 Utah where we probably shouldn't be.

11         Mr. Moon has a declaration in the record that he

12 resides in Florida.  We successfully moved it to Florida and we

13 are back in Utah.  I think the whole case has really been on a

14 bad trajectory as a result of this misconduct -- I am sorry,

15 about that, Your Honor.

16         I think that the case is really on a bad track

17 because of that.  I think that, really, the sanctions should be

18 terminating the case at this point.  Because I think that in

19 conjunction with some other stuff that we are going to talk

20 about in just a minute, I think that it is clear there's no way

21 for this case to proceed because he has no witnesses.  There's

22 nowhere for this case to go.

23         This case is on an incredibly bad track, and I think

24 the right thing to do is to terminate the case because the

25 judicial system has been so badly misused.  Thank you.

1          THE COURT:  Mr. Greer, thoughts on that.

2          MR. GREER:  Okay.  So I have written evidence that

3  was sent in that Joshua Moon was living overseas.  If he was

4  living in Florida, he needs to provide some sort of address.  I

5  have been trying to get law enforcement to track this

6  individual down because he has been stocking me for eight

7  years.

8          Part of the problem, why I can't do anything, is I

9  don't know where he lives.  I can't do anything.  As for this

10  case not being in Utah, no, the defendants have directed their

11  conduct towards me when I was living in Utah, and so that gave

12  rise to damages.  I have not misused the legal system at all.

13          I admit, I am pro se.  I have messed up a few steps,

14  but there's nothing that hasn't made the case unwinnable.  I

15  have photographs of Joshua posting my copyrights online.  It is

16  not just my copyrights.  He does it to everyone.  There's

17  something seriously wrong with this person, and the Court needs

18  to do something and stop this conduct.  That's why I filed it.

19          Because a simple, "Sir, can you leave me alone," was

20  not stopping this, so I had to pursue a legal action.

21          THE COURT:  Mr. Greer, I understand why, from

22  your point of view, you are pursuing legal action.  The thing

23  is, though, is when we are pursuing legal action, we have to do

24  it according to law.  So that's why we are trying to determine

25  here, is -- we can't -- we have to -- when you make

1  representations to the Court, they have to be correct.  They

2  have to have an arguable basis, and they have to be based in

3  some sort of a past research, a past investigation, that was

4  reasonable under the circumstances.  It doesn't have to be

5  perfect, and there's certainly room for mistakes.

6       But when you don't investigate appropriately, and

7  make representations recklessly, without having a solid basis

8  for it, and people -- we then go through the process in order

9  to discover whether those allegations or those statements are

10 true, and people spent time and money on evaluating those, and

11 it turns out they weren't true to begin with, therein lies the

12 problem.

13      That's what I am going to have to address in this

14 Rule 11 issue, whether that -- whether that's what has happened

15 here or not.  So I am going to take it under advisement.  We

16 will look at the -- at both prongs in the Rule 11 inquiry to

17 determine whether Rule 11(d) was violated and if so what the

18 appropriate sanctions are.  And I will issue an order as soon

19 as that is ready to go.

20      Let's now turn to the third category of things we are

21 here to decide today and that is the Motion to Stay.  This is

22 ECF No. 245, which is to Stay Discovery on the Amended

23 Complaint Until Everyone is Served is basically the one-liner

24 there for the motion.  No response was filed to this Motion to

25 Stay that Mr. Hardin has filed, so my intention today is to

1  grant the Motion to Stay.  But instead of granting the Motion

2  to Stay Discovery until everybody is served, my intention is to

3  grant it until the Court has a chance to review and decide the

4  Motion to Dismiss that was filed a few weeks ago because I

5  think it will be more productive at that point to basically

6  stay that.

7        I know that was one of the alternative grounds for

8  relief for the Motion to Stay was -- given there is a Motion to

9  Dismiss now pending.

10       Your thoughts on that, Mr. Hardin.

11       **MR. HARDIN:**  Obviously, you are correct.  That was

12  one of our alternative grounds.  I think our position for a

13  Stay is that that obviously should be granted.  I think our

14  broader position is neither of these two people, Russtard and

15  Moseph Jartelli, have been disclosed under Rule 26.

16       If you go back to ECF-185-1, that is Mr. Greer's

17  disclosures in this case.  Neither of these two individuals has

18  been disclosed as having any discoverable information.  So

19  to -- in our mind, any efforts to send discovery related to

20  them -- which is what Mr. Greer has decided to do in the last

21  few days -- or to us related to them is really misplaced

22  because they have never been disclosed as having any

23  discoverable information.

24       Again, in light of the stipulation of ECF-201, I

25  don't think there's anywhere for discovery to go that is not

1  out of proportion to the needs of the case, but I will take

2  what I can get today.  A Stay until the Motion to Dismiss is

3  adjudicated is, of course, something that we have asked for in

4  the alternative.

5          If the Court wants to broaden that, we would

6  appreciate it, but we aren't dissatisfied, Your Honor.  Thank

7  you.

8          **THE COURT:**  Mr. Greer, any thoughts on the Motion to

9  Stay.

10          **MR. GREER:**  Your Honor, the reason I didn't respond

11 to that is I don't oppose that.  However, it's untrue to say

12 they don't have any discoverable information because,

13 obviously, they do because one of them -- one of them directly

14 infringed my copyright.  The other one was -- I don't know if

15 it was Russtard -- was conspiring to infringe, and so I was

16 only trying to find out how to serve these people.

17          I've had a really hard time trying to find email

18 addresses.  So if you do stay discovery, I will probably just

19 file a subpoena to find out how to serve them because I don't

20 know how else to serve them.

21          **MR. HARDIN:**  Your Honor, if I can interject, a moment

22 ago Mr. Greer said that he was overzealous in disclosing

23 people.  Anybody that he had ever talked to he disclosed.  He

24 disclosed out the ying yang, and that's why he erroneously

25 disclosed an individual who had been deceased.

1          Now he says, "These two individuals, obviously, have

2     discoverable information, but I never disclosed them."

3          If you go back to his disclosures, these folks have

4     never been disclosed.  I think that is a problem.  We have an

5     individual here in court that says obviously they have

6     discoverable information except that he has never disclosed

7     them in his initial disclosures that we all have already

8     litigated and already had attorney's fees awarded for.

9          Your Honor, I think that this is wildly inappropriate

10    that he is confessing in open court to a Rule 26 violation.

11    Thank you.

12         **THE COURT:**  Let's take a step back, Mr. Hardin.

13    Because my recollection, I never read anything that would

14    suggest that you can't amend a Complaint to add parties that

15    weren't previously under a Rule 26(a) disclosure.  Would you

16    agree with that?

17         **MR. HARDIN:**  I agree with that.  I am not say that he

18    can't add his parties.  He obviously has amended and added

19    parties, but I think my broader point is he was required under

20    Rule 26(a), and he has never amended.  He was required to state

21    who has discoverable information in this case, and he never

22    identified these two people.

23         There's nothing new that has come out.  There's no

24    new facts related to these people since his initial disclosures

25    which were themselves quite late as you may recall from the

1    litigation.  So he has never disclosed these people have any

2    discoverable information.

3           And suddenly he says, "I need information related to

4    these people."

5           Now, he couches that, and he says, "I agree, it is

6    because I need to serve an Amended Complaint on them."

7           But I don't think that holds water because they have

8    never been disclosed as possessing any discoverable

9    information, nor, by the way, has Joshua Moon.  He never said

10   Joshua Moon has any discoverable information.

11          And now he sends a discovery request, and he says, "I

12   want Joshua Moon --" who has no discoverable information -- "to

13   tell me about Russtard and Moseph Jartelli," neither of whom

14   have any discoverable information.

15          I think that is, of course, out of proportion to the

16   needs of the case.  I think it shows there's a Rule 26

17   violation, and I think that him saying he is doing it for

18   purposes of service is really no answer at all when you

19   consider the underlying failure to disclose.  I think he has

20   boxed himself into this situation by saying they have no

21   information.

22          And as is pointed out in our Motion to Dismiss, which

23   I recognize is not before the Court today, any copyright

24   statute of limitations against those individuals would have

25   expired at least two or three years ago.  So what it seems to

1    me like we are doing is coming in late, amending a Complaint,

2    and suddenly trying to change our narrative about who has

3    discoverable information.  I think that's wildly inappropriate.

4    I think it is why discovery should be stayed.

5          But, of course, if the Court stays it until the

6    Motion to Dismiss is adjudicated, that is some relief in

7    itself, and we can revisit the issue later.  Thank you.

8          **THE COURT:**  So, Mr. Hardin, let's -- I think we need,

9    just for purposes of going forward -- and this doesn't have

10    anything to do with the motions now pending before the Court

11    because there isn't a renewed motion for 26(a) violations here.

12          But we do have -- but I think what you need to

13    address this broader point that you keep making on this issue,

14    let's look at Rule 26(e).  Some of these disclosures aren't

15    made because you already know about them.  And Rule 26(e) does

16    not require disclosures to be made in the 26(a) disclosure,

17    where it is already known in discovery to the other side.

18          So the fact that Joshua Moon has discoverable

19    information, and it is not -- it is not in Mr. Greer's initial

20    disclosures is of no moment he is the named defendant, and he

21    is -- it's obvious given your disclosures, I am sure, about who

22    has relevant information.  So the fact they don't appear in

23    Mr. Greer's is not some further evidence of malfeasance here.

24          Rule 26(e) does not require this, kind of,

25    hyper-technical flyspecking of initial disclosures in terms

1    of -- to turn it into a sanction.  Am I missing something here?

2        You are on mute there, sir.

3        **MR. HARDIN:**  Sorry about that.  I think at the

4    moment, Your Honor, you're not missing anything because this is

5    only a Motion to Stay Discovery.  I think you will likely see a

6    renewed motion based on things that were stated orally in court

7    today and we can address it at that point.  I think there's

8    problems here, but we don't need to address them in the context

9    of the motions today.

10        **THE COURT:**  Fair enough.  So Mr. Greer does not seem

11   to be opposed to a motion -- the Motion to Stay, so the Court

12   is going to go ahead and grant that Motion to Stay until the

13   Motions to Dismiss are decided here.

14        Let's now talk about the next motion for Mr. Greer.

15   This is ECF-251 relating to a stay, but it is -- basically, it

16   is asking under Rule 62(b) of the Federal Rules Of Civil

17   Procedure for a bonded stay.  Rule 62(b) provides that at any

18   time after judgment is entered, a party may attain a Stay by

19   providing a bond or other security, and this is while something

20   is appealed.

21        Once again, the term "judgment" is referring to a

22   final judgment.  That is when the entire case is decided and

23   the case goes up on appeal.  So the bond that we are talking

24   about under Rule 62(b) bond is dealing with the appeal of the

25   entire case, not an interlocutory discovery sanction order.

1          And so, really, Rule 62(b) does not apply to this

2    situation at all.  But because this is an interlocutory order,

3    which Mr. Greer points out in his filing, and is certainly

4    correct, he can ask Judge Barlow to stay the $1,000 payment if

5    he'd like, but again, I can't do that.  I can't stay a district

6    court judge's order.  That's not something that's given to me

7    since Judge Barlow has already decided that matter.

8          So I can't rule on ECF No. 251 because it is just --

9    it is not something that I can rule on.  And to the extent that

10   it is under Rule 62(b), it is improper, because Rule 62(b)

11   doesn't apply to this situation.  So I would deny it under Rule

12   62(b) because it is not applicable.

13         If you want to -- but you do have the right to ask

14   Judge Barlow to stay whatever you think needs to be stayed, but

15   it has to go to Judge Barlow, and under his inherent authority

16   instead of Rule 62(b).

17         Does that make sense, Mr. Greer?

18         **MR. GREER:**  Yes, Your Honor.  I understand.

19         **THE COURT:**  Okay.  Let's now turn to the In Forma

20   Pauperis Determination Motions.  This is at ECF No. 253 and at

21   ECF No. 258.

22         It seems to me, and correct me if I'm wrong,

23   Mr. Hardin, but ECF-258, which is asking for a rescreening of

24   the Amended Complaint, is somewhat of an alternative motion.

25   Because if Mr. Greer is no longer capable of proceeding in

1    forma pauperis, and he is able to pay his filing fee, then it

2    seems to me there would be -- and if he were to do so, there

3    would be no magistrate judge review at all, it would simply

4    proceed like any other case would.

5            So it seems to me like ECF-258 is really only

6    applicable if the Court finds that IFP status, and that's in

7    forma pauperis status, is still applicable.  Would you agree on

8    that?

9            **MR. HARDIN:**  I agree entirely, Your Honor.  Thank

10   you.

11           **THE COURT:**  All right.  So let's talk about ECF No.

12   253 then.  Mr. Greer represents, at least in some

13   correspondence that was attached to the motion, that he is

14   able -- albeit unwilling, and he doesn't think he should have

15   to pay the $1,000 sanction -- but says that he is capable of

16   doing it.  And, therefore, Mr. Hardin argues he can afford to

17   pay filing fees here of the $402, I believe, that would be

18   required at the time that this case was filed.

19           Mr. Greer, help me understand.  Do you have the

20   ability to pay the filing fee of $400?

21           **MR. GREER:**  Yes, I do.  I can pay $400.  I just

22   don't -- again, as I said earlier, Mr. Hardin's focus is all

23   these little things, and so I don't see how me being in IFP

24   status or not being in IFP status has any relevance to

25   copyright infringement.  And so, yes, to answer the question, I

1  can pay it.

2         **THE COURT:**  Okay.  So two things, Mr. Greer, the IFP

3  status, you are right.  On its face it has little to do with

4  the copyright infringement itself.  What it does have to do

5  with is whether the Court can hear the case because congress

6  allows parties to proceed in forma pauperis, or in IFP status

7  as you said, if they meet a certain threshold.

8         And if they don't, then in order for the Court to

9  hear the case, the filing fee has to be paid.  So it is beyond

10  the -- just associating it with relevance to the copyright

11  infringement.  So if you can afford to pay the filing fee, I am

12  going to order you to do so within 30 days, or else I will have

13  to dismiss this case.  Does that make sense?

14         **MR. GREER:**  Yes, Your Honor.

15         **THE COURT:**  Okay.  So I'll go ahead and order that

16  the payment of fees under -- because Mr. Greer is able to pay

17  the filing fee, and still -- and by paying the filing fee, you

18  are still able to maintain your support?

19         Mr. Greer?

20         **MR. GREER:**  Oh, I am sorry.  Am I able to maintain my

21  support?

22         **THE COURT:**  Yes.

23         **MR. GREER:**  I have -- I am sorry.  Can you please

24  elaborate on that?

25         **THE COURT:**  Sure.  Are you able to continue to pay

1    for your rent and other life expenses despite having to --

2              **MR. GREER:**  Oh, yes.

3              **THE COURT:**  Okay.

4              **MR. GREER:**  Yes, I can.

5              **THE COURT:**  All right.  So I'll go ahead and order

6    Mr. Greer to pay that filing fee within 30 days.  Assuming

7    that's paid, then the ECF-258 will be moot.  If it is not paid,

8    the case will be dismissed.  And, in any event, ECF-258 would

9    be moot in that regard as well.

10              So what that leaves me with, then, is we have two

11   things going on.  I have stayed discovery until the Motion to

12   Dismiss is filed with one exception, and that is Mr. Greer has

13   14 days to produce the documents that were previously ordered

14   under ECF No. 227.  Mr. Hardin is going to file a status report

15   letting me know what is going on within 21 days of today's

16   hearing, so that discovery will go forward, but everything else

17   is going to be stayed.

18              I will take the Rule 11 issue under advisement, and

19   will issue a written decision as soon as we are able.  We will

20   then await briefing on the Motion to Dismiss and consider that.

21   Mr. Greer will then have 30 days from today to pay his filing

22   fee given that he is able to pay that filing fee and still

23   maintain his daily support.  ECF No. 258 is moot either way

24   because it is -- if he pays, there's no magistrate judge review

25   for IFP status.  And if he doesn't, the case is to be dismissed

1   under the IFP statute.  And so, in any event, ECF-258 would be

2   stayed.

3          ECF-245 is granted because until discovery -- or

4   until the Motion to Dismiss is decided.  ECF-251 is denied

5   because -- it is denied without prejudice, at least, as to Rule

6   62(b).  Relief is inapplicable here.  And ECF-228 and 243 are

7   going to remain -- ECF-228 is moot simply because of Judge

8   Barlow's decision.  ECF-243 is going to remain open and waiting

9   the status report, and potentially further proceedings based on

10  what happens in terms of the production of that underlying case

11  file on the denied restraining order.

12         Mr. Hardin, anything else we need to take up in

13  today's hearing?

14         **MR. HARDIN:**  Nothing from me, Your Honor.

15         **THE COURT:**  Mr. Greer, anything further?

16         **MR. GREER:**  Your Honor, no.  I appreciate your time.

17         **THE COURT:**  Thank you both.  We will be in recess.

18                    (Proceedings concluded.)

C E R T I F I C A T E

STATE OF UTAH          )

                       )   ss.

COUNTY OF WASHINGTON)

          This is to certify that the proceedings in the

foregoing matter were taken from an audio recording by me,

Tasha Sisneros, RPR, CRR, CSR, in stenotype and thereafter

transcribed into written form;

          That said proceedings were taken at the time and

place herein named;

          I further certify that I am not of kin or otherwise

associated with any of the parties of said cause of action and

that I am not interested in the event thereof.

          In witness whereof I have subscribed my name this

15th day of May 2025.




          _____

          Tasha Sisneros, RPR, CRR, CSR