Matthew D. Hardin (pro hac vice)
**HARDIN LAW OFFICE**
101 Rainbow Drive # 11506
Livingston, TX 77399
Telephone: (202) 802-1948
Email: MatthewDHardin@gmail.com
*Attorney for Defendants*

---

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL GREER, <br><br> Plaintiff, <br><br> v. <br><br><br> JOSHUA MOON, *et al.* <br><br> Defendant. | **DEFENDANTS' MOTION FOR SANCTIONS ARISING OUT OF ECF NO. 276** <br><br> Case No. 2:24-cv-00421-DBB <br><br> District Judge David Barlow <br> Magistrate Judge Jared C. Bennett |

NOW COME the Defendants, by and through undersigned counsel, and submit this Motion for Sanctions arising from materially false statements filed by the Plaintiff at ECF No. 276.

### I.   Introduction and Factual Background

This Court notified the parties on March 13, 2025 that it would hold a hearing on May 6, 2025. ECF No. 260. Among the topics at that hearing was Defendants' Motion for Sanctions, ECF No. 234, in which Defendants asserted that Mr. Greer had made multiple materially false statements to this Court. It has now been proven that Mr. Greer took extreme measures to avoid the May 6 hearing, including but not limited to fabricating an "emergency" business meeting of which he only became aware on May 1, 2025. ECF No. 276. Because Mr. Greer filed a sanctionable false motion to avoid a hearing on another sanctionable false motion, this Court should once again sanction him. This time, the proper sanction is termination of the case.

On April 14, 2025, Mr. Greer wrote to the City of Winnemucca and specifically attached a request that he be permitted to speak at the May 6, 2025 City Council meeting. ECF No. 293-2 at 4. The May 6, 2025 hearing in this Court had been scheduled over a month prior, but that didn't matter to Mr. Greer. Charging full speed ahead, the Plaintiff submitted a form, signed on behalf of "Intimate Dealings, LLC," in which he stated the purpose of speaking on May 6, 2025 at 1:00 p.m. would be to amend the City Code to allow new brothels, or alternatively to force the existing owners of brothel-zoned property to sell their parcels to him.[1] Exhibit B at 4.

Ten days later, on April 24, 2025, Mr. Greer resubmitted a different agenda request to the City of Winnemucca. ECF No. 293-2 at 14. But Mr. Greer reiterated that he was asking to speak at the May 6, 2025 Winnemucca City Council Meeting. In this new request – signed by "Russell Greer" on "4/14/2025," Mr. Greer reiterated that his "Requested Meeting Date" was "May 6th, 2025." ECF No. 293-2 at 14.[2]

On May 1, 2025 at 9:30 a.m., Mr. Greer told this Court that he had an "emergency" which had only arisen that very same morning. ECF No. 276 at 2 ("On Thursday, 5-1-25,

---

[1] The Plaintiff's proposal for the City of Winnemucca sheds light on his broader theories of the law, and will ultimately be relevant for purposes of this Court or some other court in determining whether Mr. Greer is a vexatious litigant. Specifically, Mr. Greer indicated that it was a public nuisance that a property owner in Winnemucca *was not* operating a brothel. ECF No. 293-2 at 6. Mr. Greer therefore sought for the City of Winnemucca to expropriate private property and transfer it to him, so that he could abate the nuisance that is a parcel without a brothel on it, by building a brothel. ECF No. 293-2 at 6.

[2] Illustrative of Mr. Greer's pattern of filing legal documents prior to doing research, rather than after conducting a full investigation, Mr. Greer told the Winnemucca City Council on April 24, 2025 that he had discovered the City could not condemn property as a public nuisance and transfer it to him for purposes of fulfilling his dreams of building the best brothels in Nevada. ECF No. 293-2 at 15. It turned out that the Nevada Constitution stood in the way of Mr. Greer's dreams to build a brothel on land seized from others. *Id*. So Mr. Greer amended his proposal, asking that the City rezone a hotel for purposes of operating a brothel. *Id*.

Plaintiff was informed that he had to be at a business meeting in rural Nevada on 5-6-25, very oddly taking place at the same time as the court hearing."). That statement was patently false: Mr. Greer himself had *twice* requested to appear at the Winnemucca City Council meeting on May 6 *at the exact same time as this Court's hearing relating to sanctions*. Mr. Greer's first request and his second request both sought to speak in Winnemucca on May 6, 2025, and both requested May 20, 2025 only as a backup date if May 6, 2025 was not available. ECF No. 293-2 at 4 and 14.

Although Mr. Greer told this Court that there was an "emergency" that required this Court to continue its proceedings to another day, Mr. Greer never told the City of Winnemucca that there was a similar "emergency" that barred his attendance at their meeting. Instead, Mr. Greer simply stated that he preferred May 20, while not correcting (and even re-attaching) his signed form indicating he requested May 6. ECF No. 293-2 at 25. The only "emergency" appears to be that Mr. Greer wished to avoid having sanctions imposed by this Court.

Defendants were forced to move quickly to respond Mr. Greer's "emergency" request in this Court. ECF No. 277. In that opposition, Defendants pointed out that Mr. Greer has a history of claiming to travel to Northern Nevada for brothel-related purposes, which are naturally not emergencies. *Id*. at 3. The Court ultimately denied Mr. Greer's request for an "emergency" continuance on May 2. ECF No. 278. But Defendants at that time had no idea just how prescient their opposition was, or just how grave Mr. Greer's misrepresentations had been.

On May 6, 2025, at 12:07 p.m. (Pacific Time), the Winnemucca City Council was accommodating Mr. Greer. They offered to hear his prostitution-related requests without

him, so that he could attend to other matters (presumably, his hearing in this Court, which had begun at 1:00 p.m. Mountain Time). ECF No. 293-2 at 27. But Mr. Greer soldiered on, and gave a fulsome presentation to the Winnemucca City Council anyway. He did so at the expense of the proceedings in this Court, which were ongoing since 1:00 p.m. (Mountain Time). The audio of the May 6, 2025 hearing appears to show Mr. Greer's phone emitted at least one "chime" at around the 13:00 mark, and may have emitted vibrations at other key junctures of the proceedings. There is also a long pause in the audio tape that corresponds with page 33 of the Transcript of the May 6, 2025 hearing, in which the Court had to repeat itself to get Mr. Greer's attention while it was inquiring about Mr. Greer's ability to support himself for purposes of in forma pauperis status. Additionally, the transcript bears out that Mr. Greer was having "inaudible" conversations with third parties throughout the proceedings on May 6.

Undersigned counsel first uncovered evidence that Mr. Greer had manufactured the "emergency" on May 6, 2025 and filed that evidence at ECF No. 285-3 on May 12, 2025. Mr. Greer took immediate steps to cover his tracks and frustrate undersigned counsel's investigation of the true state of affairs, as contrasted with Mr. Greer's false narrative of an "emergency."[3] Just two days later, Mr. Greer wrote to the City of Winnemucca to tell them that "Matthew Hardin… is an attorney, but a very unethical one at that." ECF No. 293-2 at 31. Mr. Greer went on to demand that the City of Winnemucca refuse to release their records relating to Mr. Greer's City Council appearance absent a court order. *Id*. Naturally, Winnemucca declined. *Id*. at 32. But Mr. Greer's purpose was clear: he wanted to hide the evidence described above relating to his fabricated "emergency" that he had

---

[3] Mr. Greer frequently attempts to frustrate undersigned counsel's investigative efforts. Perhaps most memorable, Mr. Greer told his own two witnesses to seek to quash depositions and not to cooperate with undersigned counsel at ECF No. 200.

Case 2:24-cv-00421-DBB-JCB   Document 337   Filed 06/10/25   PageID.1846   Page 5 of 10

hoped to use to avoid sanctions in this Court. And indeed, although Mr. Greer's representations to this Court continue to occasionally insist that there was still some sort of "business meeting" in Winnemucca, ECF No. 290 at 4, Mr. Greer confessed to the City of Winnemucca that it was not an undefined "business meeting" that conflicted with his ability to appear in this Court on May 6, 2025. Instead, Mr. Greer explained that this Court's hearing conflicted only with "the city council meeting I was given short term notice of that you wouldn't postpone." ECF No. 293-2 at 32.[4]

The first time Mr. Greer came clean to this Court was as the instant motion was being drafted. At ECF No. 299, Mr. Greer ironically stated, for the first time and in a motion for sanctions against undersigned counsel, that the defense was right from the beginning: Mr. Greer did indeed "schedule[] a city council meeting on the same day as the court hearing." *Id.* at 2. But what Mr. Greer belatedly characterized – only after being caught in his web of lies – as a "goof," *id.*, cannot simultaneously have been an "emergency." ECF No. 276. Mr. Greer cannot belatedly change his narrative to escape a finding that his early (mis)representations are sanctionable.

Mr. Greer has lied to this Court, and it is not the first time. Under *Archibeque v. Atchison, T. & S.F. Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995), the appropriate remedy for Mr. Greer's repeated misrepresentations is dismissal.

## II.    Standard of Review

"Rule 11 sanctions are meant to serve several purposes, including (1) deterring future

---

[4] This statement by Mr. Greer to the City of Winnemucca is as untrue as are Mr. Greer's representations to this Court. Specifically, Mr. Greer does not explain why he on two separate occasions specifically requested to meet with the City Council on May 6, 2025, if he also wants to blame the city for not postponing the meeting.

litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White v. GM Corp.*, 908 F.2d 675, 683 (10th Cir. 1990). To impose Rule 11 sanctions, the Court must first find that a pleading, written motion, or other paper violates Rule 11. *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019). To avoid sanctions, a litigant's conduct must be objectively reasonable. *Id*. at 1320 (citing *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988)). The objective reasonableness standard "applies whether the person against whom sanctions are sought is an attorney, a pro se litigant, or both." *McCormick v. City of Lawrence, Kan*., 218 F.R.D. 687, 690 (D. Kan. 2003) (citing *Wesley v. Don Stein Buick, Inc*., 184 F.R.D. 376, 378 (D. Kan. 1998).

"Legal contentions are 'frivolous,' and thus sanctionable under Rule 11, when the party advancing them has not made reasonable inquiry into the governing law or the relevant facts." *Lawrence v. Cherry Creek Sch. Dist. No. 5*, Civil Action No. 24-cv-00678-DDD-KAS, 2025 U.S. Dist. LEXIS 29785, at *4 (D. Colo. Feb. 19, 2025), citing *Greeley Publ'g. Co. v. Hergert*, 233 F.R.D. 607, 611 (D. Colo. 2006) (citations omitted). The standard is an objective, not subjective or based on the individualized beliefs of a particular litigant. *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am*., 935 F.2d 1152, 1155 (10th Cir. 1991). Even "[a] good faith belief in the merit of an argument is not sufficient… a plaintiff proceeding on a pro se basis is equally subject to the requirements of Rule 11." *Quarrie v. Wells*, No. 17-350 MV/GBW, 2020 U.S. Dist. LEXIS 236358, at *38-39 (D.N.M. Dec. 16, 2020) (collecting cases).

### III.     Argument

Mr. Greer did not have an "emergency" on May 6, 2025. He didn't even have a

"business" emergency. Instead, Mr. Greer selected, on two separate occasions long after this Court's hearing for that date was scheduled, to request that the Winnemucca City Council set aside time for him to discuss his dreams of establishing a brothel in northern Nevada. Only after Mr. Greer was caught in his lies – and after first trying to cover those lies up by emailing the City of Winnemucca with a demand that the government officials there wrongfully deny a Nevada Public Records Act request – did the Plaintiff finally confess to a "goof." That is not good enough.

Although the Tenth Circuit uses four analytical factors to determine what sanctions are appropriate, the factors are not a "rigid test," and "determining the correct sanction is a fact specific inquiry that the district court is in the best position to make." *Archibeque v. Atchison, T. & S.F. Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (internal quotations and citations omitted). The factors are: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." *Id*.

Here, Defendants confess that there does not appear to be much prejudice from Mr. Greer's "emergency" motion for a continuance of the May 6 hearing, standing alone. After all, the Court denied Mr. Greer's "emergency" motion on its merits. ECF No. 278. But that is not the full context of the harm to Defendants: Instead, as Defendants have pointed out consistently in this matter, Mr. Greer refuses to abide by the rules that govern ordinary litigants. Instead, Mr. Greer "pops off at the mouth, or the pen," without doing even the most cursory of factual or legal investigation. Transcript of May 6, 2025 hearing at 20:6.

That is what has yet again happened here, as part of a pattern on Mr. Greer's part and *in a specific effort by Mr. Greer to prevent the Defendants from having their day in Court on the earlier sanctions motion*, among other motions scheduled to be heard on May 6. The prejudice to the Defendants is thus best analyzed globally, rather than with respect to one individual motion for a continuance. Put simply: Defendants have learned – as this Court has also seen firsthand – that Mr. Greer cannot be taken at his word on anything, no matter how small or seemingly insignificant. Mr. Greer cannot even be given the benefit of the doubt when he tells this Court and counsel that he is facing an "emergency," which is ordinarily the cause for considerable grace.

Similarly, Mr. Greer's latest "emergency" motion may not seem to have caused much interference in the judicial process, if it is analyzed in a vacuum. After all, the Court denied Mr. Greer's "emergency" motion on its merits, without even inquiring into whether those merits were fabricated. But again, the judicial process did not begin and end on May 6. Mr. Greer has shown that he cannot be trusted with any of his representations at all. And he has shown that he values this Court's time less than he values his own and those with whom he seeks to conduct prostitution-related business deals, because Mr. Greer will do anything he can to evade a court hearing, but will not similarly seek to avoid any other engagement.

The culpability of Mr. Greer is extreme in this matter. Not only did he make a material misstatement of fact *in an effort to avoid a hearing at which he was facing an allegation that he had made two other material misstatements of fact*, but Mr. Greer also took great pains to hide his lies. First, Mr. Greer told the City of Winnemucca not to release the documents that would prove he was not facing an "emergency" on May 6. ECF No. 293-

2 at 32. Then, when that failed, Mr. Greer told this Court that he hadn't lied at all. ECF No. 290 at 4 (stating there really was a business meeting, not just a City Council meeting). Lastly, Mr. Greer changed his narrative entirely after he'd been caught, characterizing the whole thing as just a "goof." ECF No. 299 at 5. Mr. Greer cannot possibly learn his lesson if he is permitted to continue to litigate this case, and Plaintiff will certainly continue in the pattern he has demonstrated to date. Defendants will need to fact-check every representation Mr. Greer makes, and Mr. Greer will continue to edit his story with each passing filing. Enough is enough: this case must be dismissed.

This Court previously warned Mr. Greer that this case might be dismissed for failure to prosecute, when this case was in its infancy and Mr. Greer first began his pattern of noncompliance with Court orders. And this Court expressly warned Mr. Greer at the hearing on May 6, 2025, that representations made to the Court must be reasonably investigated. It is a great irony that Mr. Greer attempted to use his own fraudulent misstatements to continue the May 6 hearing and to avoid that warning. But Mr. Greer cannot profit from his own continuing malfeasance.

Lastly, Mr. Greer has shown that he does not care about "lesser sanctions" in this litigation, and therefore lesser sanctions will not deter Mr. Greer from continuing his misbehavior. When Defendants were forced to incur over $5,000 in costs due to Mr. Greer's failure to make proper initial disclosures, ECF No. 228, this Court later reduced Mr. Greer's responsibility to make Defendants whole to $1,000. ECF No. 230.[5] This despite that the sanctions were expressly intended to make Defendants whole for costs

---

[5] Ostensibly, one of the Court's grounds for reducing the sanctions owed to Defendants was that Mr. Greer was proceeding in forma pauperis. But Mr. Greer's in forma pauperis status was itself revoked because Mr. Greer confessed in open Court on May 6, 2025 that he had no difficulty paying filing fees.

wrongfully incurred because of Mr. Greer's litigation misconduct. But Mr. Greer has not paid that reduced amount or any other amount, even after his motion for a stay and a bond was denied. ECF No. 283 (denying ECF No. 251). Indeed, Mr. Greer has recently bragged that he has decided not to pay the award this Court made in Defendants' favor, specifically because Mr. Greer is mad that Defendants have continued to defend this case rather than capitulate to the Plaintiff's narrative. Exhibit A.

In short: Mr. Greer's sanctionable behavior has continued and even escalated, with the Plaintiff making clear that he will even fabricate an "emergency" to avoid being called out on other fabrications. There are no sanctions short of dismissal that will deter Plaintiff, or make Defendants whole. This Court should dismiss the case.

### IV.     Conclusion

This Court should impose appropriate sanctions against Mr. Greer. Defendants request dismissal as the minimum adequate form of relief.

DATED May 19, 2025

**HARDIN LAW OFFICE**

 /s/ Matthew D. Hardin
**Matthew D. Hardin**
Attorney for Defendants