Plaintiff Russell G. Greer comes forward now with his <u>First Amended</u> Complaint against Defendants named above and alleges as follows:

~~**NATURE OF THE ACTION**~~

**INTRODUCTION**

1.   In 1996, Congress enacted *U.S.C. 47 § 230*, otherwise known as the *Communications Decency Act (the CDA).*

2.   The *CDA* protects internet service providers (ISPs) from being considered publishers.

3.   There are caveats: the *CDA* doesn't protect against copyright infringement. *U.S.C. 47 § 230 (e)(2).*

4.   When the *CDA* was enacted, they passed that law not knowing that sites like Kiwi Farms would operate. Therefore, because of the *CDA*, Plaintiff can only pursue copyright infringement claims against the site owners: Moon and Lolcow LLC.

~~4.~~5.       Plaintiff brings this action seeking to put an immediate stop to, and to obtain redress for, Defendants' blatant and purposeful contributory infringement of ~~Plaintiffs~~Plaintiff's copyrights, which are a book entitled, "*Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy"* and for songs Greer also copyrighted, "*I ~~Don 't~~Don't Get You, Taylor Swift"~~ and other songs.~~".*  All works are copyrighted with the United States Copyright Office.

~~1.   Traditionally, websites have not been liable for third party conduct, in accordance with the *Communications Decency Act* and Safe Harbor Digital Laws. However, websites are NOT immune from federal copyright infringement claims when they know about such claims, but refuse to remove the copyrighted material, as has been the case here.~~

2.   ~~Additionally, separate from the copyright claims, Defendant's website, Kiwi Farms, is hub for harassment, stalking and doxing. The site's lies and harassment have ruined Greer's reputation and have caused him and those close to him to fear for their lives. Mr. Moon has encouraged  this by allowing for said conduct to occur. He has even participated in the conduct by engaging in commentary  and encouraging the infringing activity.~~

3.   ~~While typically upheld by courts, the Communications Decency Act is an outdated law and wasn't intended  to protect sites such as Defendant's.  Thus, the law should be found  that it does not give immunity to Defendant in this case for the non-copyright claims.~~

~~5.~~6.        Defendants' conduct ~~is causing, and unless immediately enjoined, will continue to cause~~ has caused enormous and irreparable harm to Plaintiff. and has affected the market and Plaintiff's ability to market his copyrighted material.

7.   Plaintiff requests statutory damages for all infringements involved in this action, as found in 17 U.S. 504 (C )(1), in an amount up to $30,000, but no less than $750, for each copyright infringed upon.

~~6.~~8.        Plaintiff additionally requests statutory damages for willful copyright infringement, as found in 17 U.S. 504 (C)  (1 )(2), in the amount of $150,000, for each copyright infringed upon. ~~Further, Plaintiff requests damages for the harassment and defamation he has had to endure at the hands of Defendant's site.~~


## JURISDICTION AND VENUE


9.   This is a civil action seeking damages ~~and injunctive relief~~ for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, et seq.

10. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

~~4.   As for the harassment claims, this Court has jurisdiction because there is complete diversity between both parties. 28 U.S.C. § 1332,~~

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and

*(c), and/or § 1400(a).*

## **PERSONAL JURISDICTION**

12. This Court has personal jurisdiction over Defendants, as ~~Defendant has~~ Defendants have purposely availed ~~himself~~themselves into this Court's jurisdiction, as ~~he has~~they have caused, directly and indirectly, for ~~his users to infringe on~~ Greer's intellectual property to be copyrighted; to harass Plaintiff by running a site that mocks and harasses people ~~he deems~~Defendants deem to be weird; ~~participating in the commentary on Greer;~~ posting Greer's letters asking ~~Defendant~~Defendants to stop; ~~talking about Greer on random YouTube shows, which draws attention and contact to Greer.~~. **EXHIBIT A.**

## **PARTIES**

13. Plaintiff Russell ~~G.~~ Greer resides in the State of ~~Utah. Plaintiff's life and livelihood have been severely damaged by Defendants and the users on the site that Defendant manages.~~Nevada, but the infringement of the copyrights occurred while Greer was living in Utah. Greer also has a facial disability and that is in-part why Moon's site ~~harasses~~stalks Greer.

14. Defendant Joshua Moon resides in Florida~~.~~, but it has been rumored that he has at one time fled the country. He manages Kiwi Farms, a site founded on exploiting people for amusement purposes. ~~Defendant Joshua Moon is the owner of a website/forum.~~ Kiwi Farms was built to exploit and showcase those Moon and his users have deemed to be eccentric and weird, terming them "Lolcows". Moon frequently interacts with the site, using the username "Null". **EXHIBIT B**

15. Classifying Moon's site as a "forum" is being extremely kind. His users don't debate and discuss like a traditional forum does. His site goes far beyond that: they stalk and harass.  Moon and his site have caused three people to commit suicide. *Woman who set self on fire in Portland park remembered as 'brilliant and tortured' artist. Oregon Live. (2018)*

(https://://www.oregonlive.com/portland/2018/06/woman_who_set_self_on_fire_in.html) (article says, "Sagal, a transgender woman, **became the target of hate mob Kiwi Farms, an online group New Yorker magazine described as "the web's biggest community of stalkers"** that "specializes in harassing people they perceive as being mentally ill or sexually deviant in some way.").

16. Defendant Lolcow LLC owns the site, Kiwi Farms ~~is a site Defendant Moons runs~~. In his very own words, Moon has described his site as having nothing to do with New Zealand (the land of the Kiwis), saying, "Our name is a pointed jab at some of the mushmouthed autistic people we make fun of." Found on a thread entitled, *"A Truly American Response to Censorship."* Ar15.com (March 17th, 2019). ~~(https://www.ar15.com/forums/General/A-truly-American-response-to-censorship/5-2203190L).~~ (https://www.ar15.com/forums/General/A-truly-American-response-to-censorship/5-2203190/).

17. Defendant John Doe #1 is a user on Kiwi Farms, going by the name Moseph.Jartelli.

18. Defendant John Doe #2 is a user on Kiwi Farms, going by the name Russtard.

## GENERAL ALLEGATIONS

19. Greer caught Kiwi ~~Farms~~Farms' attention after he was on the news for a lawsuit Greer had filed against pop star Taylor Swift in late 2016~~.~~ as a publicity stunt.

20. Shortly after the event, Greer Googled himself and found that he had been put onto Kiwi Farms. At the time, Greer thought it was just a random, forum site and ignored said site.

21. It wasn't until Greer began receiving harassing messages through phone, email and social

media that he realized how difficult that site was becoming, with links of the site being sent to him. The users on Kiwi Farms began to put Greer on other troll sites, like Encyclopedia Dramatica (which is a libelous and bizarre form of

Wikipedia) and twisted Reddit threads. This is a pattern that Kiwi Farms does to all of its victims, which is well-documented.

22. On February of 2017, Greer's employer, a law firm, pulled him into an office and explained that they were being inundated with emails that were saying how "horrible" Greer was. One message falsely claimed Greer was using a work phone to look at pornography. Greer even received links to websites on his work email, which Greer found surprising because he had not disclosed his work email address. This all is linked back to Kiwi Farms.

23. Videos began to pop up on YouTube, warning people that if they didn't date Russell Greer, he would sue you, an obvious reference to the twisted news stories. Greer was able to remove the video, but other videos of him began to pop up.

24. Fake profiles began to pop up on social media of Greer, using his pictures with derogatory names such as "Moebious Shit Lips" and "Rat Face". On Kiwi Farms, there are users who use Greer's pictures for their user profiles, with some of the usernames being "Ugly Troll 4 U", "ZombieFace" and "Russtard", which is a combination of ~~Plaintiffs name and the word "retard". Other profiles have included defamatory names, such as "Rapey Russ" and have included photos of Plaintiff with his hair photoshopped off, oddly making him look bald, when in fact, Plaintiff has a full set of hair. EXHIBIT C.~~<u>Plaintiff's name and the word "retard".</u>

~~5.   Having his hair photoshopped isn't defamatory or particularly concerning to Greer, but it must be pointed out to show the bizarreness of Moon's users.~~

25. Even walking around downtown in Greer's <u>former</u> city of Salt Lake, people would exclaim that Greer was the guy who sued Taylor Swift. Some people caused scenes in stores or screamed at him from cars.

26. Because of the harassment, Greer has had to change email addresses, phone numbers and delete social media profiles. ~~EXHIBIT D.~~

27. Realizing that things were getting out of hand, Greer decided that he was going to write a book about the event to explain his side of things and to

hopefully clear up the ~~slander~~defamation surrounding him. His goal was to get a publisher to pick up the book.

28. No book publishers or agents were interested in his book, so Greer decided to ~~self-publish~~selfpublish the book on Amazon and he would do his own marketing. Greer copyrighted the book with the Copyright Office, as found in *17 USC 408-410.* The book has the registration number of TX0008469519. He received a Certificate of Registration. **EXHIBIT D.** A copyright application was filed before the infringement began.

29. The book was entitled, "*Why I Sued Taylor Swift and How I Became Falsely Known as Frivolous, Litigious and Crazy~~.~~"~~.~~" Numbering at 175 pages, Greer invested nearly a year writing the book and even hired an animator to draw a comic intro. He wanted his story to be as appealing as possible. EXHIBIT E.

30. In late October of 2017, Greer was fired from his job and evicted because of the trolls  on Kiwi Farms, with his landlord expressing fear that the trolls would ruin the landlord's business, which was a gym facility. The landlord also didn't understand the Swift situation. The trolls had already sent pizza delivery guys to the landlord's house.[1]

31. Kiwi Farms has doxxed Greer's addresses and contact information and displayed it on that site for people to disparage him. The users on that site have openly called for harassment against Greer. Other users have asked for people to put everything about Greer onto that site, so that they can trash it, copyrighted or not. EXHIBIT F.

~~6.   As a consequence of those postings of encouraging harassment, Greer has received packages through the mail, which have contained very scary and frightening letters. Some contained powder. EXHIBIT G~~

~~7.   The users on Kiwi Farms have also harassed Greer's family.~~

~~8.   In the summer of 2017, Greer received a phone call from a separated relative who informed Greer that she no longer wanted to communicate with Greer because of all of the trash on Kiwi Farms. From Plaintiffs understanding, the family member was upset because a person had pretended to be Greer and had posted information about this family member on various~~

~~forums. However, the family member thought (and still thinks) it was Greer doing the harassing, although Greer vehemently denies ever doing such a thing. Kiwi Farms has caused family damage to Greer.~~

~~9.   Greer has struggled to find and keep jobs because of Kiwi Farms. Many employers and potential employers have came across the site and have taken the smear and the twisted narratives as fact and have thus fired and denied work to Greer. Skimming through the site himself, Greer has found many half-truths and lies about himself. Other people have looked on that website and claim that how Kiwi Farms portray him is nothing to how Greer is in person.~~

~~10. In addition to misunderstandings involving Swift, Greer has been engaged in other causes, like trying to legalize prostitution, which Kiwi Farms has dubbed Greer a "sex pest" because of it. They have even harassed businesses that Greer has frequented, warning the businesses about Greer and have caused him to be banned from a few places. EXHIBIT H~~

~~11. The users on Kiwi Farms have weaponized that site against Greer, warning people who are complete strangers to those users, to stay far away from Greer and to Google him. One of Moon's users posed as a reporter and wanted to interview Greer for Medium. The guy had bogus credentials and he ended up writing the article about Greer after Greer refused and his article got quite a bit of traction and portrayed Greer in a false light. *The Fan Who Sued Taylor Swift,* Medium.com. Other users have pretended to be real people (like entertainment agents and reporters and sympathetic fans) to dupe Greer.~~

32. The harassment is linked to Kiwi Farms because Greer's social media handle is listed ~~in~~ at the top of his featured ~~section~~thread on the site. Also, the trolls screenshot everything Greer does and put it on the site, which encourages the users to harass Greer. And because harassers have linked ~~Kiwi Farms to the harassment. EXHIBIT I.~~ **As a a point to clarify:** Defendant Moon *has,* ~~per an editorialized disclaimer dated 01/2018, warned his users not to contact Greer, however,~~ **it** ~~seems Moon has either forgotten about the editorialization or it's a decorative disclaimer and it's not enforced because as demonstrated~~

~~below, people still harass Greer and Moon has contributed to the harassment.~~
~~Another victim of Kiwi Farms puts it more poignantly: "The website is filled~~
~~with admonitions to not contact people in real life, but these have a tongue-~~
~~in-cheek feel, as if the real message is, "If you do this, you're a deviant.~~
~~Please, oh please, be a deviant." Spend much time reading through the Kiwi~~
~~forums and you'll quickly see that the "rule" is not enforced." *Hunting for*~~
~~*Trolls on an Anonymous Forum.* Medium. (2018).~~
~~(https://medium.com/s/darkish-web/hunting-for-trolls-on-an-anonymous-forum-~~
~~7b721d3bd199).~~ Kiwi Farms to the harassment. EXHIBIT G.

## COPYRIGHT INFRINGEMENT OF GREER'S BOOK

33. Greer filed an application for copyright on 10/22/2017, before the infringement occurred, and the certificate lists that day as the effective date of registration. EXHIBIT J.

34. In November of 2017, Greer published his book. Unsurprisingly, the Kiwi Farms users gave his book bad reviews on various fronts. On Good Reads, a site where readers can review books, the users on Kiwi Farms have left very mean and hate filled messages about Greer and his book. It currently holds a 1.5 star rating out of 5 stars.  EXHIBIT K.

35. Greer knows that the reviews are from Kiwi Farms because the comments have included links to Kiwi Farms and other obscure sites, inviting people to go read the book illegally. EXHIBIT L.

36. In January of 2018, Greer was informed that his book had been illegally put onto Kiwi Farms.

37. The following link shows where the book is at on Kiwi Farms, with a heading entitled, "Rusty's Tale." (https://kiwifarms.net/threads/russell-greer-~~-~~theofficialinstaofrussellgreer.**30488**/). The book's location has since been moved to a different page and is also accessible on the front page about Greer. Exhibit M.

38. Below the title, "Rusty's Tale", is a Google Drive link to Greer's book. (https://drive.google.com/drive/folders/0B2VdH79IRT1RN1pvdnJ1cTk2cUU). Somebody created a copy of Greer's book and put it in a Google Drive file that is accessible on Kiwi Farms.

39. Infuriated and hurt, Greer sent Mr. Moon requests to have his book removed, but Moon refused. The notices weren't in the form of a DMCA Takedown notice. Rather, they were emails wishing to avoid litigation. Litigation hadn't really crossed Greer's mind, based mostly on Moon's website FAQ, which states that Moon is an "insane person" with "no assets", and so it made no sense to try suing him and so only email requests were made, not legal requests, like a DMCA notice. EXHIBIT N.

40. In turn, Moon published ~~Plaintiffs~~Plaintiff's requests onto Kiwi Farms and explained that there was so "much wrong" with Greer's request for it to even be considered. That is harassment and contributing to the harassment.

41. Greer has tried everything to get the site to stop harassing him, such as getting the police involved because of the site harassment, but the Salt Lake City police wouldn't pursue a case because they wouldn't allow Greer to file a complaint over email, although Officer Hernandez, an officer Greer spoke with, said to ask Moon once more to remove his stuff. The police only allowed phone complaints, which Greer was not comfortable doing because of his disability and so a complaint was never filed. A year earlier, Greer had filed a police complaint against a specific user, but nothing ever resulted from that. It should be noted that other victims of Kiwi Farms have called the police because of the atrocious behavior coming from the site, so seeking the site harassment to stop is nothing peculiar.

42. Other users on Kiwi Farms have created unauthorized audio recordings of Greer's books and have put them on various sites. One infringer used the hashtag, "Spaz Face" as a direct, discriminatory insult against Greer. Kiwi Farms has links to these audio recordings. EXHIBIT O.

43. The copyright infringement hasn't been your "run-of-the-mill" infringement. They have put a copy of his book on the site for anybody to view and to save

onto their devices, via the Google Drive link listed on the site and on the front page, and have thus purposely deprived Greer of making money and have deprived him of having the ability to try to clear his name with a book that was written for the express purpose of doing just that. This has been demonstrated with marketers refusing to market the book because it has bad reviews, not understanding that Kiwi Farms is behind the reviews. EXHIBIT P.

## **COPYRIGHT INFRINGEMENT OF GREER'S SONG**

44. Seeing that his book had hit a snag because of the bad reviews, Greer decided to write a song because he felt he could bring awareness better with a song. He wanted to bring awareness to celebrity misrepresentation and cyber bullying. Of course, that is his opinion he has gathered after doing research and talking with people,

45. Investing his own money writing and producing the song with professionals, Greer finished the song in April of 2019. The song was entitled, "*I Don't Get You, Taylor Swift*" and is registered with the United States Copyright Office with the number SRu001366535. EXHIBIT Q. He filed an application for copyright on 4/12/2019, before the infringement occurred, and the certificate lists that day as the effective date of registration.

46. Greer paid CD Baby, a music distributor that publishes and distributes the music of independent artists, to publish his song and to place it onto major music platforms, like Spotify and Apple Music.

47. CD Baby also has an online store, where they sell the artists' music in the form of MP3 downloads. Greer was not happy with his song being on the store because he knew a troll would buy it and place it onto the website…and that's just what happened.

48. On April 15th, 2019, Greer was informed that his song had been put onto Kiwi Farms, a routine those users have been diligent about, and an uncomfortable reality Greer has had to cope with.

49. Upon investigating, Greer was horrified to find that the MP3 of his song was indeed on Kiwi Farms. The link can be found here: https://kiwifarms.net/threads/russell-greer-theofficialinstaofrussellgreer.30488/page-1448#post-4579377.

50. The user who posted the song, "Moseph.Jartelli", wrote, "Enjoy this repetitive turd."

51. Greer's frequent harasser, "Russtard", remarked, "Holy Shit! It is. ***Upload it here so no one else accidentally gives Russell money.***" EXHIBIT R.

52. This comment cements Greer's claims of the trolls seeking to ruin his life. Not only have they willfully infringed on Greer's copyright, they have openly conspired to steal Greer's works and deprive Greer of money. ~~This is harassment.~~

53. With the truth finally out in the open of the users intent to harm Greer, Plaintiff decided to prepare for legal action by sending Mr. Moon a DMCA Takedown Notice.

54. The infringement of his song was harmful because his song wasn't on streaming services yet and he hadn't advertised the CD Baby store location, thus hundreds, if not thousands, of plays on Greer's song was being had and Greer wasn't being compensated for it.

55. Greer waited an entire month for his song to be out on streaming services.

56. Plaintiff then discovered that CD Baby didn't want to distribute the song, so Greer had his song removed from the CD Baby store. He ended up hiring another distributor to distribute the song onto different streaming services, which they did.

57. However, during that gap of time, from waiting for his song to be officially put online to it finally being put onto streaming services, Mr. Moon's users, with Moon's knowledge, have spread Greer's song across different sites and have even put the song onto a lyric site, where they brag about Greer "accidentally" publishing the song and then they derided it.

## DIGITAL MILLENNIUM COPYRIGHT ACT

58. The Digital Millennium Copyright Act was signed into law in 1998 to shield
websites from liability arising from copyright infringement claims, with the
caveat being that websites follow and honor takedown requests from copyright
holders. *THE DIGITAL MILLENNIUM COPYRIGHT ACT OF 1998 ~~US~~U.S.*
*Copyright Office Summary.* (1998). Copyright.gov.
(https://www.copyright.gov/legislation/dmca.pdf). Since Defendant manages a
website, he is expected to honor all properly formed DMCA requests.

## GREER'S DMCA NOTICE

59. *17 ~~US~~U.S. 512(C )* allows for a copyright holder to send notification of
infringement to a designated agent of a service provider. Subsection 3 of the
statute (*17 USC 512(C )(3))* lists the elements of a proper DMCA Notice.
60. Greer turned to several sample DMCA Notices to make sure he was doing the
format of the Notice correctly and then he drafted his Notice. Exhibit S.
61. On Defendant's website, Mr. Moon has a section about removing copyrighted
material, which states: "We do not host well-known copyrighted content."
Moon's site then wrongfully states, "What copyrighted content we do host is
usually covered under Fair Use, but if you are the copyright holder of something,
email legal@kiwifarms.net with the appropriate documents. I do not respond to
emails without sufficient proof of a legal claim."
(https://kiwifarms.net/help/removing-
content/~~(https://kiwifarms.net/help/removing-content/). ~~).
~~61.~~62.     Moon's copyright statement is wrong because all copyright, famous
or non-famous, is protected by *17 ~~US~~U.S.C 106,* with the copyright holder
determining how he or she will distribute his works.
~~62.~~63.     Upon reading that, Plaintiff sent his DMCA letter to the designated
email address: legal@kiwifarms.net.

63.64.    Greer had to send two versions of his DMCA Notice because he initially was unable to locate all of the infringing content because Defendants have over 1,000 threads on him, but his final DMCA Notice (included in Exhibit S) contained the exact links and locations of his copyrighted works, satisfying all of the elements of the federal statute.

64.65.    Mr. Moon published Greer's DMCA request onto Moon's site, in the thread entitled,

"Take that off the God Damn Internet." EXHIBIT T. Along with publishing the DMCA request, Moon also published Greer's private contact information, and as a result, many of Moon's bizarre users began to harass Greer with messages sent to his email, including one with the email address titled, "Hitler Did Nothing Wrong". These users began telling Plaintiff that his song was horrible and that they had distributed the song elsewhere.

65.66.    Mr. Moon then emailed Greer back and derided him for using a template for his DMCA request.

66.67.    Even though the takedown notice was followed from a law website, it still followed the federal statute's guidelines for takedown notices: (i) a physical or electronic signature, (ii) Identification of the copyrighted work claimed to have been infringed, (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material, (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner and (vi) A statement that the information in the notification is accurate. *17 USC 512 (C )(3).*

(https://www.law.comellcornell.edu/uscode/text/17/512)

67.68.    Mr. Moon then went onto explain that he knew who Greer was (from his site) and that

Moon was waiving Safe Harbor protections and would claim "Fair Use" and that he would not be removing Greer's copyrighted materials.

68.69.    Greer replied that Moon evidently doesn't know what "fair use" is and Moon replied, "Try me," which inferred that Moon was daring Plaintiff to sue him.

69.70.    Since that exchange, Mr. Moon's website has continued harassing Plaintiff and they have continued to exploit Greer's copyrighted material. They have inundated Greer's works with hate and have engaged in hate sprees to prevent anybody from buying Greer's song or book. For instance, when Greer was informed by his distributor that his song was available online, it had already received 1 star reviews and Greer had not even advertised its location, thus proving that Moon's site has notifications every time Greer's name pops up and they harass him at every chance they get. Greer believes they have Google Alerts turned on for him.

70.71.    The DMCA letters were sent in 2019, but no action was taken against Moon because a lawyer advised that although Greer could prevail in a lawsuit, Moon probably had no assets and so Greer decided not to pursue action.

71.72.    However, since that time, Moon's site has continuously harassed Greer and have misused his other copyrights, "Yo, Yovanna!" and "Julianne's Smile". Both copyrights were filed before their releases, but have not yet appeared on the Library of Congress site. Greer has discovered that they have stolen other works of his and have put them on the site, namely a screenplay. Greer keeps posting and releasing things not intended for the bashing of Moon and his site, but with the hopes that Greer can break past the trolls. But the trolls have stifled all efforts of Greer trying to become musically successful. It is very scary and very annoying.

72.73.    Because of the harassment and blatant violations of his copyrights, Greer brings forth this lawsuit within the three year statute of limitations. *17 U.S.C. § 507(b)*

12. For the record, normal, productive people do not do what Moon's site does.

13. People who support Greer are frightened of being attacked by Moon's users

~~and so they can't defend him. This is a noticeable pattern: other people who have
been harassed by Moon's site have expressed the same fear. Many have lobbied
for Kiwi Farms to be shut down. EXHIBIT U. Truthfully, Plaintiff has wanted to
take his own life because of the damage Kiwi Farms has done to him.
Additionally, the actions and words on that site constitute incitement, hate speech
and fighting words, which has made Plaintiff want to physically track down Mr
Moon to close down his site, but Plaintiff has refrained from doing so because
despite the losses Kiwi Farms has inflicted on him, Greer still has much to lose
if he were to do something stupid. Others have offered to hunt down Moon. That
is how bad this site is. It has ruined many lives.~~

~~14. Admittedly, Greer is frightened with filing this Complaint, as he fears Moon
will retaliate against him, but he hopes a judgement against Mr. Moon and his site
will get Mr. Moon and his site to stop bothering Greer. Or even better yet, having
Moon close down his site altogether. Greer is also petitioning this Court for a
preliminary injunction, as he fears Moon's site will retaliate against him and his
family for filing this Complaint.~~

## **FAIR USE**

73. Before commencing this action, Greer considered and studied Moon's claims
of fair use. As a cursory matter, Moon or Kiwi Farms do not have a prima facie
claim for fair use.

74. Fair use is an affirmative defense found in *17 U.S.C. 107* and consists of four
factors:

75. 1.  The purpose and character of the use (including whether it is
transformative, commercial, non-profit, or educational).

76. 2. The nature of the copyrighted work.

77. 3. The amount and substantiality of the portion to be used.

78. 4.  The effect upon the potential market for the copyrighted work.

76. All four factors must be weighed together to find fair use and is determined on a case by case basis. *Campbell, Aka Skyywalker, Et Al. v. Acuff-Rose Music, Inc.*, 510 U.S. at 578, 114 S. Ct at 1171 (1994).

77. Pertaining to the purpose and character of the use, although Mr. Moon may be allowing Greer's copyrighted works for criticism and commentary, and as far as Greer knows, non-profit use, Moon's users have stated openly that they seek to deny Greer of money. The first factor disfavors fair use.

78. Pertaining to the nature of the use, Greer's works are creative and for entertainment. Although written about true experiences, they were written in a creative manner. The second factor disfavors fair use.

79. Pertaining to the amount copied, Defendants are allowing the entirety of Greer's copyrighted materials to be infringed and copied from. The third factor disfavors fair use.

80. Lastly, pertaining to the effect on the market, the first factor can be tied in: Moon's users have openly stated that they seek to deprive Plaintiff of money and have been distributing the song to other sites. Moon's users have put his songs onto a lyric site and have added negative commentary about the song and about Greer, thus, dissuading anybody from listening to the song.

81. Defendants' claim of fair use do not survive, even at a prima facie glance.

## ~~THE COMMUNICATIONS DECENCY ACT SHOULD BE FOUND TO NOT PROTECT~~

### ~~MOON'S SITE~~

~~15. In 1996, when Section 230 of the Communications Decency Act was enacted, which protects publishers of websites (Internet Service Providers or ISP) from third party conduct, hate sites and troll sites were not a thought in Congress's mind.~~

~~16. 24 years later, Congress is now mulling that hate sites, among other sites, need to lose their Section 230 protection because internet harassment is a~~

growing problem. *Legal Shield for Websites Rattles Under Onslaught of Hate Speech.* The New York Times. (2019).

17. Sites of questionable character have already lost their Section 230 immunity, namely sites that host prostitution. *Trump Signs Bill Amid Momentum to Crack Down on Trafficking.* The New York Times. (2018). Animal crushing sites and sites that sell illegal drugs are also not protected under Section 230.

18. This Court should find that Section 230 immunity does not extend to hate/troll sites like Mr. Moon's for these two reasons: legislative intent and the mere fact that Moon is actively involved with his site.

**LEGISLATIVE INTENT**

19. As previously stated, Section 230 of the Communications Decency Act (henceforth referred to as the "CDA") was enacted in 1996 before the advent of the major sites we have today.

20. Courts have held that the CDA protects ISPs, which are blogs, forums and sites like Amazon and Facebook, from third party conduct. And rightfully so, because Facebook and Amazon were created for the sole purpose of selling items and having friends connect with each other.

21. And while harassment does happen on those sites by third parties, those sites do have options to report harassment and should not be held liable for the harassment because the sites were not designed to harass.

22. On the other hand, Kiwi Farms was designed to harass, which is even said in Moon's very own words: to make fun of people; to treat them less than human by referring to them as "Lolcows".

23. And while Mr. Moon has put up disclaimers for people to not contact Greer, they still do because Mr. Moon has allowed for Greer's social media to be displayed, which has caused his users to harass Greer because it's like an open door to contact Greer. Allowing that avails Moon to this jurisdiction. When Moon posted Greer's DMCA letters, some of Moon's users contacted

Greer and harassed him.

24.  Plaintiff receives about three harassing messages weekly in some form. Some intimidated Greer from filing this lawsuit, on August 27th, 2020, by claiming the lawyers for Moon would "ruin" Plaintiff and that "it's not too late to stop." EXHIBIT V. Greer also gets inundated with calls from unknown out of state numbers, which disrupts his phone. Other messages are from bizarre, fake accounts, as shown in Exhibit V.

25. As explained in paragraph 67, Moon also partakes in the harassment by posting Greer's messages asking him to stop and engaging in the commentary. Moon patrols the forums, thus condoning the acts of his users. So it seems to be a bit of a paradox for Moon to urge civility, while condoning the harassment. The disclaimers that Moon posts are decorative. They are put up to seemingly save himself from liability, but he doesn't enforce the rule, as people still contact Greer; Moon allows Greer's social media to be displayed, which causes people to harass Greer; and Moon allows for Greer's intellectual property to be posted, which Greer feels the effects of. And lastly, Greer has posted openly on his social media that he wants the harassment to stop, but the trolls screenshot his pleas and post it onto Kiwi Farms and Moon would be aware of that.

26. In a way, Moon is implying that as long as one is civil in their harassment, it is OK. So despite his decorative disclaimers, Moon allows for the harassment to happen. If he truly didn't want people to harass or contact Greer, Moon would shut down his site, or at the very least, he would remove all links to Greer and not allow the screenshots on Greer to be posted onto the site, to prevent people from reaching out to Greer, because the users on Kiwi Farms will use "laughing" reaction buttons on Greer's social media, thus harassing him or send harassing messages. EXHIBIT W.

27. Legislative intent did not intend for sites, where users can dump everything about a person, even their intellectual property, and the site publisher is on it, to flourish with CDA immunity.

28. In fact, Section 230 contradicts itself. *47 USC  230 b(5)* says that it is the

policy of the United States to deter stalking and harassment by means of computer. That section is in contradiction of230 ( C) (1), which provides immunity to hate sites like Moon's.

29. For that very reason, legislative intent did not mean to protect Kiwi Farms.

**MOON'S INVOLVEMENT**

30. As stated above, Defendant is actively involved in the harassment by providing his own commentary, by allowing hateful comments to be made, by allowing Greer's intellectual property to be illegally used, by providing a hub for harassment. Moon has helped facilitate and condone the harassment and therefore, he should be liable for the acts of his users, especially since it would be a near impossible feat to track down his users.

31. Moon is aware of his CDA immunity and wears it like a badge of courage, boasting about his indestructibility and claims to not know of what goes on his site, when clear evidence shows that he monitors and engages with it.

32. Because of the two above mentioned reasons, Mr. Moon should lose his immunity for the harassment and false light claims. Moon has already waived his immunity for the intellectual property claims, even though the CDA doesn't protect copyright infringement.

## COUNT ~~II~~

## CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST JOSHUA MOON AS

## OWNER/PUBLISHER OF KIWI FARMS

85. Russell Greer realleges each and every allegation in paragraphs 1 through ~~108~~85 as if fully set forth herein.

86. ~~Defendants have~~ "[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Diversey v. Schmidly,* 738 F.3d 1196, 1204 (10th Cir. 2013).

87. To establish a claim for contributory copyright infringement, a plaintiff must show that (1) a third party committed direct infringement, (2) the defendant knew of the direct infringement, and (3) the defendant caused or materially contributed to the direct infringement. *Greer v. Moon,* 83 F. 4th 1283 (10th Cir. 2023).

88. As established in the facts, Kiwi Farms users have uploaded Greer's songs directly to the Kiwi Farms site, so that "*nobody accidentally gives Russell money.*" That satisfies the first element of contributory copyright infringement.

89. Turning to the next element, Defendant Joshua Moon, as owner and operator of the site,  has actual knowledge of the illegal acts of infringement from, among other things, written notification from Plaintiff. ~~Defendants have therefore~~  in the form of a proper DMCA take down request.

90. Defendant Joshua Moon has deliberately disregarded Greer's notifications of infringement. and has posted the DMCA take down request onto his site, mocking it.

~~86.~~91.    In a 2019 email to Greer, Defendant Moon ~~even~~ said that he was waiving Safe Harbor protections and that he would not remove Greer's copyrights, which shows knowledge.

~~33. Defendants have knowingly and willfully permitted, and continue to permit, the infringement of Greer's works by materially contributing to the infringement by running and managing a website that allows users to steal and dump everything about Greer. Moon has even defended such action on his website's FAQs page and has even explained to Greer through email why he believes he is allowed to infringe on his works, claiming Fair Use, and has posted the email conversation for many people to see and comment on, and in turn, harass Greer. All of Greer's songs, "Safari Ride", "Yo, Yovanna!", "I Don't Get You", and "Julianne's Smile", all copyrighted, have all had their MP3s put onto Kiwi Farms in their entirety, robbing Greer of money for the thousands of dollars he put into creating those works.~~

~~34. Lastly, the way Kiwi Farms was built, it allows for people to see a user's interactive history on the site. Greer has evidence of Mr. Moon's profile looking at the sections on Greer, thus Moon would have been aware of the infringement and contributed by interacting with the infringing content.~~

~~35. Defendants have therefore materially encouraged, enabled, and contributed to the infringing.~~

92. When threatened with suit, Moon smugly retorted: "Try me."

93. This satisfies the second element of contributory copyright infringement.

94. The last element of contributory infringement: Defendant Joshua Moon has knowingly and willfully materially contributed and substantially induced, and continues to materially contribute and substantially induce, the infringement of Greer's works in the following ways:

### Reposting Takedown Notices

95. As the 10th Circuit held in the appeal of this case, Mr. Moon not only expressly refused to remove the materials, "he mockingly posted the correspondence to Kiwi Farms. Under the circumstances, this is not the passive behavior of one 'merely permitting' infringing material to remain on his site. Rather, we conclude a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement of Kiwi Farms users' direct copyright infringement."

### Kiwi Farm's Reputation Attracts Users of a Mind to Infringe

96. In Joshua Moon's very own words, Kiwi Farms exploits the disabled and other marginalized people.

97. It should be no surprise then that users who hate disabled people (as evidenced by John Doe #5 choosing the username "Russtard," as a jab at Plaintiff for having a disability) would be inspired by Kiwi Farm's mantra of exploiting disabled people, to do just that: exploiting a disabled artist's copyrights by posting said material onto the site, hoping to rob a disabled artist of his pay.

98. Moon has even said in the FAQs section of his site that he considers "non-famous" works (i.e. the works of Lolcows) to be "fair use" and so that would inspire direct infringers to infringe.

99. Indeed, the reputation of Kiwi Farms "attracts users of a mind to infringe." *MGM v. Grokster,* 545 U.S. 913 (2005) ("The point, of course, would be to attract users of a mind to infringe, just as it would be with their promotional materials developed showing copyrighted songs as examples of the kinds of files available through…").

### 3. Damages

### A. Effect on the Market

100.    The contributory infringement has had damaging effects to the market because Joshua Moon and his website Kiwi Farms "usurps the market" by offering a "competing substitute." *Andy Warhol Foundation v. Goldsmith,* 11 F. 4th 26 (2nd Circ. 2021).

101.    The market is Greer's self-published book on Amazon and the many streaming services like Spotify, Apple Music, etc.

102.    Instead of these critics and haters and ableists on Kiwi Farms paying to stream or buy books or songs of Greer's, to criticize said works, the entirety of the works are on Kiwi Farms for the users to download to their devices, so that "nobody accidentally gives Russell money." 103.  Based on the visible number of views on the MP3 files of Greer's, Greer has lost thousands of dollars, if one were to calculate the number of views by MP3 digital download store price. It's unknown how many people have downloaded the book.

104.    Simply ignoring the infringement and trying to make money through the streaming platforms is insufficient to turn a profit because Greer's online following isn't large enough.

105.    Contrary to Mr. Moon, non-famous artists need all of their monies earned.

106.    There's nothing *fair* about robbing a person of their money.

**B. Effect on Greer's Ability to Market His Works**

107.     Not only has the infringement affected the market, it's also affected Greer's ability to market his intellectual property because Mr. Moon has built a website that monitors Greer (and other lolcows) and by default, Greer's copyrights.

108.     The owner of a copyright enjoys a "bundle of exclusive" rights under Section 106 of the Copyright Act, including the right to distribute a work. *Harper Row Publishers v. Nation Enters.,* 471 U.S. 539 (1985).

109.     Greer has been unable to distribute (i.e. market) his copyrights because Moon's site and some of his users' sites have more following than Greer does and so their sites with links to infringing materials are more visible to the public than Greer's personal website or the streaming sites that contain his works.

110.     Often times, the sites of Moon's users are critical and negative of Greer and so it deters interested people from following Greer and streaming his works.

111.     Every time Greer gains followers or fans or does his own PR, Moon's site somehow always sees this and they feel the need to stomp out Greer's marketing efforts and thus this kills the marketability of Greer's works and in turn, his ability to make money off of his copyrights. *American Geophysical Union v. Texaco Inc*, 60 F. 3d 913 (2nd Cir. 1994) (analyzing the effects of the marketability of a copyright is a useful means to gauge the impact of copyright infringement).

**4. Monetary Statutory Damages Sought**

112.     Plaintiff has sustained, and will continue to sustain, substantial injuries, loss, and damage to his exclusive rights in his copyrights as a result of ~~the Defendants'~~Moon's wrongful conduct in an amount to be determined to be no less than ~~One Hundred and Fifty Thousand Dollars ($150~~$750, but not greater than $30,000~~), per~~, under *17 U.S. 504 (C )(1)*, for each infringed copyright ~~infringed. Plaintiff only asks for damages for "Why I Sued Taylor~~

~~Swift" and "I Don't Get You, Taylor Swift" because those works have suffered the most damage. The other infringed copyrights only support the infringing claims.~~,

113.     Because Plaintiff can also prove willful infringement, he also seeks One Hundred and Fifty

Thousand Dollars ($150,000), per copyright infringed, under *17 U.S. 504 (C )(2)*.

## COUNT II

## ~~ELECTRONIC COMMUNICATIONS HARASSMENT~~

## CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST LOLCOW LLC AS OWNER/PUBLISHER OF KIWI FARMS

114.     Russell Greer realleges each and every allegation in paragraphs 1 through ~~114~~113 as if fully set forth herein.

~~36. *Utah Code 76-9-201* allows for civil liability for electronic communications harassment.~~

~~37. Electronic communications harassment occurs when somebody posts and publishes private information about a person onto a public internet site or forum with the intent to abuse, threaten or disrupt said targeted person. *Utah Code 76-9-201(3)*.~~

~~38. Private information can be name, address, work place, mother's maiden name, a photograph or any other likeness. *Utah Code 76-6-1102*.~~

~~39. Greer would go further and argue that personal information would also be unpublished works that Greer never publicly released.~~

~~40. On 09/14/2018, a user, BadBoy2000, using Greer's face for his profile picture, posted an unpublished Holocaust script that Greer never publicly released, *October's Uprising*. Greer has only ever sent it to a few film agents and~~

two friends. Greer discovered this on August 26th, 2020.

41. While it is unknown who BadBoy2000 is, what is known is that personal works that Greer worked very hard on, were dumped onto the site to abuse Greer.

42. Greer chooses to pursue this as an electronic communications harassment claim to illustrate that the trolls purposefully put anything onto the site to make fun of and abuse Greer.

43. BadBoy2000 even writes, "These are the PDFs that I have, including his books." This illustrates purposeful intent.

44. Mr. Moon has liability upon the second part of what BadBoy2000 writes: "For the Mods [moderators]: please remove this ifI broke any rules by posting these." Mr. Moon, a moderator, never removed it, even though probably seeing it, thus condoning it.

45. There is no point in continuously sending Moon DMCA letters, as he will post the letters and harass Greer by posting the letters with the intent to abuse, and in turn, his users will harass Greer.

46. Moon's intent is clearly to abuse Greer's rights by posting Greer's letters and allowing others to post Greer's stuff. He disguises it as commentary, but mocking one's request to remove personal property is clearly abusing and mocking, per the Utah Code.

47. It's also abuse because of the location on his website that he posted it on: his section entitled, *"Take That Off the God Damn Internet!"* The descriptor for the page reads: "Take-down notices and frivolous legal threats the Kiwi Farms receives." Clearly, the page is meant to be abusing to those who make honest requests.

48. There are thousands of pages about Greer that are rife with abusing comments by Moon and by his users, some whom have posted Greer's baby pictures, saying such cruel and depraved things, which Moon has knowledge of. Per the Utah Code, baby pictures would be private information. Moon and his users' conduct has caught the eyes of local prosecutors, who passed a complaint onto the federal agency that handles internet crimes. But the problem arises again with catching individual users and the *CDA* shielding

Moon.

49. Further, to bolster harassment, the users on Moon's site have contacted members of Greer's family; those he wishes to do business with, warning them of the apparent crazy person they have falsely portrayed Greer to be.

50. Most recently, one of Moon's users, a girl named Rachel, contacted one of Greer's vocalists for a hit job article on Greer. Moon's users have previously published defaming "articles" about Greer and have weaponized those articles. It was very bizarre because Greer never listed the singer's real name, which proves they did something illegal to find it, such as intruding upon Greer's privacy.

51. Rachel asked the singer what she thought of Greer and said that the singer could hide his identity, implying he could say something nasty about Greer. She further mentioned she had other people lined up. The singer was caught off guard and asked Greer about it. Greer was petrified for the mere fact that he never released the singer's name. EXHIBIT Y. Greer confronted Rachel and she cited her First Amendment rights –but  stalking, defamation and harassment aren't covered under the First Amendment. The trolls on Moon's site, as does Moon, claim protection when there is none. Their "rights" have infringed upon Greer's right of privacy; his right to control his intellectual property; his right to expression without everything he says being put on the site.

52. This harassment has been scary for Greer, his family and his friends.

53. The trolls have skewed internet search results to display articles and statements that trash Greer. Some of these statements are things Greer said years ago and have apologized for. Some were said because he wasn't taking his anxiety medicine and is why he made the statements.

54. Greer is very hurt and very confused why this war of hate is being waged against him. Because he looks different? Because he thinks differently? Because he's been in situations that nobody has given him the chance to explain, thus why he wrote his book?

115.        ~~What is known is that~~ This claim essentially mirrors Count I, but is against Lolcow LLC.

116.        Lolcow LLC is owner/publisher of the Kiwi Farms site.

117.        Direct infringements have occurred on the Kiwi Farms site.

118.        Lolcow LLC's manager/CEO Joshua Moon has been made aware of the infringements.

119.        Moon chose to not remove the copyrights, but instead published the notices, materially contributing to the infringement.

120        Lolcow LLC has also helped foster the reputation of Kiwi Farms by maintaining its attractiveness to infringers.

121.        Greer has suffered market and marketability harm as a result of the infringement.

~~121.~~122.    Greer seeks statutory damages ~~and that the harassment is stemming from Moon's site.~~ identical to those sought in Count 1.

~~55. Greer asks for this Court to find Moon liable for the harassment he made against Greer.~~

~~56. Greer further asks that CDA protection not be found for Moon and that he be held liable for his users' conduct.~~

~~57. This claim is not preempted by the infringement claims, as the harassment has been separate from infringing.~~

**COUNT III**

**~~FALSE LIGHT~~**

**DIRECT COPYRIGHT INFRINGEMENT AGAINST JOHN DOE #1 (MOSEPH JARTELLI)**

123.        Russell Greer realleges each and every allegation in paragraphs 1 through ~~138~~122 as if fully set forth herein.

58. To state a claim for false light, the Plaintiff must prove the following
elements: (1) giving publicity to a matter concerning another, (2) that places the
other in a false light, (3) the false light would be highly offensive to a reasonable
person, and (4) the defendant had knowledge or acted in reckless disregard to the
falsity of the publicized matter. *Russell v. Thompson Newspapers,* 842 P.2d
896,907 (Utah 1992).

140.    To state this claim fully, Greer will quickly explain the situation.

141.    During the summer of 2019, Greer met a girl and they became close
friends.

142.    The girl had many issues, some very concerning, but Greer stuck by her
because he has issues of his own and so he had empathy for her.

143.    In October of 2019, the girl randomly exploded on Greer and shamed him
with her religion. Greer had no idea what was going on. He had a panic attack and
tried reaching out to her to see what was wrong.

144.    Through the course of three months, Greer sent the girl very polite emails
asking if she was OK and some of these emails were misconstrued against him.

145.    In December 2019, the girl finally replied and told Greer to stop and so
he did.

146.    Greer reached out one last time in January 2020 to work things out. The
girl went to the police and a criminal summons for a Class B cyber harassment
misdemeanor was filed.

147.    Greer retained an attorney in March 2020, as that is when he learned of
the charge.

148.    A plea deal was made in June 2020 where Greer pled no contest and was
placed on unofficial probation. If he would have stayed out of trouble, the
conviction would have been dismissed.

149.    Two weeks later, the girl's lawyer filed a motion to reconsider the
judgement.

150.    A new hearing was granted. The girl gave a very one-sided,
misleading version of events. Greer wrote a note to his attorney during the
hearing that she was twisting the truth. Greer didn't have a chance to share his

peace. Because of her testimony, the judgment was set aside and the Court
wanted Greer to undergo a mental health evaluation.

151.    Greer was very fine with the mental health evaluation and the deal.
Greer contacted a mental health center and inquired of the costs on July 21si,
2020. Greer and his lawyer were fine with the costs and ready to present their
mental health plan to the judge. EXHIBIT Z.

152.    On August 4th, a day before the third hearing where Greer would have
made a no contest plea and accepted a mental health eval, Mr. Summers, the
prosecutor for Orem City, Utah, sent Greer's attorney an email stating that he
had learned new information about Greer (assuming a troll harassed the
prosecutor with slanderous information) and so he was throwing out the plea
deal and would make Greer accept a guilty plea with very extreme
conditions, not just a mental health evaluation.

153.    Greer has not yet obtained permission from the prosecutor to show the
email, as he isn't sure if it's a legally privileged communication, but Greer
will be happy to provide the email if this Court requires it.

154.    Greer was devastated when he saw the email. He was sad because he
was ready to accept the mental health evaluation and move on with his life.

155.    Greer was mad because Moon's users once again harassed somebody
connected to Greer.

156.    On August 5th, 2020, the third hearing was held and Greer's attorney
informed the judge that they would go to a jury trial because Greer could not
plead guilty with the added conditions.

157.    The trolls watched the web based hearing and took screenshots of it to
ruin Greer.

158.    These facts set the false light claim into two claims for false light.


**REFUSING MEDICATION**


159.    Because the trolls didn't see the prosecutor's email and because it wasn't
mentioned at the third hearing, they began recklessly and falsely saying that

Greer was refusing mental health treatment, thus portraying Greer in a false light and presenting Greer as the unstable character they have painted him as. There is a two page thread claiming Greer didn't want a mental health evaluation. Even on the day after the trial, on the "news" section of Kiwi Farms, it announced that Greer was going to a jury trial because he didn't want an evaluation. EXHIBIT A1.

160. On August 20th, Defendant Moon stated on the thread concerning Greer's third hearing that he was going to be going onto a random YouTube show and he asked for the "cliff notes" about the case. EXHIBIT A1.

161. Thus Moon is now personally liable for spreading false information about Greer by going onto a show.

162. Moon is liable because (1) he is giving publicity concerning Greer's court case, (2) he placed Greer in a false light by going onto a show and reiterated the above mentioned false set of information, (3) a reasonable person would find it highly offensive to be accused of not wanting mental treatment, when Greer did seek out and plan mental health treatment, and (4) Mr. Moon acted in reckless disregard to the falsity by relying on the "cliff notes", as Moon puts it.

## **"VICTIMS"**

124. ~~With it~~To establish a claim for copyright infringement, a plaintiff must show "ownership of a valid copyright" and "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

163. As established that Moon has interacted with the thread on Greer, on the first page about Greer, it states: "July 2020: Russell has a date... in court with one of his *victims.*" Exhibit A2.

164. Mr. Moon has surely seen the statement and has clearly interacted with the case by going onto a show to talk about the case.

165. This places Greer in a false light because while it is true that he is in a criminal court case, he does not have multiple victims, as the statement alleges.

There is only one victim who actually was a friend to Greer and their relationship soured, which led to the current state of events.[1]

166.   Mr. Moon has given publicity to this case and has said in the past that Greer stalks women.

167.   Kiwi Farms has misconstrued flirty, friendly, warm conversations as stalking, which is ironically said by a website that stalks people. Exhibit A4 contains some of Greer's so called "stalking behavior". In the exhibit, it is plainly seen that there is respectful conversation going on. There is no perversion; no harassment; no belittling.

168.   Greer has reached out to female celebrities to impress, which is normal for fans to do. But he has never stalked them, which would be showing up at their homes, following their movements, trespassing, etc. He's never done any of that. Greer is like any other young man: he flirts with women. Even older men do it. Some men are much more crude and disgusting than anything Greer has said. But to single out Greer's behavior is ignoring the millions of others who do the same thing and puts Greer in a false light that he has many victims.

169.   Mr. Moon has recklessly allowed for that statement to remain on the front page and has spread that Greer stalks women in the past. Greer can't find the exact page, as there are thousands, but he remembered Null talking about Greer on a thread. He could find it if it was satisfactory to this Court.

170.   This false light has caused a few people to cut off contact with Greer.

171.   These facts set forth a claim of false light against Defendant Moon.


## COUNT IV


## DEFAMATION


172.    Russell Greer realleges each and every allegation in paragraphs 1

---

[1] As this Complaint is written, the criminal case, Orem City v. Russell Greer, is still ongoing.

through 171  as if fully set forth herein.

173.    The elements of defamation are: 1) that the defendants ",  Greer has registered his song with the United States Copyright Office. 126. Moseph Jartelli published the statements"; (2) that the "statements were false, defamatory, and not subject to any privilege"; (3) "that the statements were published with the requisite degree of fault"; and (4) that "their publication resulted in damage" to the plaintiff. *West v. Thomson Newspapers,* 872 P.2d 999, 1007--08 (Utah 1994).

174.    Plaintiff uses the allegations from his false light claim to also claim defamation.

124.125.    Moon and his users published statements MP3 in its entirety onto Kiwi Farms and Moon took those statements and went onto a show and published them orally., telling users to "enjoy this repetitive turd" and allowing for anyone to download the MP3.

175.    The statements are false and defamatory because there are not multiple victims and Greer never refused any mental health treatment.

176.    Since Kiwi Farms views Greer as a limited public figure, for suing Swift and for advocating for prostitution, Greer needs to show actual malice, which is easily proven by the fact that Moon is going onto shows and spreading the false information. He's doing it to ruin Greer. There's no other reason he is ding it. That's why he runs his website. His site published the information maliciously. His site is malicious.

177.    As stated in his false light claims, Greer has suffered damages by losing friends. Dozens, if not many more, of people are spreading the false information, which ruins Greer's reputation.

178.    Other false statements have been made by Moon's users. As an example of such a statement: One was made by a Richard Springer of Australia on Good Reads. Many of Moon's users are international. Richard stated in his random troll review that Greer is schizophrenic, which is false. It is also telling that Richard created his account in November 2017: the date of Greer's book's release. Richard has harassed Greer on other platforms.

Exhibit A4.

179. There are thousands of pages on Greer on Kiwi Farms and it is impossible to sift through each page, but even the handle for Greer is defamatory.

*180. The handle identifier for Greer on the site lists him as "a sex-pest" and "Swift-obsessed". Greer is neither. The handle is defamatory because it implies that Greer is a sexual deviant and it intrudes on his sex life.[2] The Swift-obsessed statement is defamatory because it implies that he stalks Taylor Swift, which as explained earlier, he does not and has never stalked her.Exhibit A5*

127. 366 people in April 2019 viewed and downloaded the illegally uploaded MP3. That number has since grown.

128. As a result, Greer has lost profit due to the illegally uploaded MP3.

129. Each and every dime and dollar is important for small artists.

130. Greer seeks statutory damages of $30,000, per *17 U.S. 504 (C )(1)*.

131. Because Plaintiff can also prove willful infringement, he also seeks One Hundred and

Fifty Thousand Dollars ($150,000), under *17 U.S. 504 (C )(2)*.


## COUNT IV


## STATE LAW CIVIL-CONSPIRACY CLAIM AGAINST JOHN DOE #2 (RUSSTARD)


132. Russell Greer realleges each and every allegation in paragraphs 1 through 131 as if fully set forth herein.

133. The elements of a claim for civil conspiracy under Utah law are "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a

---

[2] Moon's users have managed to track down Greer's dating profiles and have uploaded them to Kiwi Farms. They have body-shamed him and his sex life. This shows the level of stalking and depravity his users go to.

meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 954-55 (Utah 2008).

134.     On April 15th, 2019, the user crudely named, "Russtard" instructed fellow Kiwi Farms users to upload Greer's song, "*I Don't Get You*," so that "no one accidentally gives Russell money."

135.     Fellow Kiwi Farms user Moseph Jartelli took up Russtard's urging of depriving Greer of money by in fact uploading Greer's copyrighted song and wrote, with a hint of evil delight,

"Enjoy this repetitive turd."

136     The plainly clear scheme, that was being publicly conspired to on the forum to be accomplished, was uploading Greer's song and depriving him of money.

137.     The users on Kiwi Farms ~~has ruined Greer's reputation, as shown~~in general, and ~~thus Defendant Moon should be liable for his own defamation~~the aforementioned two users in particular, share the same goal of tormenting their Lolcow targets.

138.     John Doe #5's mindset is quite clear, with the username he or she has chosen, because John Doe #5 clearly has contempt for Plaintiff..

139.     In carrying out the conspiracy, Russtard and ~~for his~~Moseph Jartelli sought to, and indeed did so, commit direct copyright infringement, *violating 17 U.S.C. § 501*, by uploading the MP3 and seeking to deprive Greer of money.

140.     Regarding damages: the 2019 screenshot evidencing this infringement shows that the Mp3 had been viewed 366 times. **EXHIBIT M.**

141.     If Greer had been selling the song for $4.99 on the CD Baby store, that was at least $1,826.34 Greer had lost out on earning (= $4.99 x 366).

142.     Since 2019, the views on the MP3 have grown and it's unknown where else the mp3 was uploaded.

143.     While $1,826 may not seem like a lot, small artists need every dime and dollar.

137.144.    The two users'. goals were accomplished by those 366 views (which has since grown) not giving Greer any money.

145.    The direct infringement incentivized users to *not* stream or purchase Greer's music because they had made it available on Kiwi Farms.

146.    Greer seeks $1,826 in actual damages, as that was the estimated loss in April of 2019, when the infringement was discovered.

147.    Under Utah Code 78B-8-201, Greer seeks punitive damages because the actions of

Russtard were willful and intentionally fraudulent.

148.    Greer seeks $50,000 in punitive damages.


**COUNT V**


~~**DEFAMATION BY IMPLICATION**~~


**STATE LAW CIVIL-CONSPIRACY CLAIM AGAINST JOHN DOE #1 (MOSEPH JARTELLI)**


149.    Russell Greer realleges each and every allegation in paragraphs 1 through 182148 as if fully set forth herein.

181.    Even if a statement is not defamatory, it can be defamatory by implication.

182.    In a defamation by implication action, "it is the implication arising from the statement and the context in which it was made, not the statement itself, which forms the basis of [the] claim." *Id.*

183.    Plaintiff incorporates the facts from the defamation claim and applies them here, on the chance they are found not to be defamatory.

184.    Implying that Greer has many victims and that he refused a mental health evaluation is indeed defamatory by implication, as they are false statements, which impeach his virtue and reputation and has exposed him to

~~public hatred and contempt.~~

~~185.    Greer asks for liability for the statements made by Moon and made by his users.~~

150.    The elements of a claim for civil conspiracy under Utah law are "(1) a combination of

two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pohl, Inc. of America v. Webelhuth*, 201 P.3d 944, 954-55 (Utah 2008).

151.    On April 15th, 2019, the user crudely named, "Russtard" instructed fellow Kiwi Farms users to upload Greer's song, "*I Don't Get You*," so that "no one accidentally gives Russell money."

152.    Fellow Kiwi Farms user Moseph Jartelli took up Russtard's urging of depriving Greer of money by in fact uploading Greer's copyrighted song and wrote, with a hint of evil delight, "Enjoy this repetitive turd."

153.    Moseph was replying to Russtard when he uploaded the Mp3, thus clearly acting with Russtard to deprive Greer of money.

154.    The plainly clear scheme, that was being publicly conspired to on the forum to be

accomplished, was uploading Greer's song and depriving him of money.

155.    The users on Kiwi Farms in general, and the aforementioned two users in particular, share the same goal of tormenting their Lolcow targets.

156.    In carrying out the conspiracy, Russtard and Moseph Jartelli sought to and indeed committed direct copyright infringement, violating 17 U.S.C. § 501, by uploading the MP3 and seeking to deprive Greer of money.

157.    Regarding damages: the 2019 screenshot evidencing this infringement shows that the Mp3 had been viewed 366 times. **EXHIBIT M.**

158.    If Greer had been selling the song for $4.99 on the CD Baby store, that was at least $1,826.34 Greer had lost out on earning (MP3 sales loss = $4.99 x 366 views, assuming each 366 view was a single person).

159.    Since 2019, the views on the MP3 have grown and it's unknown here else the mp3 was uploaded.

160.    While $1,826 may not seem like a lot, small artists need every dime and dollar.

161.    The two users' goals were accomplished by those 366 views (which has since grown) not giving Greer any money.

162.    The direct infringement incentivized users to **_not_** stream or purchase Greer's music.

163.    Greer seeks $1,826 in actual damages, as that was the number in 2019.

164.    Under Utah Code 78B-8-201, Greer seeks punitive damages because the actions of

Moseph Jartelli were willful and intentionally fraudulent.

165.    Greer seeks $50,000 in punitive damages.


## PRAYER FOR RELIEF


WHEREFORE, Russell Greer prays for judgement against Defendants:

166.    For statutory damages in an amount of $300,000 for contributory copyright infringement against Joshua Moon.

167.    For ~~Claims 11-V, Plaintiff requests $5,000~~statutory damages in an amount of $300,000 for ~~reputational~~contributory copyright infringement against Lolcow LLC.

~~167.~~168.    For punitive damages and ~~emotional~~actual damages against John Doe #1 in the amount of $51,826.

~~186.   For a preliminary injunction and a permanent injunction enjoining Defendants and their users, and all persons acting under, in concert with, or for them, from continuing to reproduce, distribute, display, disseminate, transmit, make available for download or otherwise use the copyrighted book and song in any manner whatsoever appropriating or in violation of Plaintiff's~~

copyrights. Greer requests immediate removal of his copyrighted material, which is: "Safari Ride", "Yo, Yovanna!", "I Don't Get You", "Julianne's Smile", "Why I Sued Taylor Swift."

187.   For a preliminary injunction that would temporarily freeze Kiwi Farms for the duration of this case. This injunction is requested because the users conspire and analyze each and every detail about Greer. Greer is nervous that the site as a whole or an individual on the site would retaliate against Greer for filing this lawsuit. This has been proven time and time again, as shown in this Complaint. Freezing the site would be in the best interest of both parties.

188.   Alternatively, if the requested preliminary injunction cannot be given, Plaintiff requests a permanent restraining order to have Mr. Moon delete each and every thread on Greer, including any wikis.

169.        For punitive damages and actual damages against John Doe #2 in the amount of $51,826.

189.   Attorneys' fees and costs, pursuant to 17 U.S.C. §§ 502-505;

168.170.   For a declaration that the Communications Decency Act does not protect Kiwi Farms or Defendant Moon.