**Matthew D. Hardin (*pro hac vice*)**
**HARDIN LAW OFFICE**
101 Rainbow Drive # 11506
Livingston, TX 77399
Telephone: (202) 802-1948
Email: MatthewDHardin@gmail.com
*Attorney for Defendants*
*Joshua Moon and Lolcow, LLC*

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL GREER, | **MEMORANDUM OF LAW PURSUANT TO ECF NO. 361** |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00421-DBB |
| JOSHUA MOON, *et al*. | District Judge David Barlow<br>Magistrate Judge Jared C. Bennett |
| Defendants. | |

NOW COME Defendants, Joshua Moon and Lolcow, LLC, by and through their undersigned counsel, and file this Memorandum pursuant to the Court's September 30, 2025 order. ECF No. 361.

I. **Introduction**

Mr. Greer has been sanctioned for two acts of misconduct. ECF No. 361. This Court's order of September 30, 2025, required Defendants to submit a memorandum "of no more than 10 pages addressing both the appropriate amount of attorney fees to be awarded and the factors for imposing attorney fees as a sanction under Rule 11(c)." ECF No. 361 at 12.[1] As set forth below and in the accompanying Declaration of undersigned

---

[1] The Court further specified that "Defendants' request for attorney fees must comport with Rule 11(c)(4), which permits the court to award only "*reasonable* attorney's fees . . . *directly resulting from the violation*." *Id*. at 11, n. 48.

counsel, Defendants seek $4,620, arising from 15.4 hours of attorney time expended correcting the material misrepresentations Mr. Greer filed with the Court.

## II.  Facts

To establish that the fees incurred directly resulted from Mr. Greer's Rule 11 violations, Defendants include here a brief recitation of what efforts they undertook to correct the record after Mr. Greer made materially false filings, and why such efforts were necessary to address Mr. Greer's sanctionable conduct.

### a) Mr. Greer Makes Materially False Statements.

On December 18, 2024, Mr. Greer accused undersigned defense counsel of violating this Court's Standard Protective Order. ECF No. 198.[2] That allegation was untrue and baseless. ECF No. 361 at 7-8. About six months earlier, on May 20, 2024, Mr. Greer filed a motion indicating that Steve Taylor was "eager" to testify in this matter *if it was retransferred to Utah*, but could not testify in Florida. ECF No. 123 at 15. Defendants only discovered that Steve Taylor was deceased, and that Mr. Greer's statement was made in reckless disregard for the truth and with no investigation at all, many months later. ECF 234-2, citing ECF No. 225 at 22. Therefore, a combined sanctions motion was filed relating to both materially false statements. ECF No. 234.

### b) The Defendants Correct the Record.

Defendants were forced to respond to Mr. Greer's sanctionable misconduct. First, they were forced to repeatedly litigate their counsel's ostensible failure to comply with this Court's standard protective order. Second, they were forced to investigate the

---

[2] Greer repeated this same allegation at ECF No. 204 at 2 and ECF No. 249.

whereabouts of Steve Taylor with an eye towards conducting his deposition. When they were unable to locate Steve Taylor, Defendants were forced to file motions which eventually resulted in Mr. Greer's confession that Steve Taylor was deceased.

### 1) Defendants' Respond to the SPO "Violation."

Defendants first reaction upon being accused of violating this Court's Standard Protective Order was to send Mr. Greer an email message politely inquiring as to what portion of the order they had ostensibly violated. ECF No. 208-1. Defendants' even indicated they would be happy to add that to the list of topics at an upcoming meet-and-confer. *Id*. Nine days later, having received no response to that inquiry, Defendants asked again. ECF No. 208-2. Greer responded two days after that second inquiry, saying he "never saw" the first inquiry, but again failing to address what specific provision of the order was ostensibly violated.[3] ECF No. 208-3. Defendants responded to Mr. Greer's allegations at ECF No. 208, filing their correspondence with Mr. Greer as exhibits. Over a month after Mr. Greer began accusing undersigned counsel of violating the Standard Protective Order, he finally asked the Court for a copy of that order. ECF No. 222.

Defendants served their Motion for Sanctions on January 29, 2025. ECF No. 234-1. But Mr. Greer did not withdraw his false allegations against undersigned counsel. On February 20, 2025, however, Plaintiff threatened to report undersigned counsel to the bar for discipline for filing that motion with the Court and pointing out that these allegations were false and entirely un-researched. ECF No. 239-1. Mr. Greer appears

---

[3] This later became a pattern for Mr. Greer. He also "never saw" this Court's order relating to sanctions, ECF No. 341, which the Court noted was inexcusable. ECF No. 352.

not to have followed through on that threat of a bar complaint,[4] despite that he reiterated more than once. ECF Nos. 287, 299 at 5. But Mr. Greer did file a motion for sanctions against undersigned counsel relating the same initial false premise that the protective order was violated. ECF No. 263.

The time spent on the aforementioned emails and ECF No. 208, as well as drafting the instant brief, is detailed in the accompanying Declaration of Counsel, and Defendants assert they are entitled to reimbursement.

### 2) *Defendants' Respond to the Deceased (but "Eager") Witness.*

Because Mr. Greer initially represented that Steve Taylor was "eager" to testify, ECF No. 123 at 15, but later (after motions practice and a round of sanctions relating to Mr. Greer's failure to make initial disclosures) failed to disclose Mr. Taylor as a witness, ECF No. 201 at ¶ 2, Defendants naturally sought to investigate what Mr. Taylor might have to say about this case and Mr. Greer's allegations.

Defendants initially did not have any reason to suspect that Steve Taylor was dead. And indeed, Mr. Greer hid the ball. Even after being put on notice that Defendants believed Mr. Greer had made materially false statements, Mr. Greer insisted Mr. Taylor was alive, but had only had a "falling out" with Mr. Greer, such that Mr. Greer had unilaterally decided Mr. Taylor need not be disclosed to Defendants. ECF No. 224-1. Defendants therefore filed a motion seeking an adverse inference relating to Mr. Taylor,

---

[4] Mr. Greer did, however, make a complaint to the Utah State Bar about former defense counsel Greg Skordas. ECF No. 31 at 1-2. And Mr. Greer is also seeking to disbar a Nevada lawyer named Jason Guinasso. ECF No. 239-2 at 3. Mr. Greer further said he was "getting the police involved" in response to undersigned counsel's legal advocacy, ECF No. 305-3, and stated he had filed a police report against undersigned counsel. ECF No. 303 at 2. Counsel is unsure why he is one of the few attorneys against whom Mr. Greer has not yet filed a bar complaint.

stating that whatever knowledge Mr. Taylor had was likely beneficial to the defense, because Mr. Greer would not disclose the substance of Mr. Taylor's knowledge and professed to have had a "falling out" with Mr. Taylor. ECF No. 224. Only when faced with the adverse inference motion did Mr. Greer at long last admit that Steve Taylor was dead, and had been *for over a year*. ECF No. 225 at 3.

Defendants withdrew their motion for an adverse inference, noting that it was no longer appropriate given Mr. Greer's shifting narratives. ECF No. 226. Defendants then filed a Motion for Sanctions, ECF No. 234, a Notice of Supplemental Authority, ECF No. 239, and a Reply Brief. ECF No. 252. A hearing was held on May 6, 2025. The time spent on these items, as well as drafting the instant brief, is detailed in the accompanying Declaration of Counsel, and Defendants assert they are entitled to reimbursement.

### III.   Standard of Review

Fed. R. Civ. P. 11 (c)(4) provides that "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." The rule expressly authorizes "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Time spent preparing a Rule 11 motion, and seeking attorney's fees related to violations of Rule 11, is compensable. *Quarrie v. Wells*, No. 17-350 MV/GBW, 2021 U.S. Dist. LEXIS 273215, at *5 (D.N.M. Apr. 7, 2021), citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998).

"When imposing attorney's fees as a sanction under Rule 11," a District Court should consider "(1) the reasonableness of the proposed fees, (2) the minimum amount required to deter misconduct, (3) the offender's ability to pay, and (4) 'other factors' as

the court sees fit, such as the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy." *King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018), citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 684-85 (10th Cir. 1990).

### IV.   Argument

The Court should award Defendants $4,620 in attorney's fees. All four of the *King* factors support an award that will fully compensate Defendants for their time expended as set forth herein.

#### a)  Defense counsel's fees are reasonable.

As set forth above and in the Declaration of Counsel which is attached hereto, all time for which Defendants seek compensation is time directly related to the Plaintiff's misconduct, which the court has already found was deserving of sanctions.

This Court has consistently found that rates of between $300-400 an hour are reasonable in the Utah market. *Active Energy Grp., PLC v. Scalzo*, No. 2:23-cv-00141-DBB-JCB, 2024 U.S. Dist. LEXIS 129694, at *9, n. 29 (D. Utah July 22, 2024) (collecting cases). Undersigned counsel is billing Defendants in this matter $300 per hour, which is at the low end of this Court's approved hourly rates. As explained at ECF No. 228-2, the $300 rate in this case is a considerable discount from counsel's ordinary rates.

#### b)  $4,620 is the minimum amount required to deter misconduct.

This Court has endorsed the proposition that deterring misconduct requires making a wrongdoer pay what they would otherwise expect to gain from their misconduct. *Fazzio v. Weber Cnty.*, No. 1:17-cv-132, 2019 U.S. Dist. LEXIS 126558, at *15 (D. Utah July 29, 2019) (if the sanctioned party "is unable to reap a monetary reward

from their sanctionable conduct, [they are] unlikely to engage in such sanctionable conduct in the future."). Here, Mr. Greer sought to bully Defendants into a "settlement" of claims he values at over $600,000, ECF No. 247 at 22, with the threat of bar complaints and accusations of all sorts of "unethical" behavior, to say nothing of Mr. Greer's tall tales about his eager (but deceased) witness. ECF No. 239-1. A very strong case could be made that $600,000 is therefore the proper award to Defendants in this case, but they are asking for far less. Defendants seek merely their costs incurred.

This Court previously awarded sanctions against Mr. Greer only in the amount of $1,000, notwithstanding that Defendants had incurred over $5,000 in costs. ECF No. 230, *contra.* ECF No. 228. Despite the Court giving Mr. Greer what can only be described as the deal of a lifetime, Mr. Greer refused to pay for months on end and continued to drive up Defendants costs. ECF Nos. 347, 352, 356. It is clear that Mr. Greer will not be deterred by reduced sanctions, because the Court has already tried that. Mr. Greer's response was to dig in his heels even more.

In order to serve as deterrence, any award under Rule 11 must also be *in addition to* the award that Defendants will ultimately be entitled to under the Copyright Act. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the U.S. Supreme Court expressly held that attorney's fees are available to a prevailing defendant in a copyright claim pursuant to 17 U.S.C. § 505, which "gives no hint that successful plaintiffs are to be treated differently than successful defendants." *Id*. at 522. When this case inevitably concludes with a final judgment in their favor, Defendants will seek reimbursement of all of their litigation costs and attorney's fees in their entirety.[5] It will not deter Mr. Greer's

---

[5] Greer himself seeks attorney's fees, citing the same statute, despite proceeding pro se. ECF No. 247 at 22, ¶ 170.

misconduct if he is faced only with payment of the same costs every unsuccessful copyright claimant must pay regardless of their conduct. Nor will it serve Rule 11's deterrence goals if Mr. Greer is sanctioned less for misconduct under Rule 11 than he is eventually forced to pay as a losing party under the ordinary application of the Copyright Act. Instead, Mr. Greer must be made to pay some amount *solely as a result of his Rule 11 violations*, even though he will likely also owe other amounts under other provisions of law. Otherwise, the Rule 11 violations will be rendered meaningless.

### c) Mr. Greer has an admitted ability to pay thousands of dollars.

The Court previously reduced Mr. Greer's sanctions in this matter by over 80%, in part because of Mr. Greer's "IFP status." ECF No. 230. But Mr. Greer's in forma pauperis status has been revoked, because Mr. Greer himself admitted in open court that he was able to pay the costs of this action. ECF No. 283 at 3. The Court later gave Mr. Greer extra time to pay another (increased) sanction because Mr. Greer claimed he needed extra time to gather money. ECF No 352. But Mr. Greer paid late anyway, ECF No. 356-2, and only after first trying to shake down the defendants for more than $100 that was not owed. ECF No. 356-3.

Defendants urge the court not to accept the false narrative that Mr. Greer is impoverished. Plaintiff's in forma pauperis status has been revoked. Defendants believe, as set forth at ECF Nos. 267, 285, 305, and 313, that Mr. Greer may even have obtained his initial in forma pauperis status by fraudulent means. Indeed, Mr. Greer recently told the Winnemucca, Nevada City Council that he has sufficient resources to buy a hotel and convert it into a brothel, ECF No. 337-4, and told the Nye County, Nevada Sheriff

that he had sufficient funds to purchase a disused brothel valued at over $1,000,000.[6] ECF No. 267-1. And Mr. Greer told this Court just two years before he started this copyright suit that he was spending over $14,000 a year on prostitutes. *Greer v. Herbert*, No. 2:16-cv-01067, 2018 U.S. Dist. LEXIS 78323, at *3 n.11 (D. Utah May 8, 2018).[7]

Defendants seek less than Mr. Greer spends annually on prostitutes, and far less than Mr. Greer professes he is able to spend to establish his own brothel in rural Nevada. Defendants therefore can only assume Mr. Greer has the present ability to pay the requested sanctions. If Mr. Greer asserts otherwise, Defendants request that they be permitted to cross-examine Mr. Greer and conduct appropriate discovery.

### d) Any "other factors" are aggravating, rather than mitigating.

The Tenth Circuit permits this court to consider various "other factors… such as the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy." *King*, 899 F.3d at 1155. None of these "other factors" counsel in favor of a reduced award.

This case involves the copyright to a book Mr. Greer wrote attempting to clear himself from the popular label that he is a vexatious litigant. Mr. Greer is hardly inexperienced or lacking in ability, despite that he is pro se. Indeed, the Plaintiff is a trained paralegal, and brags about his legal experience on the Internet and in his book. Mr. Greer previously sued Taylor Swift and Ariana Grande before turning his attention

---

[6] Mr. Greer later claimed he only sought to purchase an even more dilapidated brothel for between $50,000 and 100,000. ECF No. 269. Either way, Mr. Greer has more than sufficient funds to pay $4,620.

[7] During the pendency of this litigation, Mr. Greer has publicly posted online "reviews" of various adult entertainment businesses, to include Nevada brothels. Defendants therefore respectfully submit that Mr. Greer has continued to spend substantial sums of money at these establishments, including quite recently.

to Joshua Moon and Lolcow, LLC. And the Salt Lake Justice Court sanctioned Mr. Greer for advancing frivolous theories, as Mr. Greer admitted in his own pleadings. ECF No. 31-2 (complaining that "Skordas was awarded attorney fees"). This to say nothing of the numerous "ex parte" matters Mr. Greer has brought against numerous individuals, ECF No. 327-1 (Las Vegas Justice Court matters), including Mr. Moon. ECF No. 362 (ruling, for the third time, that Mr. Greer must provide Mr. Moon a copy of a restraining order that allegedly exists in the Salt Lake Justice Court). Mr. Greer is a *very* experienced litigant.

Because Mr. Greer is not inexperienced or legally untrained, his misconduct in this matter can hardly be written off as the type that an ordinary pro se litigant might make. Instead, his misconduct indicates that Mr. Greer simply does not care what costs he inflicts on his legal opponents or the Court. Plaintiff has previously been sanctioned by both this Court and the Salt Lake Justice Court, which is an aggravating factor. This Court should therefore decline to reduce any award to the Defendants based on "other factors" because all relevant "other factors" aggravate rather than mitigate Mr. Greer's misconduct.

## V.　Conclusion

Defendants respectfully submit that this Court should order Mr. Greer to pay attorney's fees in the amount of $4,620.

DATED October 13, 2025

                                **HARDIN LAW OFFICE**

                                */s/ Matthew D. Hardin*
                                **Matthew D. Hardin**
                                *Attorney for Defendants*
                                *Joshua Moon and Lolcow, LLC*