FILED
2025 OCT 14 PM 6:54
CLERK
U.S. DISTRICT COURT

Russell Greer
1100 Dumont Blvd
Apt 139
Las Vegas, NV 89169
801-895-3501
russmark@gmail.com
Pro Se Litigant

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL GREER** <br><br> Plaintiff <br><br> v. <br><br> **JOSHUA MOON ET AL**, <br><br> Defendants | **PLAINTIFF'S RULE 72 OBJECTION TO MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER ON RULE 11 (ECF No. 361)** <br><br> Case No.:   2:24-cv-00421-DBB-JCB |

1

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff objects to the Magistrate Judge's September 30, 2025 Memorandum Decision and Order (ECF No. 361) granting Defendants' first Rule 11 motion.

The ruling is clearly erroneous and contrary to law because (1) it sanctions a protected, good-faith opinion expressed in a court filing, (2) disregards the litigation privilege recognized by Utah and federal precedent, and (3) applies Rule 11 in a one-sided, arbitrary manner while excusing comparable misconduct by defense counsel.

If any sanction is sustained, it should be limited to a nominal admonition consistent with the "minimum-deterrence" principle of Rule 11(c)(4).

## I. FACTUAL BACKGROUND

1. Plaintiff filed a notice in January 2025, asserting that defense counsel Matthew D. Hardin violated the Court's Standard Protective Order ("SPO") by publicly filing the names and telephone numbers of two confidential witnesses without redaction.

2. A day after that disclosure of Hardin's, users of the Kiwi Farms website employed the same information to harass Plaintiff.

3. In a 2024 pleading, Plaintiff described witness Steve Taylor as "eager" to testify, based on a 2021 conversation in which Taylor expressly agreed to serve as a witness.

4. Plaintiff later learned that Taylor had passed away; no misrepresentation was intended. It was honestly an innocent misstatement.

5. In May 2025, Defense counsel subsequently undertook what he termed an "investigation," contacting municipal officials and private individuals to label Plaintiff a "fraud" and to publicize expired restraining-order information, completely unrelated to this case.

2

6. Plaintiff filed two motions regarding that conduct. No ruling has been issued regarding that conduct, yet Plaintiff was penalized.

## II. STANDARD OF REVIEW

A magistrate judge's non-dispositive order may be set aside if it is "clearly erroneous or contrary to law." *Fed. R. Civ. P. 72(a)*. *Rule 11* sanctions must be supported by an objectively unreasonable filing and must be limited to what suffices to deter repetition, taking into account good faith, financial condition, and—where applicable—the litigant's pro se status. *Collins v. Daniels*, 916 F.3d 1302 (10th Cir. 2019).

## III. ARGUMENT

### A. Plaintiff's statements regarding the SPO and Steve Taylor were, at most, innocent errors.

The sanction order rests on two statements: (1) Plaintiff's assertion that defense counsel violated the Standard Protective Order ("SPO") by publishing un-redacted witness information, and (2) a reference in a venue-transfer motion describing witness Steve Taylor as "eager to testify."

The first statement was an *opinion based on observable facts*—defense counsel's filing that included the names and telephone numbers of two witnesses. That opinion was a reasonable inference drawn from the record and cannot be equated with a knowingly false claim. *Rule 11* does not penalize opinions or legal arguments reasonably grounded in the available facts. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

The second statement concerning Mr. Taylor was, at most, *poorly worded.* When the motion was written, Plaintiff had no notice of Mr. Taylor's passing and was merely listing individuals who had previously agreed to provide testimony. The wording "eager to testify" reflected that past willingness; it was not intended to imply current contact or an updated confirmation. Courts in the Tenth Circuit emphasize that Rule 11 is not a strict-liability rule and should not punish

3

honest or reasonable mistakes**.** In *Burkhart v. Kinsley Bank*, 804 F.2d 588 (10th Cir. 1986), the court explained that sanctions turn on objective reasonableness and the signer's "state of … knowledge" at the time of filing. Similarly, *White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990), held that a reasonable pre-filing inquiry and good-faith belief are enough to avoid sanctions. Rule 11 simply does not reach inadvertent or imprecise phrasing made in good faith.

Defendants may argue that Plaintiff should have reconfirmed Mr. Taylor's availability before mentioning his prior willingness to testify. Rule 11, however, does not impose a duty of continual re-verification of every historical witness statement, particularly where there was no indication that the witness wished to withdraw. At the time of filing, Plaintiff had no reason to believe Mr. Taylor's status had changed. A later falling-out or the witness's death—events that occurred without notice to Plaintiff—cannot retroactively transform an honestly held representation into sanctionable conduct. As the 10th Circuit explained in *White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990), sanctions should not be applied in a "draconian" manner that "chills legitimate advocacy." Rule 11 requires reasonableness, not perfection; it is aimed at deterring baseless filings, not punishing good-faith errors or imprecise wording made on a reasonable factual understanding.

Under these precedents, the record does not support a finding of objective unreasonableness. The statements were neither false nor reckless, but the product of a reasonable inquiry given the information available at the time**.** To punish them would extend Rule 11 far beyond its deterrent purpose and into the realm of draconian rulings —a result the Tenth Circuit has expressly rejected.

**B. Litigation privilege bars sanctions for statements made in pleadings.**

Utah's litigation privilege is both well-established and broad. In *Krouse v. Bower*, 2001 UT 28, ¶¶ 8–10, 20 P.3d 895 (UT 2001), the Utah Supreme Court reaffirmed that "judges, jurors,

witnesses, litigants, and counsel involved in a judicial proceeding have an absolute privilege against suits alleging defamation." The Court adopted the three-part test first set out in *Allen v. Ortez*, 802 P.2d 1307 (Utah 1990) and *Price v. Armour*, 949 P.2d 1251 (Utah 1997): a statement is privileged when it (1) is made during or in the course of a judicial proceeding (a term interpreted broadly to include communications preliminary to litigation); (2) has some reference or relation to the subject matter of the proceeding; and (3) is made by a participant acting in that capacity—judge, juror, witness, litigant, or counsel. *Krouse*, ¶ 8 (citing *DeBry v. Godbe*, 1999 UT 111, 992 P.2d 979).

The policy underlying the privilege is clear: "The privilege is premised on the assumption that the judicial system requires free and open expression" *Id.* ¶ 10 (quoting *Ortez*, 802 P.2d at 1311). The Utah Supreme Court held that the privilege must be interpreted *broadly* to ensure "candid and honest communication … in order to resolve disputes" both before and during litigation. *Id.*

The statements at issue here—Plaintiff's opinion that defense counsel violated the Standard Protective Order and the reference to witness Steve Taylor's earlier willingness to testify—were made *in pleadings filed with the Court*, by a party acting in that capacity, and directly concerned discovery and witness issues. They thus meet all three elements of the *Krouse* test: they were (1) made in the course of this judicial proceeding, (2) directly related to its subject matter, and (3) made by a litigant.

Sanctioning statements covered by this privilege would invert its purpose—punishing the very candor the doctrine exists to foster. Applying Rule 11 to privileged statements would therefore *chill participation*, particularly for pro se litigants like plaintiff, whose ability to "

Plaintiff's sanctioned statements—made in motions, grounded in case issues, and clearly within the scope of judicial privilege—cannot serve as a lawful basis for sanctions.

**C. Rule 11 cannot constitutionally punish protected petitioning speech.**

5

The First Amendment guarantees the right "to petition the Government for a redress of grievances." U.S. Const. Amend. I. Litigation is a core form of that petitioning. The Supreme Court has long recognized that access to courts and the filing of lawsuits are protected expressive and petitioning activities. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 525 (2002) (holding that even unsuccessful litigation is constitutionally protected so long as it is not a "sham").

In the present case, Plaintiff's statement that Mr. Hardin appeared to violate the Standard Protective Order was an opinion grounded in record facts, expressed within a pleading. Sanctioning that expression converts Rule 11 into punishing the very form of petitioning that the Constitution protects. As the Supreme Court explained, "These freedoms are delicate and vulnerable, as well as supremely precious in our society; the threat of sanctions may deter their exercise almost as potently as the actual application." *NAACP v. Button*, 371 U.S. 415, 433 (1963).

Rule 11 must be construed in harmony with the First Amendment to avoid chilling legitimate, good-faith advocacy. The Constitution forbids penalizing litigants—especially self-represented ones—for expressing factual or interpretive opinions in the course of petitioning the judiciary for relief.

**D. Unequal enforcement of Rule 11 renders the order arbitrary.**

While Plaintiff faces sanctions for an opinion expressed in a pleading, Mr. Hardin's own conduct has gone unchecked. On October 14th, 2025 (the date of this writing), Hardin sent discovery correspondence **copying Plaintiff's father—one of the witnesses whose personal information counsel had previously published online.** Plaintiff's father is a private individual, not a party to this case, and has no role in discovery or litigation. Including him on case

correspondence served no legitimate legal purpose and, given the prior publication of witness data that subjected Plaintiff and his family to harassment, this communication appeared calculated to intimidate Plaintiff.

This incident is not isolated. It follows earlier "investigations," inflammatory character attacks, and public dissemination of sensitive information—all of which the Court has declined to address. Yet the same Court now imposes sanctions on a pro se litigant for expressing a fact-based opinion within two motions.

Rule 11's deterrent purpose is to preserve the integrity of the judicial process through equal and consistent application, not to enable one-sided punishment.  Selective enforcement erodes confidence in judicial neutrality and chills protected activity**.** If defendants' lawyer  may contact family members, publicize witness identities, and disparage the opposing party without consequence—while a self-represented litigant is sanctioned for a good-faith statement grounded in the record—the appearance of fairness is lost. Such asymmetry is **"***contrary to law***"** under Rule 72(a) because it undermines the uniform, objective standard of reasonableness that governs all participants equally.

**F. Comparable advocacy has not drawn sanctions in other federal or regional courts.**

The selective nature of the present sanction is further underscored by how other courts—both in Utah and across the Tenth Circuit—have declined to punish far more forceful conduct when undertaken in good faith. Rule 11 is reserved for clear abuses, not for debatable or unpopular positions advanced in the course of legitimate litigation.

For example, in *Predator International, Inc. v. Gamo Outdoor USA, Inc.*, No. 14-1354 (10th Cir. 2015),  the Tenth Circuit reversed a sanctions order where the district court had treated an attorney's tactical filings as "unwarranted." The 10th  Circuit emphasized that Rule 11 is to be applied with objective reasonableness and that the attorney's filing was not unwarranted. Likewise, it was not unwarranted for a pro se litigant to say that publishing witness info was

violating the SPO. It was also not unwarranted to think a prior witness was still alive and list him as eager.

The Utah Supreme Court has repeatedly vacated sanctions imposed on parties who pursued debatable or controversial claims. In *Innosys v. Mercer*, 2015 UT 80, ¶ 36, 364 P.3d 1013 (UT 2015), the court held a "party should-not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his….relief may have been improper." Likewise, plaintiff should not be sanctioned just because what he said was improper or not aligned directly with legal precedent.

In *Barnard v. Utah State Bar*, 857 P.2d 917 (Utah 1993), the court affirmed dismissal of the action but reversed the trial court's imposition of Rule 11 penalties, explaining Rule 11 does not require perfect research, but rather research that is "objectively reasonable under all the circumstances." It was objectively reasonable for plaintiff to have believed Hardin violated the SPO and that Steve was still living. Receiving no reply from someone doesn't mean they're dead and Steve was in his 50s. Plaintiff had no reason to believe he was no longer alive.

These cases confirm that courts within this circuit regularly tolerate vigorous, creative, and even mistaken advocacy when it is *objectively reasonable*. The same principle should apply here. If Utah's highest court declines to sanction attorneys who file debatable constitutional or statutory challenges, and if the Tenth Circuit cautions that sanctions are to be imposed "with restraint," then penalizing a single pro se litigant for expressing a factual, good-faith opinion about opposing counsel's conduct or that a once living witness was eager is inconsistent and arbitrary.

Rule 11 must be applied uniformly and without viewpoint discrimination, ensuring that self-represented litigants receive the same latitude for honest advocacy that licensed counsel receive in other jurisdictions. Anything less converts Rule 11 from a standard of reasonableness into a mechanism of selective punishment—precisely what the Constitution and the rule itself forbid.

**E. Even if a technical violation existed, significant fees are unwarranted.**

The Magistrate Judge correctly declined dismissal but erred in ordering fee shifting. Rule 11(c)(4) restricts sanctions to the minimum necessary to deter. The Court already found no bad faith, no meaningful interference with the judicial process, and no prejudice to Defendants. Under those findings, deterrence is achieved by the decision itself. If any monetary sanction remains, it should be nominal.

## IV. RELIEF REQUESTED

Plaintiff respectfully requests that the District Judge:

1. Set aside the Magistrate Judge's Rule 11(b) findings and vacate the sanctions order;
2. Alternatively, modify the order to a non-monetary admonition or a nominal amount not exceeding $250; and
3. Recognize and preserve the constitutional, litigation-privilege, and due-process issues for potential appellate review.

## V. CONCLUSION

Rule 11 was not intended to penalize a litigant for expressing an evidence-based opinion within a judicial filing. The sanction order conflicts with established privilege, free-speech, and fairness principles and should therefore be vacated or reduced to a purely nominal measure.

Respectfully submitted,

Russell Greer

/rgreer/

10-14-25

**CERTIFICATE OF SERVICE:**

Pursuant to FRCP 5(b), I certify that on 10-14-25, I served a true and correct copy of the attached document by email to all attorneys on record.