Russell Greer
1100 Dumont Blvd
Apt 139
Las Vegas, NV 89169
801-895-3501
russmark@gmail.com
Pro Se Litigant

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL GREER**<br><br>Plaintiff<br><br>v.<br><br>**JOSHUA MOON ET AL,**<br><br>Defendants | **PLAINTIFF'S RULE 60(b)(1) MOTION TO RECONSIDER OR AMEND OCTOBER 31 2025 ORDER**<br><br>Case No.:   2:24-cv-00421-DBB-JCB |

# INTRODUCTION

Plaintiff respectfully moves the Court, pursuant to Fed. R. Civ. P. 60(b)(1) to reconsider or amend its October 31 2025 Order (ECF 376) to correct a factual error that materially affected the finding of a Rule 11(b) violation.

The Court's order states that Plaintiff "had not read and did not know the contents of the [Standard Protective Order]." ECF 376, P. 2. That statement is demonstrably incorrect.

## FRCP Rule 60(b)(1)

FRCP Rule 60(b)(1) reads, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

## THE FACTUAL BASIS FOR CORRECTION — SPO

Plaintiff respectfully identifies the following facts that directly contradict the Court's finding that Plaintiff "had not read and did not know the contents of the [Standard Protective Order]," ECF 376 at 2:

1. On March 28, 2025, Plaintiff filed a Rule 37(b) Motion for Sanctions Against Defense Counsel Matthew Hardin. That motion directly quoted and analyzed both the *pre-* and *post-* December 2023 versions of the District of Utah's Standard Protective Order. Plaintiff even included hyperlinks to both official versions hosted on the Court's website. (See Exhibit A.)

2. The motion expressly stated:

   *"The link that this Court provided Greer to the SPO does not work. There are two competing SPOs … Either SPO will find that Defendants violated it."*

   This statement alone reflects Plaintiff's direct engagement with the SPO language and

highlights his awareness of procedural ambiguity caused by the transition between SPO versions.

3. These facts show that Plaintiff did, in fact, review the SPO—both versions—conducted an independent analysis, and formed a reasoned legal opinion about the applicability of each. Far from being uninformed or reckless, Plaintiff's position was grounded in a diligent, good-faith effort to apply the SPO as he understood it.

4. The sanction ruling incorrectly assumed Plaintiff acted without inquiry, when the record proves otherwise.

5. Because the Court's finding rests on an inaccurate factual finding, it is requested that the 10-31-25 Order be reconsidered or amended to find that Plaintiff shouldn't be sanctioned on this issue.

**PLAINTIFF SHOULDN'T BE SANCTIONED FOR THE STEVE COMMENT**

The Court's order also relied on a second, equally mistaken finding—that Plaintiff made a false or sanctionable statement by asserting that his once-proposed witness "Steve is still eager to testify." Persuasive case law shows why this shouldn't be a sanctionable statement.

In *L-3 Communications Corp. v. Sony Corp*., C.A. 10-734 (D. Del. Oct. 23, 2013), the court confronted an eerily similar situation where a party mistakenly believed a critical witness (an inventor) was deceased. That error stemmed from repeated confirmations by internal HR departments, and counsel relied on the information in making formal representations to the court. The truth only came to light shortly before trial, when the "deceased" inventor was discovered to be "not only alive, but also willing ('indeed eager') to testify."

In *L-3*, the court did not impose sanctions—it simply excluded the witness's testimony as a remedial measure under the *Pennypack* factors, citing concerns about fairness and trial disruption. *Throwback Thursday to an Undead Inventor. IPDE.com.* (2023). (https://ipde.com/blog/2023/05/24/throwback-thursday-to-an-undead-inventor/).

If a sophisticated litigant in a patent case can rely on secondhand information about a witness's death without sanction, a pro se plaintiff referencing a once-willing witness in passing should not face punitive consequences, especially where there was no prejudice, discovery violation, or reliance by the Court or Defendants.

To the extent the Court found Plaintiff's reference to Steve "eager to testify" sanctionable under Rule 11, Plaintiff respectfully submits that such a finding is unsupported by case law and inconsistent with the leniency afforded to pro se parties acting in subjective good faith.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

**(a)** Acknowledge that the record—including Plaintiff's March 28, 2025 filing—demonstrates he reviewed and relied on both versions of the District's Standard Protective Order, and that his legal position was based on a good-faith reading of the applicable SPO;

**(b)** Clarify that Plaintiff's statement regarding the willingness of witness "Steve" was not made in bad faith, did not violate any duty under Rule 11(b), and—at most—warrants the limited remedy of exclusion rather than punitive sanction, consistent with analogous case law;

**(c)** Vacate or amend the October 31, 2025 Rule 11(b) finding to reflect these corrections, or, in the alternative, direct that any further sanctions proceedings be limited to consideration of the corrected factual record; **and**

**(d)** Grant such other relief as the Court deems just and proper.

## CONCLUSION

Plaintiff acted in good faith, made a reasonable inquiry under the circumstances, and

committed no conduct warranting sanction. Reconsideration is necessary to ensure the Court's

decisions rest on an accurate record and consistent application of Rule 11.

Respectfully submitted,

Russell Greer

/rgreer/

11-03-25

**<u>CERTIFICATE OF SERVICE:</u>**

Pursuant to FRCP 5(b), I certify that on 11-03-25, I served a true and correct copy of the attached document by ECF to all attorneys on record.

**EXHIBIT A**

Russell Greer
1100 Dumont Blvd
Apt 139
Las Vegas, NV 89169
801-895-3501
russmark@gmail.com
Pro Se Litigant

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL GREER**<br><br>     Plaintiff<br><br>v.<br><br>**JOSHUA MOON ET AL,**<br><br>     Defendants | **PLAINTIFF'S FRCP RULE 37(b) MOTION FOR SANCTIONS AGAINST DEFENDANTS' ATTORNEY MATTHEW D. HARDIN**<br><br>     Case No.:    2:24-cv-00421-DBB-JCB |

Pursuant to DuCivR 1-2 and FRCP Rule 37(b), Plaintiff Russell Greer comes now and says.

## INTRODUCTION

On 11-19-24, a standard discovery protective order (SPO) was entered in this case. Although a copy had never been given to plaintiff, it was explained that such a protective order would streamline the discovery process and that confidential information would be protected.

Defendants' attorney has twice published private, unredacted information into the exhibits of this case. As a result, it caused a user of Moon's site to torment Greer with the information and it has left Greer worrying about the safety of his once-proposed witnesses.

Plaintiff has simply wanted to proceed on the merits of this case, but defendants are insistent on getting Greer sanctioned over every mistake. It only seems fair that since defendants are being so pro-active in pursuing sanctions, rather than actual merit, that they too also be sanctioned for their mistakes made by and through their licensed attorney Matthew Hardin.

For this motion to be understood, it is important to establish definitions.

## STANDARD PROTECTIVE ORDER (SPO)

A SPO was entered into this case on 11-18-24.

The link that this Court provided Greer to the SPO does not work. There are two competing SPOs: a pre-12-23 Order and a post 12-23 order for all cases filed after 12-2023.

There is a dilemma because this case has been terminated twice (transferred and retransferred) and so it's uncertain whether the pre-12-2023 SPO takes effect or the post-12-2023 order takes effect.

Either SPO will find that Defendants violated it.

### A. Pre-12/23 Order

It reads, "This Standard Protective Order shall govern…. any designated record of information produced in this action pursuant to required disclosures under any federal procedural

2

rule or local rule of the Court and any supplementary disclosures thereto."

https://www.utd.uscourts.gov/sites/utd/files/Standard%20Protective%20Order%20Cases%20Filed%20Before%2012-1-2023.pdf

On page 2, under definitions, "CONFIDENTIAL INFORMATION" applies to "any other PROTECTED INFORMATION the disclosure of which to non-qualified people subject to this Standard Protective Order the producing party reasonably and in good faith believes would likely cause harm."

On page 13, section 8, the SPO has a heading that reads: "INADVERTENT FAILURE TO DESIGNATE." It reads: "(a) In the event that a producing party inadvertently fails to designate any of its information pursuant to paragraph 4, it may later designate by notifying the receiving parties in writing. The receiving parties shall take reasonable steps to see that the information is thereafter treated in accordance with the designation. (B) It shall be understood however, that no person or party shall incur any liability hereunder with respect to disclosure that occurred prior to receipt of written notice of a belated designation."

### B. Post-12/23 Order

It reads. "The SPO applies to all designated information, documents, and other materials produced in this matter consistent with the disclosure or discovery duties created by the Federal Rules of Civil Procedure and the Local Rules of Practice."

https://www.utd.uscourts.gov/sites/utd/files/Standard%20Protective%20Order%20.pdf

The Post Order differs because unlike the pre-2023 SPO, it doesn't foreclose on the possibility of liability for belated designation.

Plaintiff believes liability can be found under either version of the SPO.

## FACTS

1.  A scheduling conference was held 11-18-24.

2.  At the conference, the Court verbally entered an SPO.

3. A copy of the SPO was never given to Plaintiff, however, he made a mental note that there was an SPO. Greer had clicked on the link the Court provided and it didn't work.

4. Greer was interested in the SPO because defendants run a website (Kiwi Farms) known for stalking people that they dub "Lolcows". The users consider anything and everything belonging to a Lolcow fair game.

5. Although there was an SPO verbally in place, Greer was still hesitant to hand over prospective witness contact information because attorney Matthew Hardin made "no promises with what we do with information." **EXHIBIT A.**

## <u>DECEMBER 17th, 2024 INADVERTENT DISCLOSURE OF PUBLIC INFORMATION</u>

6. When this Court ordered Greer on 12-9-24 to hand over the information, he did so, two hours after the deadline on 12-17-24.

7. Defendants were not harmed in any way, shape or form by a two hour late disclosure.

8. Greer gave the phone numbers and names of the witnesses to Mr. Hardin. Greer didn't provide addresses because he didn't know one of the addresses and because of relevancy.

9. Greer inadvertently gave the information to Mr. Hardin without writing "for attorneys' eyes only." Greer did not write this because he was never given a copy of the SPO and didn't know he had to use those words.

10. Greer thought there was a blanket SPO in place and thought ANY disclosure was private.

11. Mr. Hardin knew, ***however, based on 12-5-25 correspondence***, that Greer wanted the information ***kept private and confidential***. ***Why? Because the Kiwi Farms users have a documented history of stalking their targets.***

12.  Further, Defendants should have known based on Greer's response to the Defendants' Motion to Exclude that Greer feared the information being misused.

13. After receiving the information on 12-17-24, Hardin impulsively filed his usual notice to the court, claiming Greer wasn't complying. In the notice, Mr. Hardin did not redact the names of the witnesses nor their phone numbers. **EXHIBIT B.**

14. Since plaintiff didn't have the SPO, he didn't know to write "confidential information". Again, he assumed there was a blanket SPO in place where everything was understood to be CONFIDENTIAL, regardless of designation or not. And Mr. Hardin had received prior communication that the information was confidential.

15. It seemed as if Hardin had purposely not redacted the information.

16. Mr. Hardin is aware the kiwi farms audience monitors this docket and thus would have been aware they would have seen the unredacted filing.

17. Greer told Mr. Hardin, "You just violated the protective order by publishing the names [and the phone numbers] of the witnesses I told you and the court that I didn't want published." **EXHIBIT C.**

18. After receiving notice, Mr. Hardin made no attempt at removing his filing and re-uploading a redacted file.

19. A day after Mr. Hardin published the private information, a Kiwi Farms user contacted Greer and taunted Greer with the information, calling Greer a "big dummy". **EXHIBIT D.**

## DECEMBER 19th, 2024 DEFENDANTS' PURPOSEFUL DISCLOSURE OF CONFIDENTIAL INFORMATION

20. Mr. Hardin subpoenaed the once-proposed witnesses.

21. Mr. Hardin did not tell Greer that he sought to do this.

22. Greer told once-proposed witnesses to fight the subpoena.

23. Mr. Hardin, very impulsively, filed his usual notice with this Court and purposefully published the email addresses of the once-proposed witnesses.

**DECEMBER 30th, 2024 DISCLOSURE OF PRIVATE INFORMATION**

24. On December 30th , Mr. Hardin asked for an address so that he could send a check to plaintiff.

25. Greer gave a Wyoming address — not because he was living in Wyoming, but it was a safe place that Greer could receive mail, which would be forwarded to him. Greer lives in Las Vegas.

26. Greer did not write "for attorney's eyes only" because he was not aware he had to use those words. Again, plaintiff assumed there was a blanket SPO in place.

27. Apparently, Mr. Hardin had a problem with this honest answer and published the private address into his motion to extend time.

28. Once again, the private address was not redacted, although Hardin should have been well aware that the kiwi farms stalkers monitor the case filings. **EXHIBIT E**

29. On 1-3-25, Greer filed a response to ECF 211. In that response, Greer pointed out that Mr. Hardin published the private address.[1]

30. At no time after the Response was filed, did Mr. Hardin attempt to withdraw his filing.

**ALL 3 DISCLOSURES POSED A RISK OF HARM TO PLAINTIFF & HIS CONNECTIONS**

31. Because defendants are the "world's biggest community of stalkers," Greer has been super nervous with handing over information because of lived traumas with dealing with the KF website.

---

[1] Greer also believes he told Mr. Hardin it was a private address through email and that should have prompted Mr. Hardin to not publish the information. Greer, however, has a glitchy email and can't find his sent messages to Defendants from around that time.

32. Greer has been nervous that the KF users will harm his once-proposed witnesses,
    either electronically or physically.

33. Because Mr. Hardin disclosed and lied to this Court that Greer was living in
    Wyoming, which he's not, Greer has feared that kiwi farms users will attempt to go to
    the private Wyoming address and harm Greer's family

34. This is a real fear, as Joshua Moon's users have indeed been sending plaintiff death
    threats and Moon's users have a documented history of doing this to other "Lolcows",
    e.g. Patrick Tomlinson and others . **EXHIBIT F.**

## RULE 37(b) SANCTION STANDARDS

35. Whether under Federal Rule of Civil Procedure 37(b) (for violation of a discovery-
    related order), Federal Rule of Civil Procedure 16(f) (violation of a pretrial order), or
    its inherent powers, the court is authorized to exercise its discretion in determining
    whether to impose sanctions for violations of stipulated protective orders." *Crocs,
    Inc. v. Joybees, Inc.,* No. 121-CV-02859GPGSBP, 2023 WL 8851997, at *3 (D. Colo.
    Dec. 8, 2023). An appropriate sanction is "the least severe sanction adequate to deter
    and punish" misconduct. *White v. Gen. Motors Corp.,* 908 F.2d 675, 684 (10th Cir.
    1990); *see also Lawson v. Spirit AeroSystems, Inc.,* No. 18-1100-EFM-ADM, 2020
    WL 3475231, at *2 (D. Kan. June 25, 2020) (citing *White* in the context of what is an
    appropriate sanction for a violation of a protective order).

36. A finding of a violation doesn't have to be bad faith, it can also be inadvertent. *Smith
    & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 490 (5th Cir.
    2012) (holding that a district court has authority to impose sanctions for inadvertent
    violation of a protective order governing confidential material disclosed in
    discovery).

## DEFENDANTS VIOLATED EITHER VERSION OF THE SPO

7

37. As the facts and the exhibits show, Defendants' attorney was given prior notice that both the witness information was confidential and a private mailing address was confidential, yet Hardin published anyways.

38. When Mr. Hardin was given notice that he violated the SPO, Hardin made no effort of retracting the files and redacting them.

39. Whether Mr. Hardin deliberately or inadvertently published the information without redacting, it doesn't matter, as case law only requires the act of publishing as a violation, not the intent. *Id.*

40. *Pre-2023:* there was no belated designation because prior to sending both published information, and in the emails themselves, both stressed were confidential and private.

41. *Post-2023:* plaintiff may have accidentally omitted the words "attorney's eyes only," but he did afterwards inform Hardin that both were confidential and Hardin did not retract his filings.

42. Common sense dictated both were confidential, yet for some very bizarre reason, Hardin published both.

43. This is highly unethical.

44. This violation has put plaintiff in fear for his witnesses' and his family's lives because Kiwi Farms users have been sending him death threats and because KF users are documented to harass and stalk those connected to "Lolcows".

## REASONABLE EXPENSES

45. Fed. R. Civ. P. 37(b)(2)(C) requires an award of reasonable expenses, including attorneys' fees, caused by a failure to obey an order.

46. Plaintiff seeks a reasonable expense of $2,000 for the defendants' lawyer's violation of the SPO.

47. $2,000 is quantified as a deterrent to prevent future publications by Mr. Hardin,

48. Greer does not believe an admonishment would suffice in correcting Mr. Hardin's

behavior, as he has demonstrated that he is very impatient and publishes "notices"

willy nilly, even when they're not warranted.

## CONCLUSION

Plaintiff asks this court find that Mr. Hardin violated either version of the SPO under FRCP

37 and award reasonable fees.

Respectfully

DATED: 3-28-25

Russell Greer

/rgreer/

Pro Se

## CERTIFICATE OF SERVICE:

Pursuant to FRCP 5(b), I certify that on 3-28-25, I served a true and correct copy of the attached document by ECF to all attorneys on record.

**<u>EXHIBIT A</u>**



**Matthew Hardin**                              12/5/24
To: Russell Greer >

Thanks as always for your emails. I appreciate the quick confirmation of receipt.

In answer to your comment below, I refer you to my November 19 email in which I stated "I make absolutely no promises as to what we will do with any discoverable information other than that we will comply with the orders of the Court and the rules of the Court." That remains Defendants' position.

Best,

Matthew D. Hardin
**Hardin Law Office**

**EXHIBIT B**



US District Court Electronic Case Filing System

## District of Utah

**Notice of Electronic Filing**

The following transaction was entered by Hardin, Matthew on 12/17/2024 at 6:27 AM MST and filed on 12/17/2024

**Case Name:**         Greer v. Moon et al
**Case Number:**       2:24-cv-00421-DBB-JCB
**Filer:**             Lolcow LLC
                       Joshua Moon
**Document Number:** 194

**Docket Text:**
NOTICE of Supplemental Authority by Lolcow LLC, Joshua Moon re [193] Notice (Other),, (Attachments: # (1) Exhibit A (untimely email from Russell Greer), # (2) Exhibit B (Latest Prompt Written Communication per DUCivR 37-1 re: deficiencies in Mr. Greer's "Initial Disclosures")) (Hardin, Matthew)

2:24-cv-00421-DBB-JCB Notice has been electronically mailed to:

Matthew D. Hardin






**EXHIBIT C**



6:03

‹ Sent                                    ⌃  ⌄

From: **Russell Greer** ›
To: **Matthew Hardin** ›
Bcc: **Russell Greer** ›
December 17, 2024 at 5:35 AM

### Re: Witnesses

Mr. Hardin.

Stop with your frivolous notices, sir. You didn't even allow me to reply before you filed that notice.

Further, you just violated the protective order by publishing the names of the witnesses I told you and the court I didn't want published.

I am a pro se litigant doing my best trying to understand this. I am not being willful with anything. You are very pushy and jump to conclusions if I don't reply.

I was trying to provide everything to you the best that I can.

This isn't my full time job. So just simmer down, sir! I'm trying to get everything to

**EXHIBIT D**



3:42

‹ Sent

RG **Russell Greer**                12/4/24
To: Matthew & 1 more... ›

## Re: Rule 26 initial disclosures

Sir,

As demonstrated, your client publishes everything. Even with a protective order, I have no guarantee he won't publish it on his site, as he clearly doesnt care about the law. You have even published our email conversations on there, which has prompted his deranged, Neo Nazi users to harass me. So

I clearly said in the documents, there is nothing relevant at this time. I have images of the emails of his users harassing me and the countless Instagram accounts harassing me that post links to kiwi farms, but as you have pointed out to the judge, that has nothing to do with copyright infringement.

Thanks

**EXHIBIT E**



1:49

1 of 2

Case 2:24-cv-00421-DBB-JCB    Document 211-3    Filed

**From:** **Russell Greer** RussMark@gmail.com
**Subject:** Re: A check to Russell Greer has been returned
**Date:** December 31, 2024 at 8:09 AM
**To:** Matthew Hardin matthewdhardin@gmail.com

Good morning, sir.

Any checks can be sent to

Russell Greer
207 Broken Circle
Evanston, Wyoming 82930

I will have the amended pleading filed by 11:59 PM PST

Sent from my iPhone

On Dec 30, 2024, at 12:04 PM, Russell Greer <russmark@gmail.com> wrote:

Mr. Hardin.

Didn't the judge say at the November hearing that I would just be receiving email here

Sent from my iPhone

On Dec 30, 2024, at 10:52 AM, Matthew Hardin <matthewdhardin@gmail.com> w

Mr. Greer,

Please see below. This is the check I mailed to pay your appearance fee for the depo
therefore the fee was not due in any event. But the check was mailed the same day
at the Dumont Avenue address, because it was returned by the postal service. Is the
elect to pay you $225.25 as you have repeatedly demanded, to what address would

Best,

**Matthew D. Hardin**
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

Begin forwarded message:

**From:** "Bank of America" <alerts@paymentsinvoicing.bankofameric
**Subject: A check to Russell Greer has been returned**
**Date:** December 30, 2024 at 1:37:46 PM EST
**To:** "matthewdhardin@protonmail.com" <matthewdhardin@proton
**Reply-To:** "Bank of America" <alerts@paymentsinvoicing.bankofan

<bofa_lo1_rgb_Digital.png>

🔒 ecf.utd.uscourts.gov

**<u>EXHIBIT F</u>**



**BREAKING NEWS**

7.7 magnitude earthquake rocks Thailand and Myanmar; triggering collapse of Bangkok high-rise

*US NEWS*

# Writer 'swatted' 47 times over casual diss of Norm Macdonald in 2018: 'Trying to destroy my world'

By Jesse O'Neill

Published Feb. 19, 2024, 5:23 p.m. ET



Teen denied bond after alleged swat call





INTERNET

## Anti-trans stalkers at Kiwi Farms are chasing one victim around the world. Their list of targets is growing.

A trans streamer and a Republican congresswoman were targeted at their homes in the last month. Experts warn this is just the beginning.



Open in the NBC News app    ✕



AA    🔒 nbcnews.com    ✕