

**Matthew D. Hardin (*pro hac vice*)**
**HARDIN LAW OFFICE**
101 Rainbow Drive # 11506
Livingston, TX 77399
Telephone: (202) 802-1948
Email: MatthewDHardin@gmail.com
*Attorney for Defendants*
*Joshua Moon and Lolcow, LLC*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL GREER, | **DECLARATION OF NATALIE BANKS** |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00421-DBB |
| JOSHUA MOON, *et al*. | District Judge David Barlow<br>Magistrate Judge Jared C. Bennett |
| Defendants. | |

NOW COMES NATALIE BANKS, and declares as follows:

1.  I am an adult and competent to testify to the matters set forth herein based upon my personal knowledge, my correspondence with Mr. Greer, and my business records.

2.  I am publicly known as Natalie Banks. In this declaration, I do not disclose any other name by which I have been known, because I fear that my personal safety will be put at risk if Mr. Greer and others are able to locate my residential address and any other name by which I have been known.

3.  I am a sex worker and have been for over a decade. I was previously employed at various legal brothels in the State of Nevada. I recently left Nevada.

4.  I have reviewed the Defendants' Motion for me to proceed under a pseudonym at ECF No. 397. I have also reviewed Mr. Greer's response at ECF No. 399. The purpose of this Declaration is to rebut statements made in Mr. Greer's response.

5.  I believe that if my name and address is released publicly, I will be in danger of stalking and harassment from Russell Greer and possibly others. Although I have never hidden that I am a sex worker, I have always kept my name and residential address confidential from clients due to the nature of my work.

6.  Mr. Greer makes several untrue statements about me in his response to the motion to proceed under a pseudonym. Among these false statements are the following:

    a. Mr. Greer indicates that he engaged in "consensual, adult flirtation" with me. He did not. I never flirted with Mr. Greer. All of his advances were unwelcome and unusual, even in the context of communications with legal sex workers in Nevada.

    b. Mr. Greer says he made "no attempt to locate" me. That is not true. As set forth below and documented in emails at ECF No. 397-2, Mr. Greer attempted to locate me in both Battle Mountain and Amargosa Valley, NV. His present opposition appears to be premised, in large part, on Mr. Greer's demand that he be provided my residential address in Ohio. ECF No. 394. I do not want Mr. Greer to have my

residential address, and the only reason he would need it is if he was indeed trying to locate me again.

c. Mr. Greer asserts that I know nothing about his finances or employment. That is not true. I know about Mr. Greer's payments for prostitution because Mr. Greer told me in written communication what he paid. I also met an individual who expressly contacted me for the purpose of recruiting me to work in Mr. Greer's (non-existent) brothel. I have also received emails from Mr. Greer in various capacities, including his individual capacity, his capacity as a director of a PAC, and his capacity with Paralyzed Face Productions, which Mr. Greer indicates is an active production company based in Nevada.

d. Mr. Greer states that he blocked me from social media in 2025. This may or may not be true (I have no way of knowing), but it tells only a very small part of the story: I blocked Mr. Greer over a year earlier, and did nothing to encourage his continued communications via email and social media. Yet he persisted.

7. Based on my training and experience as a sex worker, it is my opinion that Mr. Greer presents uniquely elevated risk to myself and to other sex workers. Specifically, Mr. Greer refuses to take no for an answer. He will repeatedly send messages via email or social media, even though he receives no response or a negative response. He does not respect boundaries that must be maintained in our profession. He contacted me on one occasion specifically seeking to unmask a Jane Doe who was a sex worker engaged in litigation against a brothel at which I worked.

8. Based on my personal knowledge and experience at two Nevada brothels, the Desert Rose Club and the Calico Club, it is my understanding that Mr. Greer is not welcome at those establishments due to his inappropriate behaviors. It is my further understanding from colleagues that other Nevada brothels have similarly banned Mr. Greer from their premises due to inappropriate behavior.

9. Further, Mr. Greer has tracked me in my travels, and has been very open about making sure that I am aware that he does so. Specifically, I recently worked in two very small Nevada towns: Amargosa Valley, NV and Battle Mountain, NV. Both times, Mr. Greer made sure he knew where I was, and sent emails confirming his knowledge. He specifically said that he would be coming to Amargosa Valley, and that he intended to have sex with me there. His emails did not suggest that I was to have any choice in the matter. When he found out that I was in Battle Mountain, he sent me an email saying "You're in Battle Mountain? Wow. Stay safe." But I had not told Mr. Greer I was in Battle Mountain. Mr. Greer had no reason to know.

10. I have reviewed the audio recording of Mr. Greer's criminal sentencing in Utah in 2020. In that sentencing hearing, attorneys for Mr. Greer's victim indicated that Mr. Greer would not take no for an answer, and escalated his contacts with her repeatedly. This comports with my own experience with Mr. Greer. In that hearing, the prosecutor and the victim sought for Mr. Greer to undergo a psycho-sexual evaluation as a component of his sentencing. I am not aware of whether he ever did so.

11. I have also reviewed select portions of the book Mr. Greer wrote. In that book, Mr. Greer documents his inability to take no for an answer, and these same behaviors of targeting women who do not favorably respond to his demands for attention.

12. In addition to the restraining orders filed by Defendants, I am aware of a colleague who received a protective order against Mr. Greer that is not mentioned in Defendants' filing at ECF No. 397-1. While I do not wish to disclose the identity of that colleague in this declaration, because such disclosure might put her at risk, I am willing to provide further information to the Court *in camera* or *ex parte*. Specifically, I am aware that my colleague received a restraining order against Mr. Greer arising from his conduct at a Nevada brothel.

13. In my work, I rely in part upon online databases commonly employed by sex workers to verify or screen clients. These databases contain information from other sex workers and affiliated professionals, relating to known risks from particular clients or potential clients. These databases are searchable in various manners, including by telephone number and email.

14. I have queried the databases above and have found numerous reports from other sex workers indicating that Mr. Greer is dangerous.

   a. Using Mr. Greer's cell phone number affiliated with this case (801-895-3501), I found one report dated June 15, 2021, which indicates that Mr. Greer is a "sex pest" with an "e harassment conviction."

    b. Using another of Mr. Greer's phone numbers (385-214-4590), I found six reports, dating from December 21, 2020 through May 26, 2025. The most recent report says "Totally crazy, keep away. He's gonna hurt someone. Threatens[.]" A 2024 report says "Do not engage. Stalker. Dangerous predator behavior." Another 2024 report from a sex worker says that Mr. Greer has "a mental illness" and started using another number to contact a sex worker after being blocked from communicating with the first email and telephone number he used.

15. These online databases are known to me to be generally reliable, and they also comport with my personal experiences with Mr. Greer. For obvious reasons, I do not wish for Mr. Greer to utilize my name and residential address in light of documents indicating he is "gonna hurt someone" and exhibits "Dangerous predator behavior."

16. Based on the above, and my personal experiences with Mr. Greer, I am reasonably apprehensive that if he obtains my phone number or residential address, he will engage in electronic harassment or stalking, at a minimum. What's more, Mr. Greer may share that information with others. Sex workers such as myself take great care to ensure they are not easily targeted by violent individuals; my efforts to protect my identity and residence in this regard would be wiped out and I would be put at risk if my name and address are published.

17. I declare under penalty of perjury that the foregoing is true and correct. Executed on December 8, 2025

**/s/ Natalie Banks**
**Natalie Banks**