EXHIBIT

A

Las Vegas Justice Court
Electronically Filed
12/16/2025 9:59 AM
Charles A. Mapp, Sr.
CLERK OF THE COURT

1

**IN THE JUSTICE COURT OF LAS VEGAS TOWNSHIP**

2

**COUNTY OF CLARK, STATE OF NEVADA**

3

4

**Russell G Greer, Applicant** | **CASE NO.:    25PO2597**

5
vs.
**Matthew D Hardin, Adverse Party(s)** | **JC DEPARTMENT 10**

6

7
**ORDER DENYING REQUEST FOR AN ORDER AGAINST STALKING, AGGRAVATED STALKING, OR HARASSMENT**

8

9

10
    **IT IS HEREBY ORDERED** that the requested Order Against Stalking, Aggravated

11
Stalking or Harassment is ☒ **DENIED** for the following reason(s):

12
    ☒ The conduct alleged to have been committed by the Adverse Party(s), **Matthew D**

13
**Hardin**, does not fall within the definition of "stalking" or "aggravated stalking," pursuant to

14
NRS 200.575, or "harassment," pursuant to NRS 200.571.

15
    ☐ The application is incomplete because

16
    ☐ Other:

17

18
    **DATED** this 16th day of December, 2025.

19

20

21
NOREEN DEMONTE

Justice of the Peace

22

23

24

25

26

27

28

Las Vegas Justice Court
Electronically Filed
12/13/2025 4:16 AM
Charles A. Mapp, Sr.
CLERK OF THE COURT

☐ **DISTRICT COURT**
☒ **JUSTICE COURT IN THE TOWNSHIP OF** Las Vegas _____
_____ Clark _____ **COUNTY, NEVADA**

| | |
|---|---|
| Russell G Greer _____<br>Applicant (*print your name above*),<br><br>vs.<br><br>Matthew  D Hardin _____<br>Adverse Party (*print the name of the person you want*<br>*protection from above*). | CASE NO.:  25PO2597 _____<br>DEPT:   Department #: LVJC 10 _____ |

## APPLICATION FOR PROTECTION ORDER

1.  **Your information** (*you are the "Applicant"*).

    Your name:  Russell G Greer _____
    _____ *(first)* _____ *(middle)* _____ *(last)*

2.  **Who do you want to be protected from** (*this person is the "Adverse Party"*)?

    Name:  Matthew  D Hardin _____
    _____ *(first)* _____ *(middle)* _____ *(last)*

3.  **Who needs protection** (*check all that apply*)?

    ☒ Me.

    ☐ Minor child (see definition on bottom of page 2).

    ☐ The following household members, including minor children not included in definition
    on page 2.

| Name | Date of Birth | Relationship to Applicant | Relationship to Adverse Party |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Application for Protection Order

4.    **Why do you need to be protected from the person named above** (*you must check one*)?

☐ **The Adverse Party committed acts of stalking or aggravated stalking against me.**
*Definition of stalking, aggravated stalking and harassment*:

*Stalking*: A person commits the crime of stalking when, without lawful authority, that person willfully or maliciously engages in a course of conduct directed towards a victim that would cause a reasonable person under similar circumstances to feel terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member, and that actually causes the victim to feel terrorized, frightened, intimidated, harassed or fearful for his or her immediate safety or the immediate safety of a family or household member. NRS 200.575(1)

*Aggravated Stalking*: A person who commits the crime of stalking and in conjunction therewith threatens the person with the intent to cause the person to be placed in reasonable fear of death or substantial bodily. NRS 200.575(2)

*Harassment*: A person commits harassment when: (a) Without lawful authority, the person knowingly threatens: (1) To cause bodily injury in the future to the person threatened or to any other person; (2) To cause physical damage to the property of another person; (3) To subject the person threatened or any other person to physical confinement or restraint; or (4) To do any act which is intended to substantially harm the person threatened or any other person with respect to his or her physical or mental health or safety; **and** (b) The person by words or conduct places the person receiving the threat in reasonable fear that the threat will be carried out. NRS 200.571

☐ **The Adverse Party committed a sexual assault on me.**
*Definition of sexual assault*: A person commits sexual assault if they subject another person to sexual penetration, or forces another person to make a sexual penetration on himself or herself or another, or on a beast, against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his or her conduct. NRS 200.366

☐ **Protection of Children:** The parent or guardian of a child may petition any court of competent jurisdiction on behalf of the child for a temporary or extended order against a person who is 18 years of age or older and who the parent or guardian reasonably believes has committed or is committing a crime involving: (a) Physical or mental injury to the child of a nonaccidental nature; or (b) Sexual abuse or sexual exploitation of the child. NRS 33.400

**Are you applying on behalf of a minor child?** ☒ **No**    ☐ **Yes**

Child's name: _____
                         *(first)*                *(middle)*                *(last)*

*As you complete the application, please keep in mind that you are filling in the questions as they pertain to the actions/incident committed upon the child.*

5. **How do you know the person you need protection from** (*check all that apply*)?

☐ We are related by blood or marriage. Explain _____

☐ We are or used to be friends/acquaintances.

☐ We are neighbors or reside in the same neighborhood.

☐ We are or were co-workers.

☒ Other: (*specify relationship*): Opposing counsel _____

6. **Are there any other _current_ or _prior_ court cases that involve you _and_ the Adverse Party in any court?**

☐ No.

☒ Yes. If you know, please list the case type, county, state, and case number:
Federal copyright - 2:24-cv-00421 - Salt Lake County, UT

7. **Firearms / Guns.**
   **Does the Adverse Party own a gun or have a gun in his/her possession or control?**

☐ No   ☐ Yes   ☒ I don't know.

8. **Most Recent Event.** *Think about the **most recent** event. These questions ask about the most recent event only.*

Approximate date it happened: 12/2025 _____

City / State / Location where it happened: _____
Las Vegas  NV

Did the other person use or threaten to use a weapon?   ☒ No   ☐ Yes.

**What Happened?** *Explain the **most recent** event and describe any injuries. Give **specific** and **detailed** information about the event. **You can list past events on the next page**. If you are filing on behalf of a child, include details about what happened to the child.*

The respondent is an attorney, but the conduct described below was taken without lawful authority. Discovery in the underlying federal case was stayed, no subpoenas or court orders authorized third-party contact, and the conduct did not occur through court filings. Despite this, on December 8–12, 2025, the respondent escalated non-litigation conduct by sending accusatory emails, publishing a private Nevada resident's contact information, unilaterally declaring that person a 'witness,' and continuing criminal accusations after being asked to stop. This caused fear, distress, and interference with my personal relationships.

*Attach more pages if you need more room (pages 4a, 4b, 4c).*

9.  **Past Event(s).**

*Think about any other times the person you want protection from threatened or abused you and/or the child/children. The following questions ask about any past events that may have happened.*

Approximate Date: 05/2025

What Happened: _____

On May 21 and again on May 29, 2025, the respondent contacted W.H., a private Nevada resident with no involvement in the litigation, by email. In those communications, the respondent accused me of fraud and other misconduct and asserted that W.H. had been 'roped into' alleged wrongdoing. The respondent had no subpoena, court order, or discovery authorization to contact W.H. I asked the respondent to stop contacting people connected to me. He refused.

Approximate Date: 5/2025

What Happened: _____

On May 12, 2025, after seeing that I was present in Winnemucca, Nevada for lawful zoning and advocacy activity unrelated to copyright, the respondent submitted a Nevada Public Records Act request to Humboldt County officials about me. The request framed my lawful Nevada activities through stigmatizing and accusatory language and copied me directly. The respondent was opposing counsel in an unrelated federal copyright case, and my presence in Winnemucca had no relation to that litigation. This conduct caused distress and concern that the respondent was monitoring my movements and using government channels to target me personally.

10. **Law enforcement involvement.**

Was law enforcement informed?        ☒ No    ☐ Yes

a.  **If so, please provide a copy of the police/incident report.**

Was anyone arrested? ☐ No ☐ Yes (Who):_____

Is the Adverse Party in jail? ☒ No ☐ Yes

11. **Temporary Protections Requested (*check all that apply*).**

> ## *Do not list any confidential addresses.*
> ### *The other person will get a copy of this application and will see any addresses you write down.*

    ☒  **Prohibited Activities.** The Adverse Party should not threaten, physically injure, or harass me and/or the minor child, either directly or through someone acting on his/her behalf.

    ☐  **No Contact or Restricted Contact.** The Adverse Party should not contact me and/or the minor child at all, either in person, by phone / text, by email or through social media.

    ☒  **Current Residence.** The Adverse Party should stay away from my current residence.

        Do you and the Adverse Party live together?    ☒ No   ☐ Yes

        If yes, whose name is listed on the lease/title? _____

        Does the Adverse Party know where you live?   ☒ No   ☐ Yes

        If no, is your address confidential?     ☐ No   ☒ Yes *(don't list your address)*

        _____

        Address

        _____

        City, State, Zip Code        County

Do you and the Adverse Party live in the same complex/property/trailer park? ☐ No  ☐ Yes

    ☐ No.  Should the Adverse Party stay away from the entire complex/property/trailer park? ☐ No  ☐ Yes

    ☐ Yes.  If so, explain the distance and need for protection in that complex/property/trailer park:

    ☐  **Personal Belongings.**

        ☐  <u>I need to get my belongings.</u>  I want law enforcement to come with me to the Adverse Party's residence so I can pick up my belongings. The address I need to go to is (*list street address, apartment number, city, state, zip*):

        ☐  <u>The other party needs to get his/her belongings.</u>  Law enforcement should come with the Adverse Party to my residence to pick up his/her belongings.

☒ **Work.** The Adverse Party should stay away from my workplace.

Do you and the Adverse Party work at the same place?     ☒ No  ☐ Yes

Is your work address confidential?  ☐ No  ☒ Yes (*do not write details below*)

| | |
|---|---|
| _____ | _____ |
| Employer | Employer |
| _____ | _____ |
| Address | Address |
| _____ | _____ |
| City, State, Zip Code        County | City, State, Zip Code        County |

☐ **School/Daycare.** The Adverse Party should stay away from my school and/or the child's school/daycare.

Is the school/daycare address confidential? ☐ No  ☐ Yes (*do not write details below*)

| | |
|---|---|
| _____ | _____ |
| School/Daycare | School/Daycare |
| _____ | _____ |
| Address | Address |
| _____ | _____ |
| City, State, Zip Code        County | City, State, Zip Code        County |

☐ **Other Places.** The Adverse Party should stay away from the following places that I and/or the minor children go to regularly.

| | |
|---|---|
| _____ | _____ |
| Location | Location |
| _____ | _____ |
| Why? | Why? |
| _____ | _____ |
| Address | Address |
| _____ | _____ |
| City, State, Zip Code        County | City, State, Zip Code        County |

©2020 Nevada Supreme Court

Application for Protection Order

> **About Extended Protection Orders:**
>
> *This application automatically asks the judge to issue a 45-day temporary protection order*
>
> *<u>without notifying the other person first</u>.*
>
> **You can also ask for an extended order that could last for up to 2 years.**
>
> *If you do, the judge will set a hearing. <u>You and the other person will have to appear in court</u> and*
>
> *explain your side before the judge can extend the protection order.*

12.   **Length of Protection Order.**

☐   **I want an order up to 45 days only.**

☒   **I want an order up to 45 days PLUS an extended order that could last up to 2 years.**

13.   **Other Exhibits.** You may attach documents, pictures, or anything else that you would like the judge to look at and consider when reviewing your application. **The Adverse Party will receive a copy of all documents/evidence you provide.**
    **Describe what you are attaching:** _____
    Petitioner's supporting exhibits, including emails, public records request, and written communications referenced in the application.

14.   **This document does not contain the personal information of any person as defined by NRS 603A.040.**

**I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.**

Dated __12/13/2025_____  ____        Submitted by: __/s/ Russell G Greer_____
                                                                     (your signature)

                                                                     Russell G Greer
                                                                     (print your name)

## VERIFICATION

I declare that I am the applicant in the above-entitled action; that I have read the foregoing application and know the contents thereof; that the pleading is true of my own knowledge, except for those matters therein contained stated upon information and belief, and that as to those matters, I believe them to be true. I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Dated __12/13/2025_____         Submitted by: __/s/ Russell G Greer_____
                                                                     (your signature)

                                                                     Russell G Greer
                                                                     (print your name)

# DECLARATION IN SUPPORT OF REQUEST FOR PROTECTIVE ORDER (NRS 200.575, 200.581, 200.591)

I, **Russell Greer**, declare as follows:

I am a resident of Las Vegas, Nevada. I submit this declaration in support of my request for a Temporary Protective Order under **NRS 200.575** and **NRS 200.591**, based on a pattern of stalking, intimidation, and escalating harassment by **Matthew D. Hardin**, an attorney licensed in Virginia who represents Kiwi Farms in a copyright case pending in the District of Utah (Greer v. Moon, Case No. 2:24-cv-421). The conduct described herein **did not occur in court**, **did not occur through court filings**, and is **not protected litigation activity**.

Instead, it consists of repeated, malicious, and frightening intrusions into my personal life, my Nevada relationships, and my safety.

Mr. Hardin's actions were taken **without lawful authority** as defined by **NRS 200.575(11)(g)** and have caused me to feel intimidated, fearful, terrorized, and unsafe.

## I. LEGAL FRAMEWORK – NEVADA STALKING (NRS 200.575)

### A. Stalking – NRS 200.575

Under **NRS 200.575(1)**, a person commits the crime of stalking when, **without lawful authority**, they willfully or maliciously engage in a **course of conduct** directed at a victim that:

- would cause a reasonable person to feel **terrorized, frightened, intimidated, harassed, or fearful for their immediate safety**, **and**
- actually causes the victim to feel that way.

"Course of conduct" means **two or more acts**, over time, that show a **continuity of purpose** directed at the victim. NRS 200.575(11)(a).

### B. Where the offense is committed – NRS 200.581

Under **NRS 200.581**, stalking is deemed committed **where the victim is located** at the time the acts occur.
Although Mr. Hardin resides outside Nevada, the acts were directed **at me in Nevada**, and their effects were felt **here**.

### C. Protective orders – NRS 200.591

NRS 200.591(1) authorizes a court to issue a **temporary or extended order** directing an alleged stalker to:

1. Stay away from the victim's home, school, business, or other named locations;
2. Refrain from contacting, intimidating, threatening, or interfering with the victim or others;
3. Comply with any other restrictions necessary for safety.

The statute authorizes issuance of a **temporary order without notice** where necessary to prevent escalation.

Although Mr. Hardin represents defendants in a federal copyright matter pending in Utah, **the conduct giving rise to this petition is not legitimate litigation activity**. It consists of personal interference in my relationships, defamatory communications to Nevada residents and officials, targeted intimidation of non-parties, and misuse of government channels. These acts were committed **without lawful authority**, occurred or had their effect on me in Nevada, and fit the statutory definition of stalking.

## II. OVERVIEW OF RESPONDENT'S PATTERN OF STALKING AND NON-LITIGATION MISCONDUCT

Since May 2025 — and escalating dramatically in December 2025 — Mr. Hardin has engaged in a series of actions that:

- target my Nevada acquaintances,
- misrepresent my lawful Nevada advocacy through a federalized, defamatory lens,
- spread false statements about me,
- expose uninvolved third parties,
- encourage anonymous harassment,
- and cause me genuine fear for my safety.

Despite notifying the Utah federal court of this conduct, the court has taken **no action**, allowing the stalking to continue unchecked.

Discovery has been stayed since May 2025. Hardin has even admitted discovery is stayed.

During the same period in which discovery was stayed, I attempted to pursue formal discovery through subpoenas to two John Doe defendants. Those efforts were immediately challenged by Respondent's counsel, and the court clerk quashed the subpoenas on the basis that discovery was stayed.

Respondent was therefore fully aware that discovery — including third-party contact — was prohibited at that time. Despite this, Respondent engaged in repeated informal outreach to private Nevada residents, published their personal contact information, and unilaterally declared them "witnesses," all without subpoena, court authorization, or lawful process.

Further, at the time of the conduct described herein, the underlying federal litigation was procedurally postured such that Complainant had already filed an amended complaint limited solely to copyright claims, and Respondent's counsel had already filed a motion to dismiss. No

discovery had been authorized, no subpoenas had issued, and no court order permitted informal third-party investigations or extrajudicial contact with private Nevada residents.

Accordingly, Respondent's conduct cannot be justified as litigation activity. It occurred outside any permissible discovery framework, after Respondent's objections and motions had been fully asserted, and consisted instead of personal interference, intimidation, and reputational attacks unrelated to any pending procedural need.

### III. DATED COURSE OF CONDUCT CONSTITUTING STALKING

#### A. May 12, 2025 – A. Public Records Request to Winnemucca Officials Framed to Stigmatize and Shame

On May 12, 2025, after seeing online that I had traveled to Winnemucca for lawful zoning and land-use advocacy, Respondent Matthew D. Hardin submitted a public records request to Humboldt County officials pursuant to the Nevada Public Records Act. A copy of the request is attached as **Exhibit A.**

In that request, Respondent described me as a "prolific advocate for prostitution" and framed my lawful Nevada advocacy through a federal criminalized lens, implying wrongdoing and moral deviance, despite the fact that adult entertainment and licensed prostitution are lawful in Humboldt County and surrounding rural Nevada jurisdictions.

Respondent did not disclose that he was opposing counsel in an unrelated federal copyright case in Utah. Nor did he make a neutral or routine public-records inquiry. Instead, he affirmatively injected extraneous allegations, including references to:

- expired protective orders that I never contested based on poor legal advice and had already addressed in prior proceedings;
- a long-reduced misdemeanor that Utah now classifies as the equivalent of a Class C, traffic-level offense; and
- insinuations regarding my character and "behavior toward women," none of which were relevant to the records requested.

Respondent copied me directly on the request, which served no legitimate public-records purpose and instead functioned to shame, embarrass, and intimidate me by placing stigmatizing allegations into a government record directed at Nevada officials.

If Respondent's purpose were legitimate, he could have identified himself as opposing counsel in unrelated litigation and made a narrow request for documents. He did not do so. Instead, the phrasing, scope, and accusations in the request demonstrate an intent to harm my reputation, portray my lawful Nevada advocacy as criminal or dangerous, and interfere with my relationships with Nevada agencies and officials.

This conduct had no connection to copyright law, no connection to any authorized discovery, and no lawful purpose. It caused me significant fear and distress by signaling that Respondent was willing to misuse government processes to stigmatize and target me personally.

**B. May 21, 2025 – Targeted Email to W.H. Falsely Accusing Me of Fraud Following Public Records Request**

On May 21, 2025, Respondent Matthew D. Hardin emailed **W.H.**, a private Nevada resident with no involvement in the Utah copyright litigation, accusing me of committing "fraud on the court" and other serious federal misconduct. A copy of the relevant communications is attached as **Exhibit B.**

Respondent did not know W.H. prior to May 2025. He identified W.H. only after submitting the May 12, 2025 Nevada Public Records Request and using information obtained through that request to locate and target Nevada residents associated with my lawful activities. This demonstrates a continuation of the same pattern: using government processes as a **gateway to identify third parties**, then contacting them outside any authorized litigation framework.

The May 21 email was not a neutral inquiry, a subpoena, or a litigation notice. Instead, Respondent accused me of federal fraud based on **sealed filings he had no lawful access to**, speculated about my finances, and asserted criminal wrongdoing. He further claimed that W.H. had been "roped into" my alleged fraud and suggested that W.H. was now a "witness," despite the absence of any discovery authorization, subpoena, or court order.

Nothing about this communication resembles a legitimate litigation tactic. Discovery in the Utah case was stayed, and Respondent knew this. No court had authorized third-party contact. No subpoena was issued. No notice was provided identifying Respondent as opposing counsel seeking information for a lawful purpose. Instead, the email functioned as an **accusatory warning**, delivered directly to a private Nevada resident, designed to alarm, stigmatize, and isolate me by portraying me as criminal and deceptive.

The tone, content, and recipient of the email demonstrate that its purpose was not to obtain evidence, but to **intimidate and shame** by exporting Respondent's accusations into my Nevada relationships. The communication caused me immediate fear and distress because it showed Respondent was willing to pursue and involve uninvolved third parties using false criminal allegations, and that the conduct initiated through the public records request was escalating rather than stopping.

**C. May 29, 2025 – Second Targeted Email to W.H. Repeating False Allegations and Misrepresenting My Business Communication**

On May 29, 2025, Respondent Matthew D. Hardin sent a second unsolicited email to W.H., again accusing me of dishonesty and repeating fabricated allegations. In this message, Respondent falsely asserted that I had "exaggerated" my business communications with Nevada motel owner Roger Baylocq, and suggested that my dealings with Mr. Baylocq were misleading or improper.

These statements were objectively false. Prior to Respondent's May 29 email, Mr. Baylocq had expressly invited further communication and a business proposal from me. In written correspondence dated February 2025, Mr. Baylocq stated that he was interested in my proposal, requested additional information regarding my experience, and indicated his willingness to meet in person to discuss potential leasing or transactional arrangements related to his Winnemucca property. Copies of these communications are available upon request.

Respondent had no lawful basis to claim that I "exaggerated" these communications. Respondent again chose to export false character accusations into my Nevada relationships by repeating them to W.H., a private individual uninvolved in the litigation. Hardin was relying on Winnemucca City Council minutes, saying that I had lied because Mr. Baylocq had shown up at the hearing and denounced our communications. I was actually unaware this happened because I had walked out and since I had never met Baocq in person, I had no idea he was there. Mr. Hardin never bothered just asking me about this, instead of accusing me.

This second email followed directly on Respondent's May 21 communication accusing me of fraud, and it continued the same pattern: identifying private Nevada residents through the earlier public records request, then contacting them outside any permissible litigation process to portray me as deceitful, unstable, or criminal.

Nothing about the May 29 email served a legitimate litigation purpose. Discovery was stayed, no court authorization existed for third-party contact, and Respondent's accusations concerned business communications wholly unrelated to copyright law. The only plausible purpose of repeating these false statements was to damage my credibility, isolate me from Nevada business contacts, and reinforce the stigmatizing narrative Respondent had already begun disseminating.

This conduct caused me further fear and distress because it demonstrated that Respondent was not correcting course after his May 21 email, but was instead escalating his targeting of uninvolved third parties by compounding false accusations even after being aware they were untrue.

**D. December 4, 2025 – Defamatory Email CC'ing W.H. and Repeating Third-Party Gossip to Destroy Nevada Relationships**

On December 4, 2025, Respondent Matthew D. Hardin sent me an email accusing me of "committing fraud," "committing fraud with W.H.," and "luring women into the desert." Respondent copied W.H., a private Nevada resident with only brief prior contact with me, on this message.

The accusations in this email were false, baseless, and not grounded in any verified information. Respondent was repeating unsubstantiated gossip originating from a woman named Natalie Banks, whom I had blocked approximately seven months earlier. I had no ongoing contact with her, and none of the allegations she made were true.

Rather than verifying any information, Respondent chose to broadcast these accusations directly to a third party by copying W.H., despite W.H. having no involvement in the underlying

litigation and no role in any alleged conduct. This continued the same pattern established in May 2025: identifying or selecting Nevada residents and inserting defamatory accusations into my personal relationships.

Nothing about this email served a legitimate litigation purpose. Discovery was stayed, no witness list had been authorized, and Respondent had no lawful basis to accuse me of criminal conduct or to associate W.H. with such accusations.

By copying W.H. on an email containing sensational accusations such as "luring women into the desert," Respondent acted in a manner calculated to shock, alarm, and stigmatize me, and to destroy my credibility and relationships in Nevada. The phrasing was inflammatory, not investigative, and was clearly designed to provoke fear and reputational harm rather than to obtain information.

This email caused me immediate fear and distress. It demonstrated that Respondent was willing to repeat and amplify false third-party gossip, escalate the severity of his accusations, and continue targeting uninvolved Nevada residents as a means of intimidation and isolation.

### E. December 8, 2025 – Respondent Unilaterally Declares W.H. a "Witness," Publishes His Personal Contact Information, and Continues After Being Asked to Stop

On December 8, 2025, at approximately 10:11 a.m., Respondent Matthew D. Hardin sent an email declaring that I had "made [W.H.] an indispensable witness" in the Utah copyright case. In the same communication, Respondent published W.H.'s private contact information, including his full name, personal phone number, email address, and complete business address. Copies of these communications are attached as **Exhibit F.**

I had not designated W.H. as a witness, nor had I suggested that he possessed relevant knowledge. I had referenced W.H. only in prior filings to document Respondent's earlier misconduct during the Winnemucca public-records matter. Respondent's declaration of W.H. as a witness was therefore unilateral, retaliatory, and unsupported by any authorized discovery process.

W.H. is a private Nevada resident with no involvement in the litigation. Upon being copied on Respondent's email, W.H. immediately responded:

"I have nothing to do with any of this. Please leave me out of it."

This response made clear that:

W.H. did not possess relevant information;

W.H. did not consent to involvement; and

Respondent's actions were causing distress to an uninvolved third party.

Later that same day, I emailed Respondent directly and asked him to stop, stating in substance:

"Why are you acting like this? This is not normal... He does not want to be in this case... I am asking you kindly. Stop."

Despite both W.H.'s explicit request and my direct request, Respondent did not retract his statements or cease the conduct. Instead, Respondent continued to assert leverage over W.H.'s involvement. In a follow-up communication dated December 6, 2025, Respondent stated that if I continued to reference W.H. in filings, he "may need to name him as a witness," expressly tying the threat of witness designation to my filing activity rather than to any legitimate evidentiary need.

This conduct served no legitimate litigation purpose. Discovery was stayed, no subpoena had issued, and no court authorization existed to publish a private citizen's contact information or to threaten witness designation as leverage. Instead, Respondent used the concept of a "witness" as a coercive tool, both to intimidate me and to pressure an uninvolved Nevada resident.

The publication of W.H.'s personal contact information, combined with Respondent's refusal to stop after being asked, caused me significant fear and distress. It demonstrated that Respondent was willing to escalate his conduct, ignore clear boundaries, and continue targeting third parties in my life as a means of retaliation and intimidation.

**F. December 8, 2025 – Disturbing Voicemail From New York Number**

Also on **December 8, 2025**, at approximately **9:21 AM**, I received a voicemail from **(516) 566-0134** (Garden City, NY).
Although my phone auto-transcribed it as "I love you," the audio is nothing of the sort — it is:

**low, breathy muttering with an unmistakably unsettling and faintly threatening tone.**

Although I cannot identify the caller, the timing and context of the voicemail — occurring the same morning as Respondent's escalation — caused significant Fear. **Exhibit G**

**G. December 12ᵗʰ, 2025 – Harassing and Misleading Accusations Regarding a Resolved 2020 In Forma Pauperis Order**

In December 2025, Respondent escalated his conduct by sending me a lengthy accusatory email asserting—without court order, subpoena, or lawful authority—that I had committed fraud years earlier in connection with a federal in forma pauperis ("IFP") order issued in late 2020 or early 2021. A copy of this email is attached as **Exhibit H**

Respondent's accusations are false, misleading, and deeply intrusive. The IFP order at issue was granted during a period when I was relocating from Utah to Nevada, had uncertain housing and income, and could not reasonably afford a $400 federal filing fee without hardship. The order waived the fee at that time. It did not state—nor did any court ever state—that I was required to repay the fee if my finances later fluctuated.

For more than four years, no party raised any issue regarding the IFP order. Respondent did not enter the case until 2024. Only then, did he revive this long-resolved issue and accuse me of criminal wrongdoing, moral impropriety, and dishonesty—none of which relate in any way to copyright law.

When Respondent raised the issue in 2025, I was shocked to be ordered to pay a filing fee for a case filed in 2020. I complied and paid the fee. Despite this, Respondent has continued to weaponize the old IFP order to scrutinize my personal life, insinuate criminal conduct, and demand "preservation" of private financial records, even while admitting that discovery is stayed and that he lacks authority to subpoena anything.

I remain in a difficult financial position today. Respondent's suggestion that lawful personal expenditures years after an IFP determination somehow constitute fraud is not only legally incorrect, but designed to shame, intimidate, and portray me as criminal or dangerous.

These accusations have nothing to do with copyright. They were not made in court filings. They were delivered directly to me by email, outside any authorized litigation process, and were accompanied by threats of adverse inferences and further action. This conduct caused significant fear, distress, and a sense that Respondent is surveilling and policing my private life.

### H. December 2025 – Anonymous Harassment Email ("DADDY'S BACK…")

On **December 9, 2025**, I received a new anonymous email stating:

### "DADDY'S BACK YOU WORTHLESS SHITF—"

The tone mirrors past Kiwi Farms-style harassment. Given Mr. Hardin's representation of Kiwi Farms, it is reasonable to fear coordination or encouragement.

### I. December 2025 – Resurgence of Kiwi-Style Harassment Following Hardin's Communications

Immediately after Hardin's December 4–9 emails, I began receiving anonymous messages, including:

### "HEY STUPID! ZADDY'S BAAACK."

The pattern and timing strongly suggest Hardin's conduct emboldened or inspired these attacks.

### J. Threats to Target My Family as Retaliation for Litigation Conduct

At an earlier stage of the underlying federal litigation, around December 2024, I entered into a stipulation agreeing not to call members of my family as witnesses. That stipulation was entered before any alleged hostile third-party witnesses were identified and was intended to reduce conflict, not to authorize retaliation.

During communications surrounding that stipulation, Mr. Hardin stated words to the effect that if I attempted to call *any* witnesses on my side, he would "have to" call my family as witnesses. This statement was not tied to relevance, discovery authorization, or any court order. It was conveyed as a warning and was understood by me as a threat of escalation directed at my family members.

I found this deeply disturbing. My family members are private individuals with no involvement in this case. The suggestion that they would be dragged into litigation as punishment for my advocacy caused me fear, distress, and a sense that my personal relationships were being held hostage to Mr. Hardin's litigation strategy.

Given Mr. Hardin's subsequent conduct — including unilaterally declaring uninvolved Nevada residents to be "witnesses," publishing their contact information, and contacting third parties without lawful process — I reasonably fear that similar tactics could be directed at my family if I do not seek court protection.

## K. The Federal Court Has Not Ruled on My Requests for Protection, Allowing the Conduct to Continue

In May 2025, and again in December 2025, I sought protective relief in the United States District Court for the District of Utah, pursuant to **Federal Rule of Civil Procedure 26(c)**. In both instances, I asked the Court to intervene to prevent Respondent Matthew D. Hardin from engaging in third-party contact, publication of private information, and other extrajudicial conduct occurring outside any authorized discovery process.

The District of Utah Court **has never ruled on either motion**. No order was entered granting or denying relief, and no boundaries were imposed on Respondent's conduct. As a result, the behavior described in this declaration was allowed to continue and later escalate.

Respondent has filed numerous additional motions and submissions addressing unrelated procedural issues. These filings had the effect of **burying my requests for protection on the docket**.

During the same period in which my motions for protective relief remained pending and undecided, the Court proceeded to **sanction me**, although characterizing my conduct as undertaken in good faith (I was sanctioned for stating my opinion that Mr. Hardin had violated the SPO),. Thus, although the Court exercised its authority to impose sanctions, it did not exercise that authority to address or restrain Respondent's ongoing third-party targeting and non-litigation conduct.

Because the federal court has **never ruled** on my requests for protection and has not entered any order addressing Respondent's extrajudicial conduct, I remain without relief, despite having properly raised these concerns in that forum.

I therefore seek intervention from this Court pursuant to **NRS 200.575 and NRS 200.591**, which are specifically designed to address stalking, intimidation, and harassment directed at a Nevada resident, regardless of related litigation elsewhere.

## IV. RESULTING FEAR, DISTRESS, AND IMPACT

Mr. Hardin's conduct has caused:

- insomnia,
- panic attacks,
- withdrawal from social and professional contacts,
- fear that my Nevada relationships will be targeted,
- fear that Nevada agencies will be contacted again,
- an ongoing sense of being surveilled, exposed, or hunted.

His conduct meets every element of **NRS 200.575**. His Juris Doctorate and his law license does not given him a reason to step outside of the norms of litigation. His conduct is NOT normal.

Based on Respondent's repeated pattern of targeting uninvolved third parties, publishing private contact information, and unilaterally designating individuals as "witnesses" in retaliation for objections, I reasonably fear that additional people in my life — including friends, business contacts, and Nevada acquaintances — may be subjected to similar conduct. This uncertainty has caused me to withdraw from personal and professional relationships, out of fear that they will be targeted next.

## V. RELIEF REQUESTED

Pursuant to **NRS 200.575** and **NRS 200.591**, I request a Temporary Protective Order directing Matthew D. Hardin to:

1. Cease all **non-litigation contact** with me;
2. Cease all contact, direct or indirect, with **W.H.** or any of my Nevada acquaintances, those whom he believes are connected to me and those he has not yet contacted;
3. Cease submitting defamatory or targeted public records requests to Nevada agencies;
4. Cease accusing me of criminal conduct;
5. Cease publishing or disseminating the contact information of Nevada residents;
6. Cease portraying lawful Nevada advocacy through a misleading federalized lens.

Given Respondent's repeated fascination with protective orders in his filings and correspondence, Petitioner agrees that it is time one actually be entered — **but directed at the correct party.**

## DECLARATION

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed this 12th day of December 2025.
**Russell Greer**

## VI. EXHIBITS

- **Exhibit A:** May 12, 2025 – Winnemucca Public Records Request Filed by Respondent

- **Exhibit B:** May 21, 2025 – Email from Respondent to W.H. Containing False Accusations

- **Exhibit C:** May 29, 2025 – Follow-Up Email from Respondent to W.H. Repeating Allegations

- **Exhibit D:** December 4, 2025 – Email from Respondent to Petitioner (cc: W.H.) Accusing Petitioner of Criminal Conduct

- **Exhibit E:** December 8, 2025 – Email from Respondent Publishing W.H.'s Personal Contact Information

- **Exhibit F:** December 8, 2025 – Voicemail Received from Unknown New York Number

- **Exhibit G:** December 9, 2025 – Email from Respondent Accusing Petitioner of "Tracking" Natalie Banks

- **Exhibit H:** December 9–10, 2025 – Anonymous Harassing Emails Received Following Respondent's Communications

- **Exhibit I:** December 12, 2025 – Email from Respondent Accusing Petitioner of Fraud Related to a Resolved In Forma Pauperis Order

**EXHIBIT A**

From: **Russell Greer** russmark@gmail.com
Subject: **Re: Public Records Request**
Date: **May 12, 2025 at 10:03:29 AM**
To: **Betty Lawrence** Betty.Lawrence@humboldtcountynv.gov
Cc: **Matthew Hardin** hardinlawpllc@icloud.com, **Anthony Gordon**
Anthony.Gordon@humboldtcountynv.gov
Bcc: russmark@gmail.com

Hi, Betty

Just so you aware, Mr. Hardin is an attorney for a stalking site called kiwi farms
that has been trying to sabotage my life.

Kiwi farms have been linked to three suicides and I'm currently trying to pursue
criminal charges against the owner, Joshua moon, for stalking me

Sent from my iPhone

> On May 12, 2025, at 9:00 AM, Betty Lawrence
> <Betty.Lawrence@humboldtcountynv.gov> wrote:
>
>
> Good morning – Per your request, I have attached the e-mails between myself and Mr. Greer
> beginning August 25, 2022 to August 10, 2023. I have included one from Jessica Smith with
> the GIS department only because I reference this e-mail in my e-mail of 8/10/2023 to Mr. Greer.
>
> Betty Lawrence
> Senior Planning Technician
>
> **From:** Matthew Hardin <hardinlawpllc@icloud.com>
> **Sent:** Monday, May 12, 2025 8:10 AM
> **To:** Betty Lawrence <Betty.Lawrence@humboldtcountynv.gov>
> **Cc:** Russell Greer <russmark@gmail.com>
> **Subject:** Public Records Request
>
> Good morning, Ms. Lawrence.
>
> Pursuant to the Nevada Public Records Act, I hereby request copies of any email

correspondence in your custody, which email correspondence:

1) Is to or from an individual named Russell Greer; and
2) Relates to the topic of adult entertainment or prostitution; and
3) Is dated at any time within the past four calendar years.

Pursuant to *Las Vegas Review Journal v. Clark County School District*, 134 Nev. Adv. Op. 84 (2018), I wish to inform you that there is extensive public interest in the release of these documents. Specifically, Mr. Greer appears to be a prolific advocate for prostitution in rural communities across Nevada and elsewhere, and also a prolific litigant in the federal and state courts on topics both related and unrelated to prostitution. Mr. Greer is also documented to have a misdemeanor conviction arising from inappropriate behavior towards one woman in Utah, and has been the subject of at least three separate personal protection or restraining orders, all of which arise from further allegations of unlawful behavior towards women. Additionally, Mr. Greer appears to have made representations to the U.S. District Court for the District of Utah on May 2, 2025 that he could not attend a virtual hearing scheduled in that Court on May 6, 2025 because he would be attending an "emergency" meeting of the Winnemucca City Council of which he did not have advance notice, apparently with reference to a topic on which he has communicated with you and perhaps other Humboldt County officials regarding various lots in Winnemucca.

Public records you might release in response to this request will shed light not only on Mr. Greer's broader advocacy for the expansion of prostitution in Humboldt County and his behavior towards women, but will also shed light on the extent to which Mr. Greer has been honest or dishonest to the federal court in Utah.

Thank you for your prompt attention to this request. Please let me know if you need any further information from me to facilitate your search for records or to evaluate the extent of the public interest in their release. On information and belief, Mr. Greer may have used russmark@gmail.com or russellgreer27@icloud.com to communicate with you.

Thank you,

**Matthew D. Hardin**
**Hardin Law Office**

Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

<Records Request–Greer.pdf>

**Exhibit B**

From: Russell Greer russmark@gmail.com
Subject: Re: Fraud on the Court?
Date: May 29, 2025 at 4:44:31 PM
To: Matthew Hardin matthewdhardin@gmail.com
Cc: Waylon Huber waylon@robinhoodrealtynv.com
Bcc: russmark@gmail.com

Yeah, Matthew, things don't go according to plan. What a concept!

Yep, Roger was weird enough to not reply to any of my emails. He would have seen
that I wanted to present it anyways since he wasted two months of my time
entertaining the idea.

I already said what I need to say. I already shared how that was my only opportunity
to present.

I'm surprised you're spending so much time on this.

And as previously stated, please stop including Mr. Huber in further snails.

Sent from my iPhone

> On May 29, 2025, at 4:33 PM, Matthew Hardin <matthewdhardin@gmail.com>
> wrote:
>
> Good evening, Mr. Greer.
>
> I write to share with you the transcript of your appearance at the May 6, 2025
> Winnemucca City Council meeting. I would have made it an attachment to my
> Motion for Sanctions on May 19, but unfortunately it was not ready until today. It
> will be filed with the Court shortly.
>
> Specifically, I wanted to highlight certain statements at the May 6 meeting in
> Winnemucca, which contrast with your repeated representations to the Court in
> Utah that there was an "emergency" on May 6.

First, there's Mayor Stone's statement on page 4 that "*I don't think bringing this issue in front of the public and the city council level is probably a good thing.*" Mayor Stone also indicated on page 8 of the transcript that he tried to call you to convince you not to come to Winnemucca, but you apparently would not talk to him by phone. Specifically, the Mayor said "*I did try to call him once. Never had any success trying to explain that I didn't think it was going to go anywhere. Try to head it off…*"

Second, there are the statements of Roger Baylocq, owner of the Scott Shady Motel. Mr. Baylocq told the City Council "*I informed [Russell Greer] that there was no appetite and that, you know, basically I -- I thought there was zero chance that this would happen in Winnemucca.*" But that's not all. Mr. Baylocq went on to say that he had also tried to tell you not to come to Winnemucca that day. "*I sent[Russell Greer] that email March 26th and I thought it was a dead issue. And then all of a sudden, Thursday night I'm getting calls that I'm on the agenda.*"

Third, there's a telling comment from Winnemucca City Attorney Kent Maher. After Mr. Baylocq asked how his hotel came up for rezoning without his prior knowledge or consent, the City Attorney told Mr. Baylocq that the request was on the City Council's agenda because the "*gentleman that was here made a request.*" Apparently, you had already left the meeting without even bothering to talk to the owner of the hotel you ostensibly were trying to purchase and rezone. And Mr. Maher even indicated you may have misled the City Council into believing you had an "*ownership possibility*" or at least that you were "*less than clear*" to get your item placed on the agenda at all.

It appears that not only was there not an emergency in Winnemucca on May 6, but that the Mayor of the town tried to tell you not to bother coming. The owner of the hotel you tried to buy echoed that sentiment, informing you on May 26 that there was no point in going to Winnemucca. And so did the town clerk, in an email offering to consider your request in your absence. But not only did you come to Winnemucca anyway (while telling the Court in Utah that your presence was urgently needed, on an "emergency" basis), you refused even to stay until the end of the meeting to hear discussion of the issue you brought up. You walked away without even meeting the guy whose hotel you apparently tried to rezone.

This transcript is further evidence that your repeated claims of an "ermegency" in Winnemucca were manufactured out of whole cloth.

Best,
<Winnemucca City Council Meeting - Full.pdf>

**Matthew D. Hardin**
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be confidential. If you suspect you may not be the intended recipient, please notify the sender and delete all copies.***

On May 21, 2025, at 12:16 PM, Matthew Hardin <matthewdhardin@gmail.com> wrote:

Good morning, Mr. Greer,

I have obtained (and am attaching for your reference) the Meeting Minutes from the May 6, 2025 City Council meeting in Winnemucca. I note two interesting items in these minutes:

*First*, it appears you told the Winnemucca City Council that you had attempted to purchase the Scott Shady motel. But you made this offer to purchase a substantial piece of commercial real estate while simultaneously professing to the U.S. District Court in Utah that you were too poor to pay $402 in filing fees and $1,000 in sanctions awarded for your "recalcitrant" behavior. The owners, apparently, were not willing to sell. But you decided it was an "emergency" to rezone their property anyway, and told the U.S. District Court you could not possibly attend a hearing there on May 6 because of this "emergency" in Winnemucca.

*Second*, it appears you attempted to acquire and rezone property without the consent of the property owner. As reflected in public comments from Roger Baylocq, the Scott Shady Court Motel — which promotes itself as being "family friendly" in all its advertisements — was unaware of your rezoning request until they saw it appear on a City Council Agenda. This family-friendly motel was particularly troubled to see its name appear in connection with your brothel advocacy on a public City Council Agenda, for the first time at your request and without even notifying them or obtaining their consent.

This appears to prove not only that you committed a fraud on the Utah U.S.

District Court when you represented to that Court that you had an "emergency" in Winnemucca on May 6, but also that you committed a fraud when you told that Court that you were financially unable to pay court costs and the judgments which have been entered against you. Sadly, this is yet another instance in which we will have to seek sanctions. And even more unfortunately, you appear to have also roped a Winnemucca realtor into your frauds, and made him a witness. Do you have any explanation at all for why you should not be sanctioned in Utah for this blatant misrepresentation?

Best,

Matthew D. Hardin
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com
<M050625 SIGNED.pdf>
On May 21, 2025, at 11:26 AM, Russell Greer <RussMark@gmail.com> wrote:


Thanks for the email, Mr. Stalker

Russell Greer
CEO of ID LLC/Paralyzed Face Productions/CART U
NV Bus. License #NV20222557279
www.russellgreer.com
IMDB Profile: https://www.imdb.com/name/nm10428966/?ref_=ext_shr_lnk


Sent from my iPhone

On May 21, 2025, at 7:54 AM, Matthew Hardin <matthewdhardin@gmail.com>

wrote:

Good morning,

Please see the attached proposed order. I am unclear whether this order should be reviewed by Magistrate Judge Bennett or District Judge Barlow, so I am copying both chambers.

Thank you,

Matthew D. Hardin
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com
<ProposedOrderExtTimeGreer.docx>

**Exhibit C**

From: **Russell Greer** russmark@gmail.com
Subject: **Re: Fraud on the Court?**
Date: **May 21, 2025 at 10:05:33 AM**
To: **Matthew Hardin** matthewdhardin@gmail.com
Cc: **Waylon Huber** waylon@robinhoodrealtynv.com
Bcc: **russmark@gmail.com**

---

Matthew,

You are insane. This is why I'm pursuing criminal charges against you for stalking . I actually took off work to go to the police to get you to stop. Heading there right now.

First off, stop contacting people connected to me.

Secondly, I never fucking lied. I have said it was investor money I was relying on.

Third, I have two month long emails from Roger saying he was open to it. He withdrew because he claimed the city wouldn't vote for it. That's why I didn't propose the zone at the meeting. I had told the city clerk that we were considering a different property.

I have stated multiple times that I was relying on investors. I never said I personally had the money. I even told Waylon I had little money and was relying on investors.

None of this has to do with copyright. Funny enough, you yourself have roped yourself with criminal charges.

Do not contact me or Waylon again. I also have to file a restraining order against you today

What a good way to lose your law license.

Fuck off. Kindly.

Sent from my iPhone

On May 21, 2025, at 9:16 AM, Matthew Hardin <matthewdhardin@gmail.com> wrote:

Good morning, Mr. Greer,

I have obtained (and am attaching for your reference) the Meeting Minutes from the May 6, 2025 City Council meeting in Winnemucca. I note two interesting items in these minutes:

*First*, it appears you told the Winnemucca City Council that you had attempted to purchase the Scott Shady motel.  But you made this offer to purchase a substantial piece of commercial real estate while simultaneously professing to the U.S. District Court in Utah that you were too poor to pay $402 in filing fees and $1,000 in sanctions awarded for your "recalcitrant" behavior. The owners, apparently, were not willing to sell. But you decided it was an "emergency" to rezone their property anyway, and told the U.S. District Court you could not possibly attend a hearing there on May 6 because of this "emergency" in Winnemucca.

*Second*, it appears you attempted to acquire and rezone property without the consent of the property owner. As reflected in public comments from Roger Baylocq, the Scott Shady Court Motel — which promotes itself as being "family friendly" in all its advertisements — was unaware of your rezoning request until they saw it appear on a City Council Agenda. This family-friendly motel was particularly troubled to see its name appear in connection with your brothel advocacy on a public City Council Agenda, for the first time at your request and without even notifying them or obtaining their consent.

This appears to prove not only that you committed a fraud on the Utah U.S. District Court when you represented to that Court that you had an "emergency" in Winnemucca on May 6, but also that you committed a fraud when you told that Court that you were financially unable to pay court costs and the judgments which have been entered against you. Sadly, this is yet another instance in which we will have to seek sanctions. And even more unfortunately, you appear to have also roped a Winnemucca realtor into your frauds, and made him a witness. Do you have any explanation at all for why you should not be sanctioned in Utah for this blatant misrepresentation?

Best,

**Matthew D. Hardin**
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

  **M050625 SIGNED.pdf**
264 KB

On May 21, 2025, at 11:26 AM, Russell Greer <RussMark@gmail.com> wrote:

Thanks for the email, Mr. Stalker

Russell Greer
CEO of ID LLC/Paralyzed Face Productions/CART U
NV Bus. License #NV20222557279
www.russellgreer.com
IMDB Profile: https://www.imdb.com/name/nm10428966/?ref_=ext_shr_lnk

Sent from my iPhone

On May 21, 2025, at 7:54 AM, Matthew Hardin <matthewdhardin@gmail.com> wrote:

Good morning,

Please see the attached proposed order. I am unclear whether this order should be reviewed by Magistrate Judge Bennett or District Judge Barlow, so I am copying both chambers.

Thank you,

Matthew D. Hardin
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com
<ProposedOrderExtTimeGreer.docx>

**Exhibit D**

From: **Matthew Hardin** matthewdhardin@gmail.com
Subject: **Re: Supplemental Initial Disclosures in Greer v. Moon et al. (D. Utah Case No. 2:24-cv-421)**
Date: **Dec 4, 2025 at 8:53:08 AM**
To: **Russell Greer** russmark@gmail.com
Cc: **Waylon Huber** waylon@robinhoodrealtynv.com

Good morning, Mr. Greer.

I write because I became aware just before Thanksgiving that Defendants may have an additional witness. While we are still working to confirm the witnesses' contact information and the scope of her knowledge, we are disclosing to you as much information as we presently have and we will supplement this information as we are able:

Name: Natalie Banks (possibly a pseudonym)
Address: Unknown, but possibly in the vicinity of Cleveland, Ohio. Formerly a sex worker in Northern Nevada.
Contact information: https://www.realnataliebanks.com/
Topics of Ms. Banks' knowledge: Notoriety, character & reputation of Russell Greer, past threats of violence by Russell Greer, attempts by Russell Greer to lure women into the Nevada desert, need for archivists and others to retain material about Russell Greer to promote public and personal safety, past vexatious litigation by Russell Greer, Russell Greer's musical and written material and possible fair uses of that material, Russell Greer's financial ability to pay for prostitution and other expenses, Russell Greer's LLCs and their management, Russell Greer's fraud on or with Waylon Huber.

Best,

**Matthew D. Hardin**
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be confidential. If you suspect you may not be the intended recipient, please notify the sender and delete all copies.***

On Dec 2, 2024, at 3:32 PM, Matthew Hardin <matthewdhardin@gmail.com>
wrote:

Good afternoon,

Please see attached Defendants' Initial Disclosures. It is my understanding that you have already also received a ProtonDrive link
containing "A copy... of all documents [and] electronically stored information." The electronically stored information is a very
large file size and is too large to transmit via email.

Best,

**Matthew D. Hardin**

## Hardin Law Office

Direct Dial: 202-802-1948

NYC Office: 212-680-4938

Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be confidential. If you suspect you may not
be the intended recipient, please notify the sender and delete all copies.***

 **GreerInitialDisclosures.pdf**
48 KB

**Exhibit E**

**Hardin published private information deliberately onto a public docket system and didn't
try redacting**



7:30 ☾                                ☷ 5G 41

◀ Mail

1 of 2

**Matthew D. Hardin**
Hardin Law Office
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be cc
may not be the intended recipient, please notify the sender and delete all copies.***

On Dec 8, 2025, at 3:10 PM, Russell Greer <russmark@gmail.com> wrote:

Sir

Why are you acting like this? This is not normal. This only reinforces that you need to be disqualified.

He does not want to be in this case. I only mentioned him because YOU were snooping around in winnemucca an
case.

I am asking you kindly. Stop.

Sent from my iPhone

On Dec 8, 2025, at 10:11 AM, Matthew Hardin <matthewdhardin@gmail.com> wrote:

Mr. Greer,

As I predicted might happen, you have now made Waylen Huber an indispensable witness in this case because
your latest motion. I therefore disclose as follows:

Name: Waylon Huber
Phone: 775-527-0272
Email: Waylon@robinhoodrealty.gov.com
Address: 730 S Grass Valley Rd., Suite B, Winnemucca, Nevada, 89445

Scope of knowledge: All information regarding Intimate Dealings LLC and any affiliated LLC owned by Rus
but not limited to ID NV LLC, and their dealings, records, or management. Russell Greer's search for real esta
financial resources required to purchase land in that vicinity, Russell Greer's representations regarding his fina
officials. Russell Greer's business and legal knowledge and training. Russell Greer's attempts and ability to res
Nevada.

Best,

Matthew D. Hardin
Hardin Law Office
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to
you may not be the intended recipient, please notify the sender and delete all copies.***



Case 2:24-cv-00421-DBB-JCB     Document 404-1     Filed 12/09/25     P
2 of 2

you may not be the intended recipient, please notify the sender and delete all copies.

On Dec 6, 2025, at 12:27 PM, Matthew Hardin <matthewdhardin@gmail.com> wrote:

Mr. Greer

I have not yet named Waylen Huber as a witness in this case. As you continue to bring him up in filings, how
where I may need to name him to defend against the accusations you keep making. I am not telling you wha
own decisions as to whether you want to keep mentioning Mr. Huber in your filings. But the more you do th
will have to name him as a witness.

Best,

Matthew D. Hardin
Hardin Law Office
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

ecf.utd.uscourts.gov     ↻

**Exhibit F**

**Bizarrely declaring that W.H. is now his witness, even though W.H. protests Hardin's
absolutely bonkers behavior**

Russle you know that I have nothing to do with any of this. Please leave me out of it.

Get Outlook for iOS

**From:** Matthew Hardin <matthewdhardin@gmail.com>
**Sent:** Saturday, December 6, 2025 9:27:18 AM
**To:** Russell Greer <russmark@gmail.com>
**Cc:** Waylon Huber <waylon@robinhoodrealtynv.com>
**Subject:** Re: Activity in Case 2:24-cv-00421-DBB-JCB Greer v. Moon et al Reply Memorandum/ Reply to Response to Motion

Mr. Greer:

I have not yet named Waylon Huber as a witness in this case. As you continue to bring him up in filings, however, you are creating a situation where I may need to name him to defend against the accusations you keep making. I am not telling you what to do, you can obviously make your own decisions as to whether you want to keep mentioning Mr. Huber in your filings. But the more you do that, the more likely it becomes that I will have to name him as a witness.

Best,

Matthew D. Hardin
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be confidential. If you suspect you may not be the intended recipient, please notify the sender and delete all copies.***

On Dec 5, 2025, at 6:21 PM, utd_enotice@utd.uscourts.gov wrote:

**This is an automatic e-mail message generated by the CM/ECF system. If you need assistance, call the Help Desk at (801)524-6100.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including unrepresented parties) who receive notice by email to receive one free**

electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. Access to the one free electronic copy expires as designated by PACER. To avoid incurring charges later, download and save a copy of the document during the first access. However, if the referenced document is a transcript, the free download restrictions and 30-page limit do not apply.

***NOTICE REGARDING MAILING COPIES OF NEFS AND DOCUMENTS*** The court will mail a copy of the NEF and associated document of court-generated documents (e.g., reports and recommendations, orders, and notices of hearings) to parties who are not registered to receive electronic notice, as indicated under "Notice has been delivered by other means to. . . ". The court will not mail NEFs and documents of party-generated filings to any party (including the filing party) even if the "Notice has been delivered by other means to. . . " states otherwise. The filing party is responsible for serving a copy of the NEF or document on parties who do not receive electronic notice.

### US District Court Electronic Case Filing System

### District of Utah

**Notice of Electronic Filing**

The following transaction was entered on 12/5/2025 at 4:21 PM MST and filed on 12/5/2025

| | |
|---|---|
| **Case Name:** | Greer v. Moon et al |
| **Case Number:** | 2:24-cv-00421-DBB-JCB |
| **Filer:** | Russell G. Greer |
| **Document Number:** | 396 |

**Docket Text:**
**REPLY to Response to Motion re [394] MOTION for Protective Order and Memorandum in Support filed by Plaintiff Russell G. Greer. (alf)**

**2:24-cv-00421-DBB-JCB Notice has been electronically mailed to:**

Stewart B. Harman     stewart.harman@bachhomes.com, aanderson@pckutah.com

Matthew D. Hardin     matthewdhardin@gmail.com, matthewdhardin@ecf.courtdrive.com, matthewdhardin@protonmail.com

Russell G. Greer     russmark@gmail.com

**2:24-cv-00421-DBB-JCB Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060034973 [Date=12/5/2025] [FileNumber=6355268-0
]
[3fec54195c889fb22a2755bcc313873e443a601378c4d5fd69a1c8d180523134102
48074c011d175d662973ee391b01aad141a54642c00b9d11b8f9a1a00eb4d]]

Exhibit G

**Strange phone call received around the same time as Hardin's sending me false things**



**Exhibit H**

From: **Russell Greer** russmark@gmail.com
Subject: **Re: PRESERVATION DEMAND**
Date: **Dec 12, 2025 at 7:02:26 AM**
To: **Matthew Hardin** matthewdhardin@gmail.com
Bcc: **russmark@gmail.com**

Mr. Hardin,

Your repeated extrajudicial emails contain false, stigmatizing, and defamatory accusations, demands made outside authorized discovery, and invasive commentary about my personal life wholly unrelated to any claim or defense. Discovery in this matter is stayed.

Your conduct has now escalated to the point that I am preparing to seek a **personal protective order** based on harassment, intimidation, and interference with my personal affairs outside legitimate litigation activity.

I deny your allegations, reject your legal characterizations regarding in forma pauperis status, and will not engage in further informal discovery or accusatory correspondence.

Sent from my iPhone

On Dec 12, 2025, at 6:46 AM, Matthew Hardin <matthewdhardin@gmail.com> wrote:

Good morning, Mr. Greer.

Further to my email of December 8, 2025: I received proof yesterday evening from a Nevada sex worker who indicates that you were using Zelle and Venmo to send her "tips" during the time period that you were proceeding in forma paupers in this case. Your social media from the relevant time period hinted that you were sending funds to women, but this is the first confirmation that we have received. These transfers would have taken place during a time you claimed to be too poor to pay your filings fees, and too poor to pay to obtain court records in Utah. Some

of the transfers may have even taken place contemporaneously with your unsuccessful efforts to stay the Utah case to obtain counsel. But it appears you did not spend money on counsel, because you were instead paying these funds over to sex workers.

Please confirm not later than Monday, December 15, 2025 that you are preserving your financial records from Zelle and Venmo from the time period six months before your present lawsuit was instituted through the present. As we indicated in the December 8, 2025 email, our position is that these Zelle/Venmo records, especially when read together with your own previous filings in the U.S. District Court from 2018, will indicate that your allegations of poverty in this case are untrue and that dismissal is mandatory pursuant to 28 USC 1915 (e)(2), which expressly provides that the court must dismiss a lawsuit *even if the filing fee or a portion of it is later paid*.

I cannot presently subpoena these records because discovery is stayed, but I believe they will imminently be destroyed due to a 7 year retention period at Zelle and Venmo. If you refuse to provide immediate confirmation that these records are being preserved such that I can subpoena them when discovery reopens, I will have no choice but to seek a preservation order and other appropriate relief on Monday. Your failure to make such a confirmation may also lead to a request that the judge make an adverse inference with respect to any missing records.

Best,

**Matthew D. Hardin**
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be confidential. If you suspect you may not be the intended recipient, please notify the sender and delete all copies.***

**EXIBIT I**

**Message asking Mr. Hardin Why He Is Acting Bizarre**

