Russell Greer
1100 Dumont Blvd
Apt 139
Las Vegas, NV 89169
801-895-3501
russmark@gmail.com
Pro Se Litigant

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **RUSSELL GREER**<br><br>Plaintiff<br><br>v.<br><br>**JOSHUA MOON ET AL**,<br><br>Defendants | **PLAINTIFF'S EMERGENCY RENEWED MOTION TO DISQUALIFY ATTORNEY MATTHEW D. HARDIN**<br><br>Case No.:   2:24-cv-00421-DBB-JCB |

1

## I. INTRODUCTION

Plaintiff filed his original motion to disqualify Attorney Matthew Hardin on December 8, 2025 (ECF 400). Since then, defense counsel has engaged in a repeated, escalating pattern of abusive witness disclosures, defamatory insinuations, and fabricated criminal accusations, culminating in the January 23, 2026 disclosures. **EXHIBIT A.**

Under Tenth Circuit and District of Utah precedent, disqualification is appropriate only when attorney misconduct "taints the lawsuit" or renders a fair proceeding impossible. *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476–80 (D. Utah 1994). That is precisely what is occurring here.

No safe-harbor notice is required with filing this renewed motion because a renewed disqualification motion is not a Rule 11 sanctions motion.

What Hardin is doing is not advocacy — it is Rule 26(g)–violating harassment and a weaponization of the witness-disclosure process for personal attack. Under Rule 26(g)(3), such misuse of disclosures requires mandatory sanctions.

Because this is now Hardin's seventh such filing, and because lesser remedies have failed, the Court must consider the extreme, but now necessary, renewed remedy of disqualification.

## II. HARDIN'S WITNESS DISCLOSURES VIOLATE RULE 26(g) AND THE UTAH CIVILITY STANDARDS

Rule 26(g) requires all disclosures to:

- have a proper purpose,
- be warranted by the facts, and
- not be used to harass, embarrass, or burden a party.

The January 23 disclosures violate all of these. Hardin listed "areas of possible knowledge" for witnesses including: "forgery," "tax evasion," "extortion," "vexatious litigation," "citizenship," "morals and reputation," "financial irregularities," and more.

2

None of these are remotely relevant to copyright ownership or infringement. They serve no legitimate discovery purpose and appear designed solely to embarrass Plaintiff. Under Rule 26(g)(3), such improper disclosures require mandatory sanctions.

The District of Utah's Standards of Professionalism likewise forbid: using discovery to harass injecting personal moral attacks unless legally relevant, and filings whose primary purpose is to embarrass.

Hardin has violated all of these.

### III. This Court's Prior Decision in *Christensen v. Graco* Does Not Apply Here

Plaintiff acknowledges that this Court and Magistrate Bennett has previously considered attorney-disqualification standards in another pro se case in *Christensen v. Graco Fishing & Rental Tools, Inc.*, No. 2:20-cv-00888 (D. Utah Mar. 4, 2021); however, the facts in *Christensen* bear no resemblance to the matter presently before the Court.

In *Christensen*, the movant sought disqualification based solely on his personal "belief" that opposing counsel might have witnessed unrelated misconduct in a state-court action. The allegations were speculative, unsupported, and directed exclusively at whether Rule 3.7 (lawyer-as-witness) applied. There was no evidence of misconduct, no ethical violations alleged, no prejudice, and no distortion of the litigation process. For those reasons, the Court denied the motion.

Here, Plaintiff's motion does not invoke Rule 3.7 and does not rely on speculation. Rather, Plaintiff identifies concrete, documented conduct that implicates multiple provisions of the Utah Rules of Professional Conduct and the Federal Rules of Civil Procedure. The motion is based on affirmative acts, not subjective beliefs: repeated issuance of improper witness disclosures, inclusion of allegations wholly unrelated to copyright, and conduct that has already begun to affect third parties and interfere with the fairness of the proceedings.

Accordingly, *Christensen* does not control this case. Under the standards articulated

in *Christensen* itself—namely, whether the alleged conduct is supported by evidence, violates ethical rules, and "taints the lawsuit"—the facts here warrant disqualification.

**IV. THE "FORGERY" ACCUSATION IS FABRICATED AND HAS NO FACTUAL BASIS AND HAS NOW RESULTED IN REAL-WORLD HARASSMENT OF AN INNOCENT THIRD PARTY**

Hardin's newest disclosure accuses Plaintiff of "possible forgery." This accusation has no factual basis whatsoever and is premised entirely in the case of Greer v. Viatron: a typographical error made by Plaintiff's DETR counselor, Jerry Leach, a man in his sixties - seventies, who mistakenly typed "2014" instead of "2024" on a routine employment document. When Plaintiff later obtained a corrected copy, Plaintiff's former employer began making unfounded accusations of "forgery," which Plaintiff expressly disputed in the Nevada litigation.

Hardin has now escalated this baseless allegation by identifying Mr. Leach as a purported witness in this federal copyright case — despite the fact that he has no involvement in this litigation, no knowledge relevant to copyright law, and no basis to testify regarding Plaintiff's conduct or authenticity of documents. This misuse of witness disclosures is not theoretical:

On January 23, 2026, Mr. Leach personally contacted Plaintiff and stated that he had received messages claiming he was "involved in a lawsuit." This call demonstrates the real-world disruptive impact of defense counsel's fabricated accusations and confirms that harmless administrative errors by unrelated third parties are being weaponized to harass both Plaintiff and uninvolved individuals. Mr. Leach, on the call, even admitted to the typo and he said Hardin and any "lawsuit stuff" would have to go through the attorney general's office.[1][2]

Accusing a litigant of a crime, based solely on a typo — and dragging an elderly state employee into federal litigation as a result — violates multiple professional duties, including:

---

[1] This further proves why Hardin's disclosure is beyond ridiculous: naming a government employee in any lawsuit witness list, would trigger state attorney general involvement. Hardin acts like witness lists are a laundry list of people, who he can just willy nilly name with no pushback.
[2] Leach didn't say it was Hardin who messaged him, but the timing of the initial disclosure and the phone call are not a coincidence.

- Federal Rules of Civil Procedure 26(g): requiring witness disclosures to be grounded in facts and not be used for harassment;

- UCJA Rule 13-4.4(a): prohibiting means with "no substantial purpose other than to embarrass, delay, or burden a third person";

- UCJA Rule 13-8.4(c) & (d): barring dishonesty and conduct prejudicial to the administration of justice;

- Federal Rules of Civil Procedure 11(b)(3): prohibiting factual contentions presented without evidentiary support.

The "forgery" allegation is therefore not simply incorrect — it is fabricated, irresponsibly assigned to an uninvolved state employee, and has already produced actual harm to an innocent third party. Such conduct warrants sanctions and strongly supports disqualification.

## V. THE "TAX EVASION" ALLEGATION IS IMPOSSIBLE AND ASSIGNED TO A WITNESS WHO COULD NOT KNOW ANYTHING ABOUT PLAINTIFF'S TAXES

Hardin's disclosure states that Viatron's CEO, Mr. Kala Devan, has "possible knowledge" of Plaintiff's "tax evasion." This is factually impossible. Mr. Devan: had no access to Plaintiff's IRS filings, had no involvement in payroll, HR, or DETR, was rarely present in the office, did not review Plaintiff's tax records, could not lawfully know Plaintiff's tax status. Assigning criminal knowledge to a witness who could not possess it, violates FRCP Rule 26(g) and demonstrates the disclosures were crafted to harass, not inform. This is textbook discovery abuse.

For the record, plaintiff has filed taxes annually. Regardless, plaintiff's tax records have nothing to do with defendants' copyright infringement, proving how bizarre and improper Hardin's disclosures have become.

## VI. FABRICATION OF "CITIZENSHIP STATUS" ALLEGATION FURTHER DEMONSTRATES COUNSEL'S IMPROPER PURPOSE

Defense counsel's January 23, 2026 disclosure includes the topic of Plaintiff's "citizenship status" as an alleged area of witness knowledge. This is not merely irrelevant; it is another fabricated insinuation with no factual basis whatsoever. Plaintiff was born in the United States, is a lifelong U.S. citizen, has exclusively held U.S. identification and Social Security credentials, and has never been the subject of any immigration inquiry, dispute, or proceeding. There has never been any allegation, suggestion, or evidence—formal or informal—that Plaintiff is anything other than a United States citizen.

There is no conceivable reason for this topic to appear in a copyright witness disclosure unless the purpose is to insinuate a false narrative of illegitimacy, criminality, or untrustworthiness. No witness identified by defense counsel would have any basis to speak to Plaintiff's citizenship, nor has any such issue ever existed in Plaintiff's employment history, litigation history, or personal background.

The addition of "citizenship status" to a witness disclosure is therefore not merely irrelevant and improper—it reflects a pattern of manufacturing accusations out of whole cloth and implying misconduct, where none exists. This is fully consistent with the other fabricated categories in counsel's disclosures (including "forgery," and "tax evasion,"), demonstrating that these filings are being used as tools of harassment rather than legitimate discovery.

This further supports disqualification under *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474 (D. Utah 1994) because it shows counsel's repeated willingness to file materials untethered to fact, reality, or relevance, thereby tainting the fairness of the proceedings. The proceedings are tainted because Plaintiff can't communicate with defense counsel now without Hardin lobbing bizarre allegations at Plaintiff, now implying Plaintiff is an illegal immigrant. This assertion alone should get Hardin removed from the case.

## VII. HARDIN MISUSES THE WITNESS DISCLOSURE AS A VEHICLE TO SMEAR PLAINTIFF WITH DISPUTED, IRRELEVANT ALLEGATIONS

Hardin is NOT claiming Plaintiff admitted anything. Instead:

6

- He is assigning defamatory allegations to witnesses who never made them
- He is treating gossip as probable testimony
- He is repackaging disputed Nevada-case allegations as "knowledge"
- He is using the disclosure process to launder character attacks

This sanctionable abuse of Rule 26(g). Listing as "possible witness knowledge" accusations that witnesses:

- never reported,
- never observed,
- could not possibly know,
- is improper on its face.

## VIII. HARDIN CONTINUES TO ADVANCE ASSERTIONS THAT HAVE NO BASIS IN REALITY OR IN THE EVIDENTIARY RECORD

Defense counsel Hardin's January 23, 2026 disclosure is not an isolated misstep. It is the latest example in a consistent pattern of filings built on assertions that simply do not exist in the factual record, the Nevada case, agency findings, or any witness statements. Defense counsel repeatedly attributes criminal, moral, and professional misconduct to Plaintiff without a shred of evidentiary support, and assigns "knowledge" to witnesses who could not possibly possess it.

Hardin's disclosures do not merely stretch facts — he **manufactures them**.

Examples include:

- assigning "tax evasion knowledge" to a corporate CEO who had no access to Plaintiff's tax information;
- insinuating "forgery" from a typographical error known to be written by an elderly DETR employee;
- repackaging disputed defamatory gossip from unrelated litigation as if it were testimony (that is why Greer is suing ViaTRON for defamation because he firmly denies extortion allegations and harassment allegations);
- implying internal misconduct, despite OSHA and the EEOC finding Plaintiff's complaints credible enough to docket;
- continuing to present allegations Plaintiff explicitly denied as though they were uncontested facts.

These are not interpretations. These are fabrications, and they recur every time Mr. Hardin files a witness disclosure. This pattern demonstrates Mr. Hardin's willful disregard for what the record actually contains and shows how dishonest Mr. Hardin is. Rather than engaging with facts, Hardin continuously constructs an alternate version of events detached from any evidence,

7

agency finding, or witness knowledge. The purpose is transparent: to smear, intimidate, and harass, not to litigate the issues before the Court.

Multiple courts, including the District of Utah, have recognized that when an attorney's filings become untethered to reality or the evidentiary record, the resulting prejudice taints the integrity of the proceeding and warrants disqualification. *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1477–78 (D. Utah 1994).

That is the situation here. Hardin is not merely incorrect — he is repeatedly asserting things that never happened, were never said, and could never be known by the witnesses he identifies. This repeated distortion of reality for strategic harassment crosses every line of professional conduct, FRCP Rule 26(g) et al.

It has now become impossible for Plaintiff to litigate without anticipating the next wave of invented allegations.

## IX. THIS IS THE SEVENTH INSTANCE — DEMONSTRATING BAD FAITH AND ABUSE OF PROCESS

Repeated abusive filings constitute evidence of improper purpose. See *G.C. & K.B. Investments v. Wilson*, 326 F.3d 1096, 1110 (10th Cir. 2003). Hardin's conduct has been: repetitive, escalating, irrelevant to copyright, intended to humiliate, mimicking Kiwi Farms harassment, CC'ing individuals connected to Plaintiff (as alleged in Plaintiff's first motion to disqualify), distorting unrelated litigation. This is improper purpose litigation conduct.

## X. HARDIN'S CONDUCT "TAINTS THE LAWSUIT," SATISFYING THE DISQUALIFICATION STANDARD

Under *Parkinson v. Phonex Corp.* and *Bodily v. Intermountain Healthcare*, 649 F. Supp 468 (D. Utah C.D. November 24, 1986), disqualification is appropriate if misconduct taints the lawsuit or makes a fair proceeding impossible. Here:

- Plaintiff now fears ANY communication with Hardin
- Plaintiff fears advocating for himself
- Plaintiff fears filing motions
- Plaintiff fears unrelated aspects of his life will be brought up and misrepresented in court

8

- Hardin's conduct chills Plaintiff's ability to litigate
- The disclosures are being used as harassment tools

No litigant can meaningfully engage in a case when opposing counsel repeatedly uses filings to imply: criminal acts, moral deviance, immigration issues, and financial irregularities. This is precisely the type of conduct courts describe as "tainting the fairness of the proceedings." Lesser sanctions will not stop this pattern; prior motions to strike have not stopped Hardin's escalation.

Mr. Hardin's repeated fabrication of criminal implications and misuse of unrelated personal information have created a profound chilling effect on Plaintiff's ability to safely participate in litigation. Because any ordinary activity, communication, or unrelated legal matter has been previously twisted by defense counsel into defamatory witness disclosures, Plaintiff now reasonably fears that any aspect of his life, work, or communications may be distorted and weaponized in this case.

This is not a hypothetical concern — it is the direct result of experiencing seven rounds of disclosures in which defense counsel assigned fabricated "areas of knowledge" to witnesses who could not possibly possess such information. The cumulative effect is that Plaintiff must now constantly guard personal, professional, and legal matters because of a well-founded fear that defense counsel will misuse or mischaracterize them.

Plaintiff filed his Greer v. Viatron lawsuit on 1-22-26, but fully intended on a December filing. Greer didn't file in December because he knew Mr. Hardin would weaponize information in an entirely unrelated matter.

No litigant can meaningfully pursue relief under these conditions. This chilling effect, created from defense counsel's pattern of misconduct, now impedes Plaintiff's ability to freely advocate for himself and participate in this lawsuit.

## X. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

9

- Disqualify Attorney Matthew D. Hardin;
- Revoke his pro hac vice status;
- Strike all improper witness disclosures;
- Issue sanctions under Rule 26(g)(3);
- Prohibit further filings including irrelevant or defamatory matter;
- Grant all further relief the Court deems just.

Respectfully submitted,

/rgreer/

1-24-26

## CERTIFICATE OF SERVICE:

Pursuant to FRCP 5(b), I certify that on 1-24-26, I served a true and correct copy of the attached document by ECF to all attorneys on record.

**EXHIBIT A**



**Re: Jerry Leach Witness Disclosure**

Good afternoon,

I have two more witnesses to disclose:

1. Jerry Leach
   Phone: 702-486-0371
   Email: jlleach@detr.nv.gov
   Address: 18233 S Hoover St, Gardena, CA 90248
   Scope of Knowledge: Financial status of Russell Greer, possible forgeries by Russell Greer, residence and citizenship of Russell Greer, employability of Russell Greer, character & reputation of Russell Greer.

2. Kala Devan



90248
    Scope of Knowledge: Financial status of Russell Greer, possible forgeries by Russell Greer, residence and citizenship of Russell Greer, employability of Russell Greer, character & reputation of Russell Greer.

2. Kala Devan
    Phone: 310-756-0607
    Address: 18233 S Hoover St, Gardena, CA 90248
    Scope of Knowledge: Financial status of Russell Greer, vexatious litigation of Russell Greer, possible forgeries by Russell Greer, employee complaints against Russell Greer with specific reference to sexual harassment or prostitution, extortion demands by Russell Greer, possible tax evasion by Russell Greer, residence and citizenship of Russell Greer.

Best,

Matthew D. Hardin
**Hardin Law Office**
Direct Dial: 202-802-1948
NYC Office: 212-680-4938
Email: MatthewDHardin@protonmail.com

***The information contained in this message may be privileged. It is intended by the sender to be confidential. If you suspect you may not be the intended recipient, please notify the sender and delete all copies.***

   

See More