**Matthew D. Hardin (*pro hac vice*)**
**HARDIN LAW OFFICE**
101 Rainbow Drive # 11506
Livingston, TX 77399
Telephone: (202) 802-1948
Email: MatthewDHardin@gmail.com
*Attorney for Defendants*
*Joshua Moon and Lolcow, LLC*

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL GREER,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA MOON, *et al.*<br><br>Defendants. | **DEFENDANTS' MOTION TO RECONSIDER ORDERS AT ECF NO. 448 & ECF NO. 453**<br><br>Case No. 2:24-cv-00421-DBB<br><br>District Judge David Barlow<br>Magistrate Judge Jared C. Bennett |

NOW COME Defendants, Joshua Moon and Lolcow, LLC, by and through their undersigned counsel, and respectfully move this Court to reconsider the Report and Recommendation entered at ECF No. 448 and the Order entered at ECF No. 453, pursuant to Fed. R. Civ. P. 54(b). Two intervening decisions of the United States Supreme Court have changed the controlling law governing Plaintiff's contributory copyright infringement claims.

**I. Introduction**

At the core of this case is the Tenth Circuit's holding in *Greer v. Moon*, 83 F.4th 1283 (10th Cir. 2023), that Mr. Moon's reposting of a DMCA takedown notice, combined with his refusal to remove allegedly infringing material, "amounted to encouragement of Kiwi Farms users' direct copyright infringement." *Id.* at 1305. Both the Report and

Recommendation and the Order relied on the Tenth Circuit's decision as controlling. ECF No. 448 at 13–14; ECF No. 453 at 2.

This Court's reliance on *Greer v. Moon* was understandable at the time, but two recent U.S. Supreme Court decisions have fundamentally altered the analysis and implicitly overruled the relevant portion of *Greer v. Moon*. Since this Court last ruled on Defendants' Motion to Dismiss, ECF No. 274, the Supreme Court has fundamentally altered the legal framework governing secondary copyright liability and inducement in two unanimous decisions. *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___ (2026),[1] was decided on March 25, 2026 (twelve days after this Court's Order at ECF No. 453). *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. ___ (2026),[2] was decided today, June 4, 2026. Together, these two Supreme Court decisions unanimously foreclose the theory of contributory copyright infringement on which Mr. Greer's claims rest. Although neither decision expressly overruled the Tenth Circuit's holding in this case, they are both entirely at odds with the Tenth Circuit's ruling.

## II. Standard of Review

Under Fed. R. Civ. P. 54(b), "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment."[3] A court may reconsider an interlocutory order when, among other grounds, there has been "an intervening change in the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d

---

[1] Attached as Exhibit A for ease of reference.

[2] Attached as Exhibit B for ease of reference.

[3] Fed. R. Civ. P. 60(b) is inapplicable here because it applies only to 'final judgment[s], order[s], or proceeding[s].' The denial of a motion to dismiss is an interlocutory order, not a final judgment. *See* Fed. R. Civ. P. 54(b) (distinguishing orders that 'adjudicat[e] fewer than all the claims' from final judgments).

1005, 1012 (10th Cir. 2000). The same standard applies to reconsidering a prior denial of a motion to dismiss. *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007).

The law-of-the-case doctrine likewise permits departure from a prior ruling when "controlling authority has subsequently made a contrary decision of the law applicable to such issues." *Been*, 495 F.3d at 1225; see also *United States v. Dutch*, 978 F.3d 1341, 1345 (10th Cir. 2020) (recognizing that "a dramatic change in controlling legal authority" is an exception to the mandate rule).

### III. Argument

### A. *Cox Communications* Limits Contributory Copyright Liability to Two Pathways, Neither of Which Is Satisfied Here.

In *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___ (2026), the Supreme Court held unanimously that "a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." Slip op. at 1. The Court limited contributory copyright liability to exactly two pathways: the defendant must have (1) "induc[ed] the infringement," or (2) "sold a service tailored to infringement." *Id.* at 2.

The first pathway requires what *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), described as "clear expression or other affirmative steps taken to foster infringement." *Id.* at 936. The second requires a service that is not "capable of 'substantial' or 'commercially significant' noninfringing uses." *Cox*, slip op. at 9.

Defendants' conduct as alleged in this case gives rise to liability under neither theory.

As to the second, Kiwi Farms is a general-purpose Internet forum. Whatever one thinks of its content, it is plainly "capable of substantial . . . noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). Users post commentary, criticism, and discussion on a vast range of topics unrelated to Mr. Greer's copyrights. The second *Cox* pathway is not available.

As to the first, the conduct on which the Tenth Circuit relied—reposting a takedown notice and declining to remove material—is not "clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936. It looks nothing like the conduct the Supreme Court has identified as inducement: newsletters "promoting . . . ability to provide particular, popular copyrighted materials," advertisements "urging the adoption" of infringing programs, and affirmative responses "to requests for help in locating and playing copyrighted materials." *Id.* at 926, 937–38. Mr. Moon is not even alleged to have advertised, solicited, or promoted copyright infringement. Instead, it is alleged that Mr. Moon mocked a takedown notice and refused to comply with it. In *Cox*, the Supreme Court held that arguably far more egregious conduct—knowingly providing internet service to subscribers identified thousands of times as infringers and terminating only 32 accounts over two years—was insufficient to establish contributory copyright liability. If *Cox*'s conduct did not cross the line, Mr. Moon's and Lolcow, LLC's certainly did not.

**B. *Hikma* Forecloses the "Could Be Read as Encouragement" Theory on Which the Tenth Circuit Relied.**

In *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. ___ (2026), decided today, the Supreme Court clarified the "active steps" standard that *Grokster*

established for inducement. The Court's holding is directly relevant because *Grokster* was itself a copyright case, and the *Grokster* inducement framework applies across both patent and copyright law. *See Cox*, slip op. at 7–8 (applying *Grokster* to copyright contributory liability).

The Supreme Court's *Hikma* opinion made three holdings that bear directly on this case:

*First*, the Court held that the central question in an inducement case is "whether [the defendant] actively encouraged infringement through its statements, not merely how others may understand those statements." Slip op. at 9 n.3. The Court expressly "reject[ed]" the Federal Circuit's "trend" of asking whether a defendant's statements "could be read" by others "as an instruction or encouragement to" infringe. *Id.* That is precisely what the Tenth Circuit did in *Greer*. The Tenth Circuit held that "a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement." *Greer*, 83 F.4th at 1305. In other words, the Tenth Circuit asked whether Moon's conduct *could be read* as encouragement by his audience. *Hikma* holds that this is the wrong question.

*Second*, the Court held that inducement "cannot be based only on 'vague' language 'combined with speculation about how [others] may act.'" Slip op. at 10 (quoting *Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corp.*, 785 F.3d 625, 632 (Fed. Cir. 2015)). The chain of events in *Greer* is alleged to go something like this:

1. Moon reposts the takedown notice.

2. Other Internet users interpret his contempt for the notice as tacit approval.

3. Other users continue infringing.

*See Greer v. Moon*, 83 F.4th at 1305 ('Rather, we conclude a reasonable inference from the facts alleged is that the reposting of the takedown notice, combined with the refusal to take down the infringing material, amounted to encouragement of Kiwi Farms users' direct copyright infringement.').

That is exactly the kind of speculative reasoning the Supreme Court prohibited in *Hikma*. Even accepting Mr. Greer's allegations as true for purposes of Fed. R. Civ. P. 12, Moon's reposting was allegedly designed to mock Mr. Greer,[4] not to "stimulate others to commit" copyright infringement. *Grokster*, 545 U.S. at 937.

*Third*, the Court held that "mere omissions, inactions, or nonfeasance" cannot support inducement liability, because to hold otherwise would mean that "ordinary merchants could become liable for any misuse of their goods and services, no matter how attenuated their relationship with the wrongdoer." Slip op. at 11–12 (quoting *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 489 (2023)). A refusal to comply with a takedown notice is, at its core, an omission. It is the decision *not* to act. The Tenth Circuit's attempt to transform

---

[4] Even Mr. Greer characterizes Moon's conduct as mocking rather than as encouraging infringement. *See* First Amended Complaint, ECF No. 247, at ¶ 40 (alleging Moon 'published Plaintiff's requests onto Kiwi Farms and explained that there was so "much wrong" with Greer's request for it to even be considered'); *id.* at ¶ 65 (alleging Moon 'derided him for using a template for his DMCA request'); *id.* at ¶ 90 (alleging Moon 'posted the DMCA take down request onto his site, mocking it'). *See also* Original Complaint, ECF No. 3, at ¶ 44 (same).

that omission into "encouragement" by combining it with the reposting of the notice does not survive *Hikma*'s analysis.[5]

## C. Moon's Reposting of the Takedown Notice Has an "Obvious Alternative Explanation": It Is Standard Industry Practice.

The *Hikma* Court held that when a defendant's conduct has an "obvious alternative explanation," *Twombly*, 550 U.S. at 567, the complaint "stops short of the line between possibility and plausibility." Slip op. at 10–11. The Supreme Court specifically identified "complying with the law or with standard industry practice" as an "obvious alternative explanation" that defeats a claim of inducement. *Id.* at 11. And the Court stated that it would "decline to put [defendants] between a rock and a hard place by turning adherence to the law and industry standards into building blocks for illegal conduct." *Id.*

Moon's reposting of Mr. Greer's DMCA takedown notice has precisely such an obvious alternative explanation. Republishing DMCA takedown notices is a widely recognized and standard practice across the Internet. Major Internet platforms routinely

---

[5] Mr. Greer's own pleadings confirm that his theory rests on Moon's failure to act. The First Amended Complaint repeatedly frames the alleged wrong as Moon's refusal to 'stop' others from infringing. *See* First Amended Complaint, ECF No. 247, at ¶ 5 ('seeking to put an immediate stop to' Defendants' conduct); *id.* at ¶ 41 ('Greer has tried everything to get the site to stop harassing him'). That is a theory of liability premised on nonfeasance, which *Hikma* and *Twitter v. Taamneh* prohibit.

republish the DMCA takedown notices they receive as a matter of standard practice.[6] These are among the largest and most respected platforms on the Internet, and they all do what Mr. Moon did: publish the takedown notices they receive.

The purpose of this industry practice is transparency and accountability. As the Lumen Database explains, its mission is to "bring transparency to the ecosystem of online content removal requests." The practice of reposting DMCA takedown notices allows the public to scrutinize whether takedown notices are being used properly or being abused to suppress lawful speech. This is a legitimate and well-recognized, lawful purpose. It cannot be evidence of infringement, especially in light of the fact that it is industry standard practice.

The Tenth Circuit treated Moon's reposting of the takedown notice as evidence of "encouragement" of infringement. 83 F.4th at 1305. But under *Hikma*, the Court must ask whether there is an "obvious alternative explanation" for the conduct. *Hikma*, slip op. at 10–11 (citing *Twombly*, 550 U.S. at 567). There is: Moon was engaging in the same

---

[6] *See* Lumen, https://lumendatabase.org (collecting and publishing DMCA takedown notices; formerly Chilling Effects, a joint project of the Electronic Frontier Foundation and Harvard University's Berkman Klein Center for Internet & Society); GitHub DMCA Takedowns, https://github.com/github/dmca (publishing all DMCA notices received); X Transparency Center, https://transparency.x.com/en/reports/copyright-notices (same). Google, which receives tens of millions of DMCA requests annually, shares every one with the Lumen Database. *See also* Jennifer M. Urban & Laura Quilter, *Efficient Process or 'Chilling Effects'? Takedown Notices Under Section 512 of the Digital Millennium Copyright Act*, 22 Santa Clara Computer & High Tech. L.J. 621 (2006) (documenting the importance of DMCA notice transparency for accountability and free expression); Jennifer M. Urban, Joe Karaganis & Brianna L. Schofield, *Notice and Takedown in Everyday Practice*, UC Berkeley Public Law Research Paper No. 2755628 (2016) (finding that transparency in DMCA processes is essential to preventing abuse); Wendy Seltzer, *Free Speech Unmoored in Copyright's Safe Harbor: Chilling Effects of the DMCA on the First Amendment*, 24 Harv. J.L. & Tech. 171 (2010) (arguing that publishing takedown notices serves vital First Amendment interests by exposing overbroad copyright claims).

transparency practice that Google, GitHub, X, and countless other platforms follow as a matter of course. The Supreme Court's instruction is clear: this Court should "decline to put [website operators] between a rock and a hard place by turning adherence to . . . industry standards into building blocks for illegal conduct." *Id.* at 11.

**D. The Tenth Circuit's Decision in This Case Cannot Survive *Cox* and *Hikma*.**

Because "controlling authority has subsequently made a contrary decision of the law applicable to such issues," *Been*, 495 F.3d at 1225, this Court is not bound by the Tenth Circuit's prior analysis. Nor does the mandate prevent reconsideration, because "a dramatic change in controlling legal authority" is a recognized exception to the mandate rule. *United States v. Dutch*, 978 F.3d 1341, 1345 (10th Cir. 2020).

The Tenth Circuit's holding in this case rested on the proposition that reposting a takedown notice and refusing to remove infringing material "amounted to encouragement." *Greer*, 83 F.4th at 1305. After *Cox* and *Hikma*, that proposition is untenable for at least four independent reasons. First, *Cox* limits contributory copyright liability to inducement or tailoring, and Moon's conduct satisfies neither. Second, *Hikma* holds that the question is whether the defendant *designed* its statements to stimulate infringement—not whether others *could read* those statements as encouragement. Third, *Hikma* holds that omissions cannot support inducement, and the core of the Tenth Circuit's theory was Moon's failure to take down the infringing material. Fourth, *Hikma* holds that conduct with an "obvious alternative explanation"—such as adherence to standard industry practice—cannot support a plausible inducement claim, and Moon's republication of the takedown notice was precisely such a standard industry practice.

This Court relied on the Tenth Circuit's decision to conclude that Mr. Greer's amended complaint "likewise suffice[s] to state claims for contributory copyright infringement." ECF No. 448 at 14. Because the legal framework underlying that conclusion has now changed, the Court should reconsider.

## IV. Conclusion

The Report and Recommendation at ECF No. 448 and the Order at ECF No. 453 were entered before the Supreme Court decided *Cox Communications* and *Hikma Pharmaceuticals*. Those decisions constitute an intervening change in controlling law that compels reconsideration. Under the framework those decisions establish, Mr. Greer's contributory copyright infringement claims fail to state a claim upon which relief can be granted. This Court should reconsider its prior orders, grant Defendants' motion, and dismiss Mr. Greer's First Amended Complaint with prejudice.

DATED June 4, 2026

**HARDIN LAW OFFICE**

 /s/ Matthew D. Hardin
**Matthew D. Hardin**
*Attorney for Defendants*
*Joshua Moon and Lolcow, LLC*