No *Shepard's* Signal™
As of: November 3, 2026 12:43 AM Z

# Weekend Warrior Clothing, LLC v. Google, LLC

United States District Court for the Southern District of Ohio, Western Division

October 14, 2026, Decided; October 14, 2026, Filed

Case No. 1:25-cv-668

**Reporter**
2026 U.S. Dist. LEXIS 234579 *; 2026 LX 548828; 2026 WL 3071519

WEEKEND WARRIOR CLOTHING, LLC, Plaintiff, v. GOOGLE, LLC, Defendant.

**Counsel: [*1]** For Weekend Warrior Clothing, LLC, Plaintiff: Keith Joseph Wesley, PRO HAC VICE, George LLP, Los Angeles, CA; Gary Francis Franke, Gary F. Franke CO., L.P.A., Cincinnati, OH.

For Google, LLC, Defendant: Alexander Xavier Shadley, LEAD ATTORNEY, Vorys, Sater, Seymour and Pease LLP, OH, Cincinnati, OH; Anthony L Osterlund, LEAD ATTORNEY, Vorys Sater Seymour & Pease - 1, Cincinnati, OH; Brent T.F. Murphy, Roberto J. Borgert, Sarah A. Tomkowiak, Sarang Damle, PRO HAC VICE, Latham & Watkins, Washington, DC.

**Judges:** DOUGLAS R. COLE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DOUGLAS R. COLE

## Opinion

**OPINION AND ORDER**

Defendant Google, LLC, moves to dismiss (Doc. 16) Plaintiff Weekend Warrior Clothing, LLC's, Complaint (Doc. 1) alleging direct and contributory copyright infringement. After reviewing the motion and several rounds of supplemental briefing, the Court concludes that Weekend Warrior fails to plausibly allege either claim. Thus, the Court **GRANTS** Google's motion.

**BACKGROUND**[1]

**A. Weekend Warrior.**

Weekend Warrior is an online clothing company that sells "holiday-based, patriotic, pop-culture and humor-focused designs." (Doc. 1, #1). Its designs have proven to be quite popular, and

---

[1] Because this matter is before the Court on Defendant's Motion to Dismiss (Doc. 16), the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Ath. Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)*. So while the Court relies on the Complaint's allegations to recount the case's background, it reminds the reader that they are just that—allegations.

Weekend Warrior now sells "thousands of t-shirts with annual revenue in the seven figures." **[*2]** (*Id.*). To protect its brand, Weekend Warrior has copyrighted 58 of its designs as of the time of filing. (*Id.* at #6-9; *see* Doc. 1-1 (copyright certificates and design photos)).[2]

This popularity, however, has also led to some copyright infringement issues. Weekend Warrior claims that its "success attracted copycats who steal Weekend Warrior's popular designs to make a quick dollar, selling lower quality infringing goods at a cheaper price point." (*Id.* at #2). As relevant here, those third-party vendors sell the allegedly infringing t-shirts on other websites, and those products' listings appear on Google's website when potential consumers search for goods. (*Id.* at #2-3).

**B. Google's Shopping Ads Program**.

Weekend Warrior claims this problem results from Google's Shopping Ad service. Weekend Warrior provides some details about this program in its complaint, but Google provides much more detail in its Motion to Dismiss (Doc. 16). Weekend Warrior does not seem to dispute many of those details, so the Court draws on Google's descriptions as well.

In general, when a user searches on Google's search engine, the top results may be "sponsored" products available **[*3]** for purchase. Weekend Warrior includes an example of how results appear for its *Bad Day to Be a Beer* shirt:




(Doc. 1, #4). For a product to appear in that sponsored list, the underlying "merchant," as Google calls them, pays for Google's Shopping Ads program. (*Id.* at #9-10). First, the merchants submit product data to Google's Merchant Center. (*Id.*; Doc. 16, #215-16). That is, they provide "business information, ... information about products from its website, and link[s] to its e-commerce store," as well as "product information including title, price, availability, and brand." (Doc. 16, #215-16). The Shopping Ads service uses that data to determine when to "match a

[2] At the time of the Complaint, Weekend Warrior had two designs pending registration: *George Rizzington* and *Abe-Rizz-Ham Lincoln*. (Doc. 1, #9 n.1).

user's search to [the merchant's] ads, making sure to show the most relevant products." (Doc. 1, #10 (quoting Google's support page)).[3] As seen above, crucially, the sponsored product advertisement shows a picture of the product. (*Id.* at #4, 11).

Shopping Ads likely "provides the merchants a competitive advantage over competitors who are lower on the page." (*Id.* at #9). To use Google's words, "by the time [a user] clicks on the [sponsored] ad, she has a good sense of the product and its cost, which puts her further down the **[*4]** purchasing funnel compared to the average web user." (*Id.* at #10). Of course, merchants pay for this advantage. (*Id.*). It is unclear exactly what the fee structure is, but Weekend Warrior alleges merchants pay a fee every time a customer clicks on the sponsored product. (*Id.*).

Because this case involves the alleged "display" of the purportedly infringing product, the Court dives further into the technical details. Google explains the process for how images appear as follows:

> Merchants also supply an "image link" for advertised products—an embedded text link ... that will use HTML instructions to direct a user's browser to retrieve a copy of the image of the merchant's product at the merchant's third-party website and display that image on the user's desktop as part of a Shopping Ad.

(Doc. 16, #216). In other words, Google does not seek out the images; all of the information, including the image, comes from the merchant. Google does not handle any product fulfillment either. "When a user clicks on a merchant's Shopping Ad displayed in response to the user's search, the product link supplied by the merchant and included in the Shopping Ad takes the user to the product's landing page on **[*5]** the merchant's third-party website." (*Id.*). If the user decides to purchase the product, it orders the product and pays on the third-party website. (*Id.*).

Additionally, Google alleges that the merchants agree to its terms of service when they create a Shopping Ads account. (*Id.*). Those terms of service include restrictions on advertising copyrighted content. (*Id.* at #216-17; *see Google Shopping*, Google Transparency Center, https://transparency.google/intl/en_us/our-policies/product-terms/google-shopping/ [https://perma.cc/8W2M-H8SP]). When merchants violate these policies, Google claims it removes the associated Shopping Ads. (Doc. 16, #216). Weekend Warrior heavily disputes that claim. (*See* Doc. 1, #10-11).

### C. The Infringement.

Weekend Warrior claims merchants that are selling infringing products take advantage of this Google service to Weekend Warrior's detriment. Specifically, it contends that it "discovered substantial quantities of exact copies of [its] [d]esigns being displayed in the Shopping Ads section." (*Id.*). Moreover, the allegedly infringing products appear in the Google search returns before Weekend Warrior's website, www.officialusadrinkingteam.com. (*Id.*; *see id.* at #4 **[*6]** (showing sponsored results for *Bad Day to Be a Beer* shirt that do not include Weekend

---

[3] Weekend Warrior included a URL link for the support page, but that link no longer works. (Doc. 1, #10 n.2).

Warrior's website)). Weekend Warrior further claims that potential customers buy its designs from those cheaper infringers' websites instead of from Weekend Warrior's, and as a result those consumers "never becom[e] loyal Weekend Warrior customers." (*Id.* at #4).

To combat what it perceives as rampant infringement, Weekend Warrior notified Google on several occasions "via Google's instructions for submitting takedown notifications under the Digital Millenium Copyright Act." (*Id.* at #10). Google responded that it would take down the infringing material on some occasions, but Weekend Warrior maintains that Google did not follow through on the removal. (*Id.* at #10, 12-13; Doc. 1-2 (emails from Google)). So the infringing product ads remained visible. (Doc. 1, #10-11). Other times, though, Google would not respond to the notification at all. (*Id.* at #10).

**D. Procedural History**.

Tired of this lack of action, Weekend Warrior sued Google on September 11, 2025. (Doc. 1). It asserted claims for direct and contributory copyright infringement based on the display of the image of the infringing products. (*Id.* at **[*7]** #14-16). Weekend Warrior requests injunctive relief to stop Google from displaying the infringing images, as well as compensatory and statutory damages. (*Id.* at #16-17). It has not sought relief from the underlying merchants.

Two months later, on November 24, 2025, Google filed the instant Motion to Dismiss (Doc. 16). There, it argues that it did not commit direct or contributory copyright infringement because (1) under the server test, it did not store and then display a copy of Weekend Warrior's designs; (2) it did not engage in any volitional conduct to cause the purported infringement; and (3) Weekend Warrior cannot show Google contributed to any infringement. (*Id.* at #220-30).[4] Weekend Warrior responded, (Doc. 19), and Google replied, (Doc. 20). Since then, Google has requested leave to file supplemental authorities on three occasions. (Docs. 21, 26, 32). It sought to bring to the Court's attention the new Supreme Court decision in *Cox Communications, Inc. v. Sony Music Entertainment, 607 U.S. 583, 146 S. Ct. 959, 224 L. Ed. 2d 411 (2026)*, discussing contributory liability, (Doc. 21); the Supreme Court's recent decision in *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc., 146 S. Ct. 1391, 225 L. Ed. 2d 159*, addressing contributory patent infringement, (Doc. 26); and three recent district court decisions applying those new Supreme Court precedents, (Doc. 32). Weekend **[*8]** Warrior responded to the first notice regarding *Cox Communications*, (Doc. 24), to which Google replied, (Doc. 25). For the later two notices of supplemental authority, however, Weekend Warrior voiced opposition and briefly argued against those authorities. (Docs. 29, 35). The Court granted leave for all three requests. (Docs. 22, 30, 36).

With that, the matter is ripe for the Court's review.

---

[4] Google alternatively argued that the Court should stay the case until the Supreme Court issued its decision in *Cox Communications, Inc. v. Sony Music Entertainment*. (Doc. 16, #230-33). The Supreme Court has since issued its decision, as Google highlighted in its Notice of Supplemental Authority (Docs. 21, 23); *see* *Cox Commc'ns, Inc. v. Sony Music Ent., 607 U.S. 583, 146 S. Ct. 959, 224 L. Ed. 2d 411 (2026)*. So the Court need not consider this alternative request.

## LEGAL STANDARD

To survive a motion to dismiss under *Federal Civil Procedure 12(b)(6)*, a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC, 854 F.3d 315, 319 (6th Cir. 2017)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citation omitted). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bassett, 528 F.3d at 430*. But that grace extends only so far. The Court cannot accept "naked assertions," legal conclusions, or "formulaic recitation[s] of the elements of a cause of action." **[*9]** *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 555, 557*).

## LAW AND ANALYSIS

Weekend Warrior asserts both direct and contributory copyright infringement claims. The Court starts with the direct infringement claim. Because the Court finds that Weekend Warrior did not plausibly allege that Google engaged in volitional conduct, the Court dismisses that claim. Turning to the contributory infringement claim, the Court finds that Weekend Warrior plausibly alleged neither that Google induced or encouraged copyright infringement on its Shopping Ads platform, nor that Shopping Ads is incapable of substantial lawful use. Given the Supreme Court's recent opinion in *Cox Communications*, Weekend Warrior has failed to state a claim for contributory copyright infringement. So the Court grants Google's Motion to Dismiss (Doc. 16), and it dismisses the entirety of Weekend Warrior's Complaint (Doc. 1) without prejudice.

### A. Direct Infringement.

The Copyright Act provides protection for "original works of authorship fixed in any tangible medium of expression." *17 U.S.C. § 102(a)*. That protection entails certain exclusive rights for the copyright holder, including the right "to display the copyrighted work publicly." *Id.* *§ 106(5)*. Copyright infringement, then, "occurs when anyone 'violates any **[*10]** of the exclusive rights of the copyright owner.'" *Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 398 (6th Cir. 2007)* (citing *17 U.S.C. § 501(a)*). To establish a copyright infringement claim, a plaintiff must plausibly allege two elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Id.* (quoting *Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004)*).

In its motion to dismiss, Google does not dispute Weekend Warrior's ownership of the asserted copyrights. Rather, its arguments turn on whether *Google* can be held responsible for the copying, as opposed to the third-party merchants who provide the actual images. Google first argues that it did not violate the right to display Weekend Warrior's copyrights because, under the server test, the way the allegedly infringing images technically appear within a user's

browser does not equate to Google "displaying" the images. (Doc. 16, #220-22). Second, Google argues that, regardless of the display issue, it did not engage in any volitional conduct, which it contends is necessary to show that *it* caused the infringing display. (*Id.* at #222-25).

In response, Weekend Warrior argues that neither the Sixth Circuit nor Supreme Court have required either the server test or the volitional-conduct requirement, so the Court should **[*11]** not apply those tests here. (Doc. 19, #255-64). Beyond that, if the Court decides to apply the volitional-conduct requirement, Weekend Warrior maintains that Google is not a mere passive participant in the infringement but rather actively engages by "digitally locat[ing] infringing works on the google site based on the amount of money paid by infringers." (*Id.* at #261). Further, Weekend Warrior argues Google has the capacity to remove the infringement, was aware of the specific infringement here, and yet "either ignores the notice [of infringement] or attempts to deceive[] the copyright owner into believing the infringing work has been taken down." (*Id.* at #261, 263).

The Court starts with Google's argument on the volitional-conduct requirement. Because the Court concludes that Weekend Warrior has not plausibly alleged that Google engaged in any volitional conduct, the Court declines to address the applicability of the server test.

This Court recently addressed the volitional-conduct requirement in another case involving Weekend Warrior. See Weekend Warrior Clothing, LLC v. Amazon.com *Services, LLC*, No. 1:23-cv-752 (S.D. Ohio) (Doc. 111). Because the Court explains the background and **[*12]** contours of the volitional-conduct requirement in full there, the Court offers only a brief overview here. To start, the Court determined that such a requirement plays a useful role in distinguishing between direct liability and secondary liability, particularly in internet-provider cases. *Id.* In recent decades, courts have struggled with "the authorship of the infringing conduct" in cases involving online platforms and third parties. *Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 130 (2d Cir. 2008)*. Generally, "[d]irect infringement claims hold the specific infringer liable," *Tomelleri v. SunFrog, LLC, 721 F. Supp. 3d 566, 572 (2024)*, whereas secondary infringement claims impose "liability for actions of third parties," *BWP Media USA, Inc. v. T & S Software Assocs., Inc., 852 F.3d 436, 439 (5th Cir. 2017)* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)*). So the volitional-conduct requirement arose to help demarcate the line between the two. In other words,

> The distinction between direct and secondary liability would collapse if there were not a clear rule for determining whether *the defendant* committed the infringing act. The volitional-conduct requirement supplies that rule; its purpose is not to excuse defendants from accountability, but to channel the claims against them into the correct analytical track.

*ABC, Inc. v. Aereo, Inc., 573 U.S. 431, 455, 134 S. Ct. 2498, 189 L. Ed. 2d 476 (2014)* (Scalia, J., dissenting). Courts can make that distinction by analyzing causation, i.e., whether the defendant internet **[*13]** service provider could be considered the proximate cause of the infringement. *See* *Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 666 (9th Cir. 2017)* (volitional conduct "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts"). So "[a]lthough copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *Religious Tech.*

Ctr. v. Netcom On-Line Commc'ns Servs., 907 F. Supp. 1361, 1370 (N.D. Cal. 1995). When that proximate causation is lacking, then, the online platform cannot be directly liable.

Admittedly, Weekend Warrior is correct in saying that the Sixth Circuit has not adopted the volitional-conduct requirement, so the Court is not required to apply it here. But the Sixth Circuit has not rejected that requirement either, and "several district courts within the Sixth Circuit classify the Sixth Circuit's decision in Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792 (6th Cir. 2005), as implicitly adopt[ing] the requirement." Tomelleri, 721 F. Supp. 3d at 572. Moreover, "every circuit to address this issue has adopted some version of Netcom's reasoning and the volitional-conduct requirement." BWP Media, 852 F.3d at 440 (collecting cases).

As the Court further explains in the *Weekend Warrior-Amazon* decision *Weekend Warrior Clothing, LLC*, No. 1:23-cv-752 **[*14]** (S.D. Ohio) (Doc. 111), online platforms generally do not engage in volitional conduct when third-party users upload or submit the infringing content and the platform only implements an automated process. *See, e.g.,* Perfect 10, 847 F.3d at 670 ("Perfect 10 provides no evidence showing Giganews exercised control (other than by general operation of a Usenet service); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution."). Rather, "when passively storing material at the direction of users in order to make that material available to other users upon their request, [internet service providers], do not 'copy' the material in direct violation of § 106 of the Copyright Act." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 555 (4th Cir. 2004). Such "automatic copying, storage, and transmission of copyrighted materials, when instigated by others," does not constitute volitional conduct. *Id.*

Selection of the infringing content, however, crosses the threshold. *See* Flowers, Inc. v. Springhill Floral & Gift Supply Co., No. 5:24-cv-590, 2025 U.S. Dist. LEXIS 210715, 2025 WL 3003931, at *5 (N.D. Ohio Oct. 27, 2025). When the provider selects the materials, it no longer passively receives materials from third parties but now is actively participating in the infringement. *Id.*; *see also* Aereo, 573 U.S. at 455 (Scalia, J., dissenting) (The "selection and arrangement by the service provider constitutes a volitional act **[*15]** directed to specific copyrighted works.").

Here, Weekend Warrior argues that Google engages in volitional conduct when it "digitally locates infringing works on the google site based on the amount of money paid by infringers, including known infringers." (Doc. 19, #261). On top of that, Weekend Warrior's maintains that Google's alleged refusal to respond to notices of infringement also constitutes volitional conduct. (*Id.*).

The Court finds that Google did not engage in volitional conduct because it did not participate in the selection of the allegedly infringing products' advertisements. As even Weekend Warrior describes the Shopping Ads program, third-party merchants submit their product data and any other details to Google. (Doc. 1, #9-10). Google does not seek out or curate the available products or their information. For the images specifically, the merchants provide the HTML "instructions to direct a user's browser to retrieve a copy of the image of the merchant's product at the merchant's third-party website." (Doc. 16, #216). The third-party merchant hosts the actual allegedly infringing image. So, again, Google does not select or even retrieve the image from the third-party websites. **[*16]**

Weekend Warrior seems to be getting at how, in a sense, Google chooses which products are shown to a third-party user in response to that user's search. To use Weekend Warrior's example, when a person searches for a *Bad Day to Be a Beer* shirt, Google supplies certain sponsored results. (*See* Doc. 1, #4). To a certain extent, then, Google determines which of the submitted merchants' products appear in those results instead of others. But this stretches the definition of selection too far into the automated-process space. This case is thus different from *Flowers*. The defendant there specifically chose which products it wanted from the manufacturer and curated the products available for sale in its catalogs. *2025 U.S. Dist. LEXIS 210715, 2025 WL 3003931, at *5*. Instead, "Google's system uses the campaign and bid information along with the product data submitted in merchant Center to *automatically* 'match a user's search to a merchant's ads, making sure to show the most relevant products.'" (Doc. 16, #216 (brackets omitted) (emphasis added)). Indeed, "[t]here is nothing in the amended complaint to suggest that these acts were anything other than part of an automated process." *White v. DistroKid, 766 F. Supp. 3d 451, 461 (S.D.N.Y. 2025)*.

Weekend Warrior for its part does not seem to dispute that this is an **[*17]** automatic process. It certainly does not claim that a human employee selects the sponsored results in response to every Google user's query. *See id.* ("It would be pure speculation to conclude from the allegations that there was human involvement in the three steps identified by [the plaintiff]."). And the fact that at some point Google determined the sponsored results would always appear at the top of the page, thus "digitally locat[ing]" them, does not transform the Shopping Ads program from an automated process into an active one. (*See* Doc. 19, #261). Google chooses the high-level criteria by which products are selected for display on its Ads platform; but nobody here alleges that Google has a hand in making each individualized selection.

Turn to Weekend Warrior's next argument regarding Google's response to reports of infringement. Even if Google ignored the infringement notices, it did not necessarily engage in volitional conduct to *cause* the infringement in the first place. (*See id.*). "[V]olition requires a relationship between the system owner and the copyrighted work that will permit the owner to prevent infringement of the work without the necessity of monitoring the behavior **[*18]** of third parties." *Tomelleri II, 721 F. Supp. 3d at 576* (quoting Robert C. Denicola, *Volition and Copyright Infringement*, *37 Cardozo L. Rev. 1259, 1276 (2016)*); *see also* *Sony, 464 U.S. at 446* ("Third party conduct would be wholly irrelevant in an action for direct infringement of respondents' copyrights."). Responding to notices of infringement squarely falls into the category of "monitoring the behavior of third parties." *Id.* Direct liability is not the appropriate framework, then.

To briefly respond to Weekend Warrior's last argument, it states that "[t]he volitional conduct rule is meant to prevent against a 'gotcha' claim against a passive intermediary that has no knowledge of infringement." (Doc. 19, #261). Here, Weekend Warrior goes on to say, Google has knowledge of infringement, so there is no "gotcha." (*Id.*). But that argument misses the point of the volitional conduct rule. As Weekend Warrior acknowledges, copyright infringement is a strict liability claim, meaning knowledge of the infringing activity, whether actual or constructive, is irrelevant. (*Id.* at #260). Accordingly, the volitional-conduct rule is not about *knowledge*, but rather about *causation. See* *Perfect 10, Inc., 847 F.3d at 666*. And whatever Weekend Warrior

might say about Google's knowledge, it has not alleged that Google was the direct **[*19]** cause of the infringement here.

In sum, Weekend Warrior has not plausibly alleged Google engaged in volitional conduct. Thus, the Court must dismiss its direct infringement claim. Because Weekend Warrior potentially could cure this deficiency, though, the Court offers an opportunity for it to move for leave to amend its complaint.

**B. Contributory Infringement**.

Weekend Warrior also brings a contributory copyright infringement claim. (Doc. 1, #15-16). "The Copyright Act does not expressly render anyone liable for infringement committed by another," but the Supreme Court has consistently recognized contributory infringement claims as "merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another." *Sony Corp. of Am. v. Univ. City Studios, Inc., 464 U.S. 417, 434-35, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)*. As Google noted in its supplemental briefing, the Supreme Court issued a decision addressing contributory liability this past term: *Cox Communications, Inc. v. Sony Music Entertainment, 607 U.S. 583, 146 S. Ct. 959, 224 L. Ed. 2d 411 (2026)*. (*See* Def.'s Mot. for Leave to File Supplemental Briefing, Doc. 21; Order, Doc. 22; Def.'s Memo. in Support, Doc. 23). While the Supreme Court upheld, at least conceptually, a copyright holder's ability to pursue contributory infringement claims even in the absence of an express statutory **[*20]** hook, that Court also noted it was "loath to expand such liability beyond [its] precedents." *Cox Commc'ns, 146 S. Ct. at 967*. So this Court will adopt that same approach.

Contributory infringement occurs when the service provider "intended its service to be used for infringement." *Id. at 964*. A plaintiff can establish such intent in two ways: (1) "it can show that a party affirmatively 'induc[ed]' the infringement," or (2) "it can show that the party sold a service tailored to infringement." *Id.* (quoting *Grokster, 545 U.S. at 930, 942*). For the former, "[a] provider induces infringement if it actively encourages infringement through specific acts." *Id. at 967*. The *Cox* court looked to *Grokster* as an example of such inducement. *Id.* In that case, the Supreme Court had held two file-sharing companies liable because the companies specifically marketed their software's infringement capabilities, and "[t]he 'principal object' of their business models 'was use of their software to download copyrighted works.'" *Id.* (quoting *Grokster, 545 U.S. at 926*). Alternatively, to show the requisite tailoring to infringement, a plaintiff must establish the provider's service is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* (quoting *Grokster, 545 U.S. at 942*).

Significantly, the Court in *Cox* also expressly **[*21]** identified two categories that do *not* constitute contributory infringement. First, "'[t]here is no precedent in the law of copyright for' for liability based only 'on the fact that [the defendant] has sold equipment with constructive knowledge of the fact that its customers may use that equipment to make unauthorized copies of copyrighted material.'" *Id. at 968* (quoting *Sony, 464 U.S. at 439*). And second, "a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Id.* (quoting *Grokster, 545 U.S. at 939 n.12*).

With that understanding, the Supreme Court concluded that the internet service provider there, Cox, could not be contributorily liable because it neither induced nor encouraged infringement, and its service was capable of substantial noninfringing uses. *Id.* And in terms of Cox's alleged failure to police infringing activity, the Supreme Court observed that "[h]olding Cox liable merely for failing to terminate Internet service to infringing accounts would expand secondary copyright liability beyond our precedents." *Id.*

Here, Weekend Warrior seeks to do exactly what the Supreme Court rejected in *Cox*—hold Google accountable for allegedly possessing knowledge **[*22]** of infringement and failing to take adequate steps to stop it. Given *Cox*, that argument simply does not work. Nor do Google's activities fall within the two recognized categories of contributory infringement—Google neither induces infringement by others nor tailors its service to ease infringement. Weekend Warrior has not alleged Google "promot[ed], market[ed], [or] inten[ded] to promote" infringement on its platform. *Id.* Nor can Weekend Warrior deny that Google's Shopping Ads program is "capable of substantial lawful use." *Id.*

Weekend Warrior attempts to claim inducement by alleging that merchants pay Google to showcase their products in the sponsored results section at the top of the search results, and that Google "promotes the infringing products by pushing the products to those customers most likely to buy them." (Doc. 24, #353-54). But Google generally "promoting" products in sponsored results does not equal Google "promoting" Shopping Ad's ability to be used for infringing activities. That is, Weekend Warrior has not alleged that Google somehow distinguishes between infringing and non-infringing products in Google's automatic process to populate the sponsored results. It does **[*23]** not argue that out of the products submitted to Google's Merchant Center, it somehow privileges the infringing ones. Weekend Warrior may not like that various sponsored results appear ahead of its own website, but that is not because Google induced the infringement or that it somehow "tailored" the Shopping Ads program specifically for use by infringers.

At best, Weekend Warrior argues that Google's failure to more aggressively remove infringing products allows them to proliferate, or potentially even emboldens the infringers. That theory of liability, however, assumes that Google could be contributorily liable for failing to affirmatively prevent infringement or by failing to adequately terminate infringer's merchant accounts. But, as noted, that theory "conflict[s] with [the Supreme] [C]ourt's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Cox Commc'ns, 146 S. Ct. at 969*.

Finally, Weekend Warrior offers three cases upholding contributory infringement claims in the wake of *Cox Communications* that it claims supports its position. (Doc. 35). But the technology at issue in those cases is easily distinguishable from Google's **[*24]** Shopping Ads platform. In the first case, the district court awarded default judgment on a contributory infringement claim where the defendant offered subscription services to "connect subscribers to unauthorized streams of Plaintiffs' Copyrighted Works." *Amazon Content Servs. LLC v. Weibley, No. 1:25-cv-388, 2026 U.S. Dist. LEXIS 129719, 2026 WL 1683119, at *7-8 (M.D. Pa. June 10, 2026)*. The court found that Plaintiffs sufficiently alleged an intent for the service to be used to infringe based on the defendants' provision of "cheap, unauthorized access," lack of any attempt to gain authorization, and their "attempt[] to conceal that access." *2026 U.S. Dist. LEXIS 129719, [WL]*

*at *8*. The second case involved a form of technology called BitTorrent, "a file-sharing protocol designed to quickly distribute large files over the internet by allowing users to connect to other users' computers to 'simultaneously download and upload pieces of [a] file from and to other users.'" *Strike 3 Holdings, LLC v. Meta Platforms, Inc., 835 F. Supp. 3d 1026, 2026 WL 1697633, at *1 (N.D. Cal. 2026)*. The defendant, Meta Platforms, did not own the BitTorrent technology; rather, it created algorithms designed to download the plaintiff's films and distribute them on BitTorrent. *Id.* The district court determined that the algorithms and related software were "tools tailored to infringe copyrighted works using BitTorrent," so plaintiff had plausibly alleged its contributory infringement **[*25]** claim. *835 F. Supp. 3d 1026, WLat *9*. Likewise, in the third case, plaintiffs alleged the defendant, NVIDIA Corporation, designed its Large Language Models to train on pirated copies of the plaintiffs' copyrighted books. *Nazemian v. NVIDIA Corp., No. 24-cv-1454, 2026 U.S. Dist. LEXIS 99637, 2026 WL 1229583, at *1 (N.D. Cal. May 5, 2026)*. From there, the plaintiffs alleged that NVIDIA "provided various scripts and tools that enabled its customers to download and process 'the Pile,' a dataset containing [the plaintiffs'] copyrighted books." *Id.* The *Nazemian* court found that "designing a tool specifically to promote the infringement" and offering such tools to customers "actively encourage[d] infringement" of the plaintiffs' copyrighted works present in the Pile. *2026 U.S. Dist. LEXIS 99637, [WL] at *6*. Indeed, those tools "had no purpose except to infringe." *Id.*

In sum, the post-*Cox* district court cases Weekend Warrior cites do not aid its cause. Weekend Warrior simply has not provided any factual allegations here that would suggest that Google had the same intent for users to download or stream copyrighted content when it designed the Shopping Ads service. Accordingly, the Court must also dismiss Weekend Warrior's contributory infringement claim.

**CONCLUSION**

For the reasons discussed above, the Court **GRANTS** Google's Motion to Dismiss (Doc. 16). Thus, the Court **DISMISSES WITHOUT [*26] PREJUDICE** Weekend Warrior's Complaint (Doc. 1). Because Weekend Warrior potentially could cure the deficiencies identified above, the Court will retain jurisdiction of this matter for 30 days to allow Weekend Warrior an opportunity to move for leave to amend its complaint, attaching the proposed amended complaint, if it can address the pleading deficiencies set forth above. Should Weekend Warrior fail to seek leave, the Court will enter judgment at that time dismissing the matter prejudice.

**SO ORDERED**.

October 14, 2026

**DATE**

/s/ Douglas R. Cole

**DOUGLAS R. COLE**

**UNITED STATES DISTRICT JUDGE**

---

End of Document